UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-cv-717-H

BABCOCK POWER INC., *et. al*                                              PLAINTIFFS

v.

STEPHEN T. KAPSALIS                                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Babcock Power, Inc. ("BPI") and its subsidiary Vogt Power International, Inc. ("Vogt") (collectively, "Plaintiffs"), seek to enjoin its former employee, Mr. Kapsalis, from using a certain Contact List[1] and other proprietary documents that Kapsalis maintains access to at his current job with Express Holdings, LLC ("Express"), a Vogt competitor. On December 12, 2013, this Court heard evidence on the specific issue of whether the subject Contact List is protectable under the Kentucky Uniform Trade Secrets Act ("KUTSA") and/or the employment agreements Kapsalis signed at the outset of his employment with Plaintiffs. Upon the evidence now before it, the Court is persuaded that tailored injunctive relief is appropriate.

I.

In determining whether to issue injunctive relief, the Court considers four factors: (i) Plaintiffs' likelihood of success on the merits; (ii) whether the injunction will save Plaintiffs from irreparable injury; (iii) whether the injunction will harm others; and (iv) whether the public interest would be harmed or served by the injunction. *Transamerica Ins. Fin. Corp. v. North*

---

[1] The Court uses this term throughout to refer to the list of names and contact information presented at the hearing as Plaintiffs' Exhibit 2. This term excludes a subset of Kapsalis's personal or prior business contacts, as detailed in Section II. The contested Contact List was maintained in Kapsalis's Lotus Notes on his Vogt-issued electronic devices. The ins and outs of how this information remains available to Kapsalis at his current job are mostly immaterial for purposes of this Order.

*Am'n Tracking Ass'n, Inc.*, 937 F. Supp 630, 633 (W.D. Ky. 1996). The Court need not definitively determine the underlying issues at this stage of the proceedings but must be satisfied at the very least that Plaintiffs have demonstrated a likelihood of success on the merits as well as irreparable harm.

A.

KUTSA protects as a "trade secret"

> information . . . that (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

KRS § 365.880(4). The Contact List at issue appears to fit this definition. Kapsalis argues the customer information in the Contact List is "nothing more than the name, address, and telephone number" of BPI/Vogt customers and that such information cannot be considered a trade secret. The Court concludes otherwise. Plaintiffs compiled the information in the Contact List over a period of multiple decades at significant corporate cost, including multiple trips overseas. This Contact List represents Vogt/BPI's essential business play book. The inherent value is in its compilation.

The information it contains is not "readily ascertainable" through such minimal efforts as, for example, looking up automotive parts purchasers in a local phone book (or other public source) and calling to ask who in the shop is responsible for buying parts. *Compare ATC Distribution Corp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 714−15 (6th Cir. 2005). It is immaterial that Kapsalis may be able to recreate a list of business-card type information for buyers of its new company's products through proper means, or that such list might end up having striking similarities to the information contained on the list contested here.

That Kapsalis may have much of the same knowledge, may know many of the same persons, and knows many of the telephone numbers by memory does not make the Vogt Contact List any less protectable.

Even if the Contact List is not protectable as a trade secret, it is protectable under the confidentiality agreement[2] between Vogt and Kapsalis. Paragraph 1 of the Agreement prohibits Kapsalis, during his employment and for five years thereafter, from divulging or using BPI/Vogt's confidential information for anyone's benefit. "Confidential Information" is defined to include trade secrets and marketing strategies. Paragraphs 2 and 3 arguably cover the Contact List as well, and certainly do cover the other documents uploaded onto an external hard drive that Kapsalis took upon his departure.

As to the second prong of the definition of trade secret, it is undisputed that Plaintiffs centralized the collection of the key contact information found in the Contact List and took measures to preserve its confidentiality, not least of all by ensuring that employees who would have access signed restrictive covenants at the outset of their employment.

On this analysis, Plaintiffs have succeeded in demonstrating a likelihood of success on the merits. Preliminarily, the Court does not find the evidence to suggest any disguise or plan on the part of Kapsalis to appropriate the Contact List.[3]

B.

Plaintiffs also bear the burden of showing that the trade secret or confidential list was misappropriated. While Kapsalis does not appear to have used the Contact List or other proprietary documents in any way that violates the Agreement between the parties, he did either

---

[2] The Court uses this term to refer to the Employee Non-Disclosure, Non-Solicitation, Non-Competition and Assignment Agreement, ECF No. 27-1, which became effective July 10, 2009.

[3] KUTSA recognizes as misappropriation "(b) …[U]se of a trade secret of another without express or implied consent by a person who: …2. At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:…b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." KRS § 365.880(2). The Court acknowledges that the facts may very well bear this out at trial.

intentionally or inadvertently appropriate the Contact List for his continued business use. This is the irreparable harm the Court's Order will guard against.

The two parties do not directly compete in primary markets. The hearing did not disclose any evidence that Kapsalis has encroached upon Vogt's business, even though he may be planning to do so at some point in the future. The evidence did indicate that Kapsalis absconded with an external hard drive on which he had uploaded Vogt's strategic plan in the industrial-sized Heat Recovery Steam Generators ("HRSG") market, where the two parties' businesses do overlap.

The two main witnesses, Kapsalis and Michael LeClair, CEO of Babcock Power, Inc., presented as truthful witnesses who simply view the circumstances from entirely contrasting perspectives. Vogt has reason to be suspicious; Kapsalis has reason to regard the contested list as inconsequential to his working knowledge of the industry. Vogt has reason to suspect that Kapsalis may want to compete in its primary markets and was hired for that very purpose; Kapsalis correctly points out that, so far, there is no evidence of any tangible plans.

Nevertheless, Kapsalis's conduct has certainly given the appearance of crossing the line which the agreement draws. Therefore, an injunction is appropriate to clarify the rights and obligations of the parties.

II.

Whether or not Kapsalis disregarded a company policy by incorporating personal and prior business contacts into the BPI/Vogt database, the Court declines to recognize these contacts as protected under the new injunction. Neither party has demonstrated a willingness to delineate the specific contacts on the Contact List it cares most about. Plaintiffs disclaim an interest in Kapsalis's personal or prior business contacts but ultimately insist all contacts be covered until

more discovery reveals who, exactly, is properly considered a personal or prior business contact; Defendant claims none of the contacts are protectable under the KUTSA or the agreement. The Court disagrees that "[o]nly if Kapsalis can prove that . . . contacts predate[] his employment or are unrelated to Plaintiffs' business should any portion of the Contact List be treated as anything but Plaintiffs' confidential proprietary and trade secret information." In light of the extraordinary remedy that Plaintiffs seek, it is incumbent on Plaintiffs to clarify which contacts should not be considered Kapsalis's personal or prior business contacts.

Thus, the injunction against the Contact List's possession and use does not include Kapsalis's personal and prior business contacts, provisionally defined as all of the contacts entered into the Contact List on August 7, 2009.[4] This delineation does not alter Kapsalis's obligation under the Agreement to not contact individuals or companies with whom Plaintiffs had a business relationship in the year preceding his departure for the purposes of trying to divert their business to Express, regardless of when that contact became integrated into the Contact List. Kapsalis acknowledges and appears to have honored this provision of the Agreement.

In sum, the Contact List that the new TRO will protect consists of all of the names and contact information contained in Plaintiff's Exhibit 2, minus Kapsalis's personal and business contacts, defined as each contact first entered into the database on August 7, 2009. The parties are invited to contact Case Manager Andrea Morgan when they are prepared to elucidate who else should or should not be considered one of Kapsalis's personal or prior business contacts.

---

[4] This date marks the first major upload of contacts and occurred at the outset of Kapsalis's employment with BPI/Vogt.

Plaintiffs point out that Mike LeClair testified that the names uploaded on August 7, 2009 "appeared to be" comprised of multiple sources, some of which were contacts LeClair had introduced to Kapsalis. Further, Plaintiffs argue that "if" contacts uploaded on August 7, 2009 were derived from Kapsalis's work for BPI as a consultant or expert (a job he performed prior to coming to work for BPI/Vogt), then those, too, would properly be Plaintiffs' property. The means to identify who on the list Plaintiffs have a specific, protectable interest in are within Plaintiffs' control. Where this is the case, a plea that "a party is not required to prove his case in full at a preliminary injunction hearing," while true, is not helpful. The Court is open to hearing more evidence on this issue at the parties' earliest convenience.

The Court will enter an Order consistent with this Memorandum Opinion.


cc: Counsel of Record