UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BABCOCK POWER, INC., *et al*.

      Plaintiffs,

v.                                     CASE NO. 3:13-CV-717-DJH-CHL

STEPHEN T. KAPSALIS, *et al*.

      Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Compel (DN 116) filed by defendant Stephen T. Kapsalis. Plaintiffs Babcock Power, Inc. ("BPI") and Vogt Power International, Inc. ("Vogt") filed a response (DN 124). Pursuant to a court order, no replies were allowed. Therefore, this matter is ripe for review. For the reasons stated herein, the Motion to Compel is granted in part and denied in part.

## I.      BACKGROUND

This matter has been pending in this Court for over two years: it has been refereed by the Court from the start and has served as the battleground for several discovery disputes. The undersigned has only recently been assigned to this matter, but will attempt to piece together the relevant history of this case to provide the necessary framework for the decision with respect to the Motion to Compel in addition to the other discovery motions filed by the parties.

Plaintiffs initiated this lawsuit in July 2013. The gist of plaintiffs' allegations in the complaint is as follows: Vogt is a wholly-owned subsidiary of BPI. In 2009, Kapsalis was hired by BPI as Senior Vice President and Chief Operating Officer. Kapsalis later assumed a position

1

with Vogt as President and Chief Executive Officer and was also elected Senior Vice President – Heat Recovery Steam Generators of BPI.  At the beginning of his employment with BPI in 2009, Kapalis and BPI entered into an agreement ("the Agreement").   The Agreement contained terms addressing confidential information obtained by Kapsalis from BPI, limits on outside business activities by Kapsalis while in the employ of BPI, and limits on Kapsalis's business activity for a one-year period following termination of his employment with BPI.  Kapsalis's employment with plaintiffs ended around April 2013; Kapsalis went to work for Express Group Holdings LLC ("Express").  Plaintiffs allege that, prior to the termination of his employment, Kapsalis copied confidential and proprietary information from his work-issued computer onto another device, including the contents of the following folders (1) on April 4, 2013, D:\StrategicPlanningFolder\Utility Market Analysis(03-28-13).pptx; (2) on April 7, 2013, D:\StrategicPlanningFolder\Small HRSG Market.ppt; and (3) also on April 7, 2013, D:\Strategic Planning Folder\ ABMAsection_i_hrsg_summary_2012.xlsx.   Plaintiffs further allege that Kapsalis e-mailed to his personal e-mail address client and customer contacts saved on his work-issued computer.  Plaintiffs also claim that Kapsalis may have been involved in an outside business in violation of the Agreement.  As a result, plaintiffs brought the following claims against Kapsalis:  (1) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) Breach of Contract; (3) Misappropriation of Trade Secrets; (4) Breach of Fiduciary Duty; (5) Violation of the Lanham Act, 15 U.S.C. § 1125; (6) Conversion – Intellectual Property; and (7) Preliminary and Permanent Injunction.

Shortly after the lawsuit was filed, plaintiffs filed a motion for temporary restraining order; in that motion, plaintiffs sought to restrain Kapsalis from "continuing to breach his Non-

Disclosure Agreement and continuing to violate the Kentucky Uniform Trade Secrets ("KUTSA"), the Computer Fraud and Abuse Act ("CFAA") and from continuing to breach his fiduciary duties to BPI and Vogt Power."  (DN 6, p. 1.)  The late Senior District Court Judge John G. Heyburn II issued an order granting the motion for temporary restraining order, stating that Kapsalis was "restrained from committing the following acts pending resolution of this action or further order of this Court":

1)   Defendant is restrained from using, disclosing misusing or further converting BPI and Vogt Power's confidential, proprietary or trade secret information, including but not limited to, customer contracts, customer contacts, strategic plans, marketing information, pricing information, passwords and other confidential customer information;

2)   Defendant is restrained from soliciting or otherwise initiating any further contact or communication with any BPI or Vogt Power customer for the purpose of inviting, encouraging or requesting the transfer of an account or business patronage from BPI or Vogt Power;

3)   Defendant is restrained from making false or misleading statements to any person or entity regarding BPI and Vogt Power's business, employees, intellectual property rights or customer relationships;

4)   Defendant is restrained from hiding, damaging, destroying or otherwise disposing of or making unavailable for further proceedings in this matter any of BPI or Vogt Power's confidential, proprietary or trade secret information; and

5)   Defendant is ordered to return to BPI and Vogt Power all copies of confidential, proprietary and trade secret information obtained from BPI and Vogt Power.

(DN 8.)

In December 2013, pursuant to an agreed order, Kapsalis agreed to produce to plaintiffs' forensic expert, Lacey Walker, Jr., a forensic mirror image of external storage device(s) on

3

which documents were copied or stored.  (DN 28.)  Walker was to forensically image the external storage device(s) and produce a file listing report, identifying files that appeared to be related to BPI or Vogt; that list of files was to be produced to counsel for both parties.  While Kapsalis was allowed one week to object to the documents on the list, he would produce the agreed-upon documents to plaintiffs.  Upon review of those documents, plaintiffs would identify the documents they deemed to be related to BPI and/or Vogt.  The parties noted that the agreed order did not limit or waive the parties' ability to conduct discovery.

Later that month, Judge Heyburn granted plaintiffs' request for a preliminary injunction. (DN 35.)  That order stated:

>  IT IS HEREBY ORDERED that Stephen Kapsalis is hereby restrained from committing the following acts pending resolution of this action or further order of this Court:

> 1)      Defendant is restrained from using, disclosing, misusing, or further converting Babcock and Vogt Power's confidential, proprietary, or trade secret information, including but not limited to, customer contracts, customer contacts compiled into Vogt's database after August 7, 2009, strategic plans, marketing information, pricing information, passwords, and other confidential customer information;

> 2)      Defendant is restrained from soliciting or otherwise initiating further contact or communications with any Babcock or Vogt Power customers for the purpose of inviting, encouraging, or requesting the transfer of an account or business patronage from Babcock or Vogt;

> 3)      Defendant is restrained from making false or misleading statements to any person or entity regarding Babcock and Vogt Power's business, employees, intellectual property rights, or customer relationships;

> 4)      Defendant is restrained from hiding, damaging, destroying, or otherwise disposing of or making unavailable for further proceedings in this matter any of Babcock or Vogt Power's confidential, proprietary, or trade secret information, including any

> copy of the Contact List as defined and limited in Paragraph 1 herein and in the Court's Memorandum Opinion in this matter; and
>
> 5)    Defendant is ordered to return to Babcock and Vogt Power all copies of confidential, proprietary, and trade secret information, including all copies of the Contact List as defined and limited in Paragraph 1 herein and in the Court's Memorandum Opinion in this matter.

(*Id*. at 1-2.)  Judge Heyburn noted in the accompanying memorandum opinion that the "Contact List" would be defined as the contact information contained in plaintiffs' Exhibit 2 (*i.e*., the list of contacts that plaintiffs claim Kapsalis wrongfully copied) minus Kapsalis's personal and business contacts that were first entered into the database on August 7, 2009 (the date of the first major upload of contacts that occurred at the beginning of Kapsalis's employment with BPI). (DN 34, pp. 4-5.)  Judge Heyburn also noted that the terms of paragraph 2) would expire on the earlier of the following dates:   April 11, 2014, one year after the termination of Kapsalis's employment with BPI, or the resolution of the lawsuit.  (DN 35, p. 2 n.1.)

In June 2014, Judge Heyburn held a hearing on several discovery motions filed by the parties, including a motion to compel production of documents from (at that time) third-party Express filed by plaintiffs (DN 53) and a motion to compel filed by Kapsalis (DN 57). Following the hearing, Judge Heyburn entered an order, which stated in part:

> IT IS HEREBY ORDERED that Plaintiffs' Motion to Compel Production of Documents from Third Party Express Group Holdings, LLC [docket no. 53] ("Plaintiffs' Motion to Compel") is DENIED in part based on the assurances that Plaintiffs, Kapsalis and Express shall comply with the terms of this Order herein.
>
> IT IS FURTHER ORDERED that with the parties' compliance with the Order below, Kapsalis' Motion to Compel [docket no. 57] is MOOT.

IT IS FURTHER ORDERED that on or before July 3, 2014, counsel for Plaintiffs shall cross-reference [a] the three lists of sales and opportunities and proposals (marked EGH 1-180 and EGH 207-A, 207-B, 207-C and 207-D and designated "Attorneys Eyes Only") produced by letters from J. Clark Martin to Pamela J. Moore on April 3, 17 and 21, 2014, with [b] any opportunities or sales the Plaintiffs in good faith contend they actually lost because of conduct by Kapsalis in violation of his Non-Disclosure, Non-Solicitation, Non-Competition and Assignment Agreement dated July 10, 2009 that occurred between April 11, 2013 and April 11, 2014. Counsel for Plaintiffs shall then identify to counsel for Express and Kapsalis each such alleged lost opportunity or sale (hereinafter "Plaintiffs' Alleged Lost Opportunities or Sales") by the name they wish searched for (the "Names"). Plaintiffs may designate such Names as "Attorneys Eyes Only." However, if Plaintiffs designate such Names "Attorneys Eyes Only," Express' information technology personnel, upon agreeing to the Protective Order, may be provided such Names to perform the searches required hereunder.

IT IS FURTHER ORDERED that Express shall search Kapsalis' e-mail account on the Express exchange server for any such Name that is identified as Plaintiffs' Alleged Lost Opportunities or Sales and produce those e-mails and attachments identified in the search (other than documents that are protected by the attorney/client or work product privileges) to counsel for Plaintiffs within a reasonable time. Such documents may, if appropriate, be produced under the designation as "Attorneys Eyes Only" or as "Confidential."

IT IS FURTHER ORDERED that Plaintiffs will review the list of approximately 2700 search terms previously provided to Express and significantly narrow those search terms to key search terms that they in good faith contend are likely to lead to the discovery of admissible evidence. The Court anticipates that this will be less than 200 search terms. Plaintiffs will then provide the narrowed search terms to counsel for Express and Kapsalis ("Narrowed Search Terms").

IT IS FURTHER ORDERED that Express shall search Kapsalis' e-mail account on the Express exchange server for the Narrowed Search Terms and produce those documents found in the search (other than documents that are protected by the attorney/client or work product privileges) to counsel for Plaintiffs within a

reasonable time. Such documents may, if appropriate, be produced under the designation as "Attorneys Eyes Only" or as "Confidential."

IT IS FURTHER ORDERED that Express shall search Kapsalis' e-mail account on the Express exchange server only for the terms "Vogt," "VPI," "Babcock" and "BPI" and produce those documents found in the search (other than documents that are protected by the attorney/client or work product privileges) to counsel for Plaintiffs within a reasonable time. Such documents may, if appropriate, be produced under the designation as "Attorneys Eyes Only" or as "Confidential."

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File an Amended Complaint and to Join Express Group Holdings LLC as a Defendant [docket no. 54] is hereby DENIED without prejudice.

IT IS FURTHER ORDERED that Express' Motion for Determination by Court that Information Contained in a Certain Document Produced by a Non-Party is Properly Designated "CONFIDENTIAL – ATTORNEYS EYES ONLY" [docket no. 61] is hereby GRANTED and that such documents shall retain their "CONFIDENTIAL-ATTORNEYS EYES ONLY" designation.

(DN 72, pp. 1-3.)

In November 2014, plaintiffs filed an amended complaint to add Express as a defendant and to add additional factual allegations. (DN 84.) Plaintiffs re-asserted the claims contained in the original complaint against Kapsalis and asserted these claims against Express: (7) Misappropriation of Trade Secrets; (8) Intellectual Property; and (9) Unjust Enrichment, as well (10) a request for preliminary and permanent injunction against both defendants.

In December 2014, Judge Heyburn conducted a settlement conference that was ultimately unsuccessful and also stayed discovery until February 2, 2015. (DN 90.) It is unclear what

additional discovery took place between that time and September 2015, when the Court re-set the discovery deadline.  (DN 106.)

In an apparent attempt to resolve this discovery dispute between the parties, on September 14, 2015, counsel for Kapsalis sent a letter to plaintiffs' counsel detailing various categories of outstanding discovery.  (DN 116-6 ["September 2015 letter"].)   On October 9, 2015, plaintiffs responded to the September 2015 letter.  (DN 116-7 ["October 2015 letter"].) Details contained in those letters will be incorporated as needed in the Discussion section.

Currently, there is no trial date in this matter.  Plaintiffs' expert disclosure deadline was December 1, 2015; defendants' expert disclosure deadline is January 4, 2016.  The discovery deadline is January 29, 2016, and the dispositive motion deadline is March 18, 2016.

## II.   DISCUSSION

Kapsalis's Motion to Compel is based on four grounds.  First, Kapsalis contends that plaintiffs have an obligation to identify, with specificity, the trade secrets that they contend were misappropriated, and have failed to do so sufficiently.  Second, Kapsalis states that he is entitled to complete and non-evasive answers to written discovery propounded on February 12, 2014. Third, Kapsalis claims that he is entitled to a listing of all materials *provided* to Lacey Walker, plaintiffs' expert witness, not just the ones that Walker relied on to support his opinion.  Finally, Kapsalis argues that defendants are entitled to forensic images of certain cell phones containing text messages that may no longer exist.  The Court will address each contention below.

### A.      Identification of Trade Secrets

Kapsalis argues that plaintiffs are obligated to identify, with specificity, their trade secrets.  In the October 2015 letter, plaintiffs stated that they were "in the process of compiling a

complete list of trade secrets which identifies the trade secrets by Bates numbered document." (DN 116-7, p. 1.)  In the Motion to Compel, Kapsalis admits that plaintiffs "have just produced a string cite of bate-stamped documents purportedly to satisfy this requirement" and that "Kapsalis will update the Court if Plaintiffs fail to meet this legal burden."  (DN 116-1, p. 10.)  Not surprisingly, in their response, plaintiffs claim that they have already identified their trade secrets by category (*see* DN 65 [response to motion to compel (DN 57) filed by Kapsalis]) and have also provided Kapsalis with a document-by-document list of the documents that they allege constitute "confidential, proprietary and trade secret information."  (DN 124, p. 18; *see also* DN 124-5 [list of Bates-labeled documents]).

Plaintiffs claiming misappropriation are normally required to identify their trade secrets with "reasonable particularity."  *Dura Global Techs, Inc. v. Magna Donnelly Corp*., No. 07-CV-10945-D, 2008 WL 2064516, at *2 (E.D. Mich. May 14, 2008); *see also Black & Decker (U.S.) Inc. v. Techtronic Indus. Co.*, No. 1L08-CV-01002JDBEGB, 2009 WL 3762947, at *1 (W.D. Tenn. May 14, 2009) ("*Dura Global* is the prevailing federal case law in this jurisdiction regarding the standard for identifying trade secrets.").  "The reasonable particularity standard requires that the alleged trade secret be described 'with adequate specificity to inform the defendants what it is alleged to have misappropriated.'"  *Id*. at *2 (quoting *Sit-Up Ltd. v. IAC/InteractiveCorp.,* 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008)).  "Another court defined reasonable particularity to mean that the adversary party is put on notice of the nature of the claims and that the party can discern the relevancy of any requested discovery on its trade secrets."  *Id*. (citing *DeRubeis v. Witten Tech., Inc.,* 244 F.R.D. 676, 681 (N.D. Ga.2007)).  It is not enough for plaintiffs to submit a brief that describes trade secrets in general terms, identifies

areas to which the trade secrets relate, and details how the defendant allegedly misappropriated them. *Id.* "Plaintiffs must create a list rather than a document in the style of a brief." *Id.*

It is not clear what categories plaintiffs are referring to in DN 65 (or its attachment, DN 65-1) and the Court is skeptical that a broad description of categories of alleged trade secrets satisfies the "reasonably particularity" standard. *See id.* ("Plaintiffs must create a list rather than a document in the style of a brief. The list should omit general references such as control plans, process plans, design reviews, drawings and work instructions and replace them with specific references to concrete documents."). Putting that fact aside, plaintiffs have recently identified, by Bates-number, documents that they claim constitute "confidential, proprietary and trade secret information." (DN 124, p. 18; *see also* DN 124-5 [list of Bates-labeled documents]). What plaintiffs fail to have done, however, is identify which of these documents constitute trade secrets as opposed to proprietary or confidential information. Plaintiffs must delineate which of the documents it has identified in DN 124-5 are their purported trade secrets.

Additionally, plaintiffs state that this is the "initial list" and that they will be adding to the list. (DN 124-5, p. 2.) The Court notes that it has not reviewed any of the documents produced by plaintiffs, nor does the Court have any idea, at this juncture, whether the identification of the alleged trade secrets by identifying specific documents satisfies the "reasonable particularity" standard. Nonetheless, based on the information before the Court, it appears that plaintiffs need to do more; pointing to Bates-numbered documents described as "confidential, proprietary, *and* trade secret information" is not enough, especially with a fast-approaching discovery deadline. (DN 124, p. 18) (emphasis added).

10

"The time has come to provide Defendant with some assurance that the trade secrets listed are those that it is accused of misappropriating and prevent further prejudice that arises from Plaintiffs' failure to properly identify them." *Dura Glob. Techs., Inc. v. Magna Donnelly Corp.*, No. 2:07-CV-10945-SFC, 2011 WL 4527576, at *4 (E.D. Mich. Sept. 29, 2011). Based on the foregoing analysis, as well as the analysis contained in the Court's order addressing the Joint Motion for Protective Order (DN 117), which the Court adopts here, plaintiffs shall provide, by **January 5, 2016**, a full and complete description, in narrative form, of the specific trade secrets that they claim are at issue; plaintiffs must also identify which specific documents constitute those trade secrets. *Compare L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-CV-02868-MSK-KMT, 2011 WL 10858409, at *2 (D. Colo. Oct. 12, 2011) ("To ensure that plaintiffs adequately disclose their trade secrets, courts commonly order a list of trade secrets at the outset of the litigation.") *with BioD, LLC v. Amnio Tech., LLC*, No. 2:13-CV-1670-HRH, 2014 WL 3864658, at *5 (D. Ariz. Aug. 6, 2014) ("A plaintiff also might not be required to identify its trade secrets with reasonable particularity prior to discovery.").[1]

B.    **Answers to Written Discovery**

Kapsalis argues that plaintiffs still have not provided complete responses to interrogatories and request for production served on February 12, 2014. While Kapsalis spends an extraordinary amount of time detailing the history of discovery in this case, it is still unclear to the Court which particular discovery requests Kapsalis deems incomplete and/or evasive. In the background section of his brief, Kapsalis identifies a few *examples* of interrogatories and request for production to which plaintiffs have provided incomplete responses. The argument

---

[1] The Court notes that at the December 3, 2015 hearing plaintiffs' counsel stated that the identification of trade secrets was not the subject of interrogatories or request for production by Kapsalis, but that there is such a request directed to plaintiffs from Express. (DN 151, p. 17.)

section of Kapalis's brief does nothing to clarify the issue for the Court.  The title of the argument section states that "Kapsalis Is Entitled To An Order Compelling Plaintiffs To Provide Complete And Nonevasive Written Answers To Written Discovery"; however, Kapsalis does not identify the specific discovery requests to which he contends plaintiffs have provided incomplete "written answers."  (DN 116-1, p. 11.)

In the September 2015 letter to plaintiffs, Kapsalis did request supplementation of specific discovery requests.  Kapsalis mentions the September 2015 letter in the Motion to Compel, stating, "For the reasons set forth in Ms. Gray's September 14, 2015 letter (Exh. 4), expressly incorporated herein, the discovery sought is relevant and likely to lead to the discovery of admissible evidence and should, therefore, be compelled."  (*Id*.)  Kapsalis, however, does not state that the specific discovery requests listed in the September 2015 letter are the ones at issue in the Motion to Compel.  Nonetheless, the Court assumes that the discovery requests detailed in the September 2015 letter are the ones that are the subject of the Motion to Compel because plaintiffs recited and addressed each one in their response to the Motion to Compel.  In light of the complicated history of this matter, in the future the parties should be as clear and specific as possible when asking the Court for an order compelling another party to act.

Plaintiffs argue that they have provided responses to the February 12, 2014 discovery requests served by Kapsalis and that a motion to compel filed with respect to them has already been found moot.  (*See* DN 72 [order issued by Judge Heyburn].)  Plaintiffs claim that, while no further responses to the February 12, 2014 discovery requests were ordered, they responded to Kapsalis's demands, point by point, in the October 2015 letter.  Plaintiffs further claim that the

12

current Motion to Compel is largely duplicative of the motion to compel already considered and resolved by Judge Heyburn.  (*See id.*)

As the parties note, this is not the first motion to compel filed by Kapsalis with respect to the February 12, 2014 discovery requests.   (*See* DN 57.)  Judge Heyburn issued an order finding that the motion to compel filed by Kapsalis earlier in this case with respect to the February 12, 2014 discovery requests was moot in light of the parties' compliance with specific directives in that order.  (DN 72.)  Kapsalis does not appear to claim that plaintiffs have failed to comply with the directives of that order.  Instead, Kapsalis argues that plaintiffs never complied with the February 12, 2014 discovery requests and must do so now.  The Court is skeptical of this eleventh hour demand from Kapsalis, especially in light of Judge Heyburn's order (DN 72).

Even more importantly, Kapalis's brief does not provide enough information to the Court.   While Kapsalis does attach as exhibits his discovery requests and responses from plaintiffs, he does not state *why* each specific response – or supplemental response – is deficient. Kapsalis *should have* (1) recited each discovery request at issue; (2) recited the responses provided by plaintiffs, including any additional supplementation provided in the October 15, 2015 letter (or any other supplementation, *see, e.g.*, DN 116-1, p. 3 [mentioning that plaintiffs supplemented their discovery responses]); and (3) above all else, stated with specificity *why* each response is inadequate and what specific information is lacking, citing to case law where necessary.  Kapasalis did none of this even though it was his motion.  Therefore, Kapsalis's Motion to Compel will be denied without prejudice insofar as it requests supplemental responses to his February 12, 2014 discovery requests.

### C.      Materials Provided to Lacey Walker

Kapsalis states that he is entitled to a listing of all materials provided to, or relied upon by, plaintiffs' expert witness, Lacey Walker.  Plaintiffs argue that Rule 26(a)(2)(B) does not require that a party "produce a listing of all materials provided" to an expert, but that the report need only contain the facts or data considered by the witness in forming his or her opinion. Neither Kapsalis nor plaintiffs cite to any case law, which leaves the Court to do their work.

Walker's report does appear to contain the "facts or data" he "considered" in forming his current opinions.  (DN 124-6, p. 3.)  Kapsalis argues that he is entitled to a listing of *all* materials provided to Walker by plaintiffs, regardless of whether Walker actually relied on them.  The Comments accompanying the 2010 Amendments to Rule 26 make it clear that "[t]he disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert."  Fed. R. Civ. P. 26, cmt. (2010).  So does Sixth Circuit law.  *See, e.g.*, *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 715 (6th Cir. 2006) ("We agree with the district court and the majority view that Rule 26 now requires disclosure of all information provided to testifying experts."); *see also* Fed. R. Civ. P. 26, cmt. (1993) ("The report is to disclose the data and *other information considered by the expert* and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.") (emphasis added).  Consequently, "Rule 26 creates a bright-line rule mandating disclosure of all documents . . . given to testifying experts."  *Reg'l Airport Auth. of Louisville,*

460 F.3d at 717; *cf*. Fed. R. Civ. P 26(b)(4)(B)-(C) (protecting draft reports and certain communications between expert and attorney).  Thus, the Motion to Compel is granted insofar as it seeks a listing of the materials *provided* to Walker by plaintiffs in conjunction with the preparation of his expert report.  To the extent plaintiffs have not done so, they shall provide to Kapsalis a list of the materials that they provided to Walker in conjunction with the preparation of his expert report for this matter by **January 5, 2016**.

        **D.**       **Forensic Images of Requested Cell Phones**

       Kapsalis claims that Michael LeClair, BPI's President and CEO, admitted in a deposition that he had not searched and produced all sources of discoverable documents in this case, including certain text messages.  Kapsalis points to the following deposition testimony in support of his assertion:

pp. 8-9

25 Q. All right. Can you tell me how you prepared
00009
1 for your deposition today?
2 A. I reviewed emails, text messages, and phone
3 call records.
4 Q. Did you review your testimony from the
5 hearing we had in this case?
6 A. Yes, I did.
      . . . .

pp. 19-20

3 Q. When Steve -- I'm going to jump ahead a
24 little bit, but when Steve told you for the first
25 time in March of 2013 that he was in discussions
00020
1 with Express about taking a potential job, did you
2 report that to anyone at the board?
3 A. I don't recall. I may have talked to Nathan
4 Hevrony and Dale Miller, but as I sit here, I don't
5 specifically recall --

6 Q. All right.
7 A. -- whether those discussions took place or
8 not.
9 Q. Do you know if you emailed them anything when
10 that happened?
11 A. I don't recall.
12 Q. Do you communicate with them on occasion by
13 email?
14 A. I communicate with them all the time.
15 Q. All right.
16 A. Email, text message, and otherwise.
17 Q. All right. And that's what I was going to
18 ask. Do you on occasion text message some of the
19 board members?
20 A. Yes, I do.
21 Q. And to your knowledge, have your text
22 messages that would have been on your phone in the
23 spring of 2013, were they ever searched for any
24 responsive documents?
25 A. I don't believe so.

(DN 116-1, pp. 8-9 [emphasis in original].)  Based on this deposition testimony, Kapsalis asserts

that "LeClair admitted that he communicates with the Babcock Board of Directors 'all the time'

about issues relevant to the case . . . ."  (DN 116-6, p. 3.)  Kapsalis goes so far as to claim that

"LeClair admitted to utilizing text messaging to communicate *about issues central to this*

*litigation*."  (DN 116-1, p. 13 [emphasis added].)  As a result, Kapsalis claims that he is entitled

to a search of text messages of ten people, including LeClair, John Hefferman, Anthony

Brandano, Tom Harmon, Chris Turner, Jim Walker, Mandred Pouzar, Cynthia Nichols, Margie

Farmer, and Kathy Norcut.  (*Id*.)

      Plaintiffs argue that LeClair did not actually testify that the text messages that he

reviewed in preparation for his deposition were from his cell phone or from the cell phones of

the other individuals listed.  Plaintiffs argue that, had counsel for Kapsalis asked follow-up

questions at the deposition, he or she would have discovered that LeClair reviewed text messages

16

that had previously produced to defendants and that were discovered on Kapsalis's cell phone. Additionally, plaintiffs assert that LeClair actually testified that he texted with the Board of Directors about unidentified topics and that, even if LeClair had communicated with the Board of Directors relating to this litigation, it would likely not be discoverable.

The Court finds that there is not a sufficient basis upon which to order plaintiffs to produce the forensic images of these cell phones at this time. The December 3, 2015 hearing did nothing to clarify the issue. For one, where the relevancy of a particular discovery request in dispute is not apparent on its face, the party seeking discovery has the burden of establishing relevancy. *Transcor, Inc. v. Furnia Charters, Inc.* 212 F.R.D. 588, 591 (D. Kan. 2003). The thought behind this common sense principle is that, while the relevancy standard may be a liberal one, it is not a license to go fishing with the hope that something might be discovered. *See Southard v. State Farm Fire and Cas. Co.*, 2012 WL 2191651, at *2 (S.D. Ga. June 14, 2012) ("But the relevancy standard for discovery is not the same as for at-trial evidence. For discovery it is more liberal, though not a fishing license."). Kapsalis has not stated in his brief why any text messages would be relevant to the lawsuit. That is, he argues that he is entitled to a search of the texts of ten individuals without stating why. Kapaslis's counsel attempted to clarify the issue at the December 3, 2015 hearing, but to no avail. (*See* DN 151, pp. 7-9.) At best, Kapsalis's counsel states that the texts would be responsive "*to the extent* he [Mr. LeClair] was discussing with his board the resignation of Mr. Kapsalis or other claims or issues in this litigation." (*Id*. at 8.) In the same breath, Kapsalis's counsel admits that plaintiffs did actually produce a "handful of text messages that they believed were responsive." (*Id*. at 8.) This situation demonstrates exactly why Kapsalis should have been more conscientious in crafting the

17

Motion to Compel. The Court is left guessing as to what has been produced and what Kapsalis is entitled to have produced and why. Just because text messages may exist does not mean that they are subject to discovery.

Furthermore, this portion of Kapsalis's motion rests on an apparent mischaracterization of LeClair's deposition testimony, at least by omission. Kapsalis provided to the Court highlighted deposition testimony that shows only that LeClair communicates with the Board of Directors in a variety of ways, including text messages and otherwise. Nowhere in the deposition excerpt provided to the Court does LeClair testify that he communicated with the Board of Directors about this litigation. Consequently, Kapsalis's assertion – based on the only testimony Kapsalis put before the Court – that "LeClair admitted to utilizing text messaging to communicate about issues central to this litigation" is without any apparent foundation or merit. (DN 116-1, p. 13.) The only admission that LeClair makes in the cited deposition testimony is that he did not search his phone for any text messages. And in his brief Kapsalis does not point to any specific discovery request that would have mandated a search of LeClair's text messages. Even if Kapsalis can point to such a discovery request, as his counsel finally did at the December 3, 2015 hearing, the Court questions the timing of Kapsalis's demand, as LeClair's deposition took place on October 15, *2014*. *See* Fed. R. Civ. P. 26(b)(2)(C)(ii) (stating that a court must limit discovery if the party seeking discovery has had ample opportunity to obtain the information by discovery in the action); (*see also* DN 151, p. 8.)

This issue is addressed by LeClair's declaration submitted by plaintiffs. In that declaration, LeClair states that the text messages he was referring to at his deposition were text messages previously produced to defendants at BPI 229-343 in this litigation. (DN 124-8, p. 1.)

18

LeClair further testifies that he does not have any specific recollection about whether he texted with members of the Board of Directors concerning this litigation, but that as a general practice, he does not text them about substantive matters.  (*Id.*)  Even if he did, chatter about pending litigation is not necessarily relevant to the prosecution or defense of the lawsuit itself.

In sum, at this time Kapsalis has offered no basis upon which to grant his request to order production of forensic images of the listed individuals' cell phones.  Therefore, the Motion to Compel will be denied insofar as it seeks forensic images of cell phones.

## III.     CONCLUSION

For these reasons, the Motion to Compel (DN 116) is GRANTED IN PART and DENIED IN PART.

The Motion to Compel is GRANTED insofar as it seeks (1) a full and complete identification of trade secrets by plaintiffs; and (2) a listing of materials provided by plaintiffs to expert witness Walker.

The Motion to Compel is DENIED insofar as is requests supplemental responses from plaintiffs to the February 12, 2014 discovery requests and forensic images of cell phones.

Accordingly,

IT IS ORDERED that plaintiffs provide to defendants, by **January 5, 2016**, a full and complete description, in narrative form, of the specific trade secrets that they claim are at issue; plaintiffs must also identify which documents produced constitute those trade secrets.

IT IS FURTHER ORDERED that plaintiffs shall provide to Kapsalis a list of the materials that they *provided* to Walker in conjunction with the preparation of his expert report for this matter by **January 5, 2016**.