**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**BABCOCK POWER, INC.,** *et al.*

      **Plaintiffs,**

**v.**                                **CASE NO. 3:13-CV-717-DJH-CHL**

**STEPHEN T. KAPSALIS,** *et al.*

      **Defendants.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is a Joint Motion for Protective Order (DN 117) filed by defendants Stephen T. Kapsalis and Express Group Holdings, LLC.  Plaintiffs Babcock Power, Inc. and Vogt Power International, Inc. filed a response (DN 125).  Pursuant to a court order, no replies were allowed.   The Court conducted a hearing on December 3, 2015.   Therefore, this matter is ripe for review.  For the reasons stated herein, the Joint Motion for Protective Order is denied.

**I.**      **BACKGROUND**

The Court has already set forth the background for this discovery dispute in its memorandum opinion and order (DN 155) entered December 17, 2015 and it is incorporated by reference here.

**II.**      **DISCUSSION**

Rule 26(c)(1) states, "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."

1

Defendants seek a protective order prohibiting plaintiffs from seeking any further discovery from them and staying all pending discovery until plaintiffs identify each trade secret allegedly misappropriated by defendants. Defendants further argue that the currently pending discovery directed to defendants is objectionable on independent grounds. The Court will address each contention below.

### A.      Identification of Trade Secrets

Plaintiffs have produced what appears to be an initial list of "the confidential, proprietary and trade secret information misappropriated by Kapsalis" identified by Bates-number. (DN 125, p. 7; *see also* DN 124-5.) Kapsalis has admitted as much in its Motion to Compel. (*See* DN 116-1, p. 10.) Even so, in the Joint Motion for Protective Order defendants contend that plaintiffs' identification of the trade secrets by Bates-number is not enough.

In their response, plaintiffs argue that the law only requires that they identify trade secrets with "reasonable particularity" prior to summary judgment. (DN 125, p. 9.) Plaintiffs contend that they have met this burden, not only by identifying the trade secrets by category in DN 65-1, but also by producing a document-by-document list. The Court has already expressed skepticism with plaintiffs' assertion that DN 65-1 describes their trade secrets with "reasonable particularity." The issue at hand, however, is whether the list of Bates-numbered documents contained in DN 124-5 meets the "reasonable particularity" standard.

At the December 3, 2015 hearing, although counsel for plaintiffs appeared to disagree with the notion that the trade secrets had not be identified with reasonable particularity, she did

2

agree that plaintiffs would identify their trade secrets with more particularity by January 5, 2016. While this may render the Joint Motion for Protective Order moot insofar as it addresses the failure to identify trade secrets, the Court finds that an analysis of the parties' arguments with respect to it is helpful to guide the discovery process and the parties' various obligations.

In their brief supporting the Joint Motion for Protective Order, defendants cite several opinions arising out of *Dura Global Techs, Inc. v. Magna Donnelly Corp*., No. 07-cv-10945, a case from the Eastern District of Michigan, and *Safety Today, Inc. v. Roy*, No. 2:12-cv-510, 2014 U.S. Dist. LEXIS 17116 (S.D. Ohio Feb. 11, 2014), to support their assertion that the list provided by plaintiffs does not identify the misappropriated trade secrets with "reasonable particularity." (*See* DN 117-1, pp. 18-19.) Based on these cases, which are examined below, defendants claim that the identification of the trade secrets by Bates-number is not enough; plaintiffs must also include a narrative description of them. Defendants further claim that plaintiffs' narrative description of their trade secrets as "strategic plans and strategic planning PowerPoint presentations, customer lists, schematics, project plans, project drawings, customer and client pricing information and communications" is not sufficient either.[1] (DN 117-1, p. 19.)

In *Dura Global Technologies, Inc. v. Magna Donnelly Corp*., No. 07-cv-10945, 2007 WL 4303294 (E.D. Mich. Dec. 6, 2007) ("2007 Dura Global Decision"), plaintiffs' disclosure of trade secrets consisted of "a list of general categories and types of information they allege comprise their trade secrets" as well as a reference to over 8,500 pages of documents. *Id*. at *4. It is not entirely clear whether plaintiffs produced actual trade secrets constituting 8,500 pages or whether plaintiffs generally asserted the 8,500 pages contained the trade secrets. *See id*. ("[I]t is not Defendant's burden to review over 8,500 sheets of paper, among the other information

---

[1] The Court notes that, although defendants appear to be quoting plaintiffs, defendants do not provide a citation.

provided, *to discern which material constitutes Plaintiffs' trade secrets* and further, which of those are the subject of Plaintiffs' claim for misappropriation.") (emphasis added).  Without more information, it appears this is what plaintiffs have done here.  That is, plaintiffs claim that the identified Bates-numbered documents contain documents that they contend are "proprietary, confidential, and/or a trade secret"; plaintiffs do not appear to delineate between the three categories.   (DN 125, p. 11.)  The 2007 Dura Global Decision lends support for the proposition that plaintiffs need to take the addition step of specifying which documents contained in DN 124-5 constitute actual trade secrets as opposed to proprietary or confidential information.

In *Dura Global Technologies, Inc. v. Magna Donnelly Corp*., No. 07-cv-10945, 2008 WL 2064516 (E.D. Mich. May 14, 2008) ("2008 Dural Global Decision") the Court once again examined the issue of whether plaintiffs had identified their trade secrets with reasonable particularity.  In the 2008 Dura Global Decision, the Court stated:

> Plaintiffs must create a list rather than a document in the style of a brief. The list should omit general references such as control plans, process plans, design reviews, drawings and work instructions and replace them with specific references to concrete documents. Plaintiffs argue in their Response brief that Defendant would have the Court order it to list virtually thousands of trade secrets. (Docket no. 83 at 8). If Plaintiffs are claiming the misappropriation of each of these thousands of trade secrets, such a list is required by the reasonable particularity standard . . . .

*Id.* at *2.  Here, it appears that plaintiffs have, at least, produced a list of documents that includes trade secrets; the list, however, does not specify which documents constitute the claimed trade secrets.   Therefore, it seems that, with the identification of which documents in DN 124-5 constitute trade secrets, as opposed to just proprietary or confidential information, plaintiffs will have complied with the directives of the 2008 Dura Global Decision.

4

In *Safety Today, Inc. v. Roy*, Civ. No. 2:12-cv-510, 2014 U.S. Dist. LEXIS 17116, plaintiff was asked to identify, via an interrogatory, the trade secrets it claimed were misappropriated.  In response to that request, plaintiffs produced thousands of documents and generally described the information contained therein as "pricing, cost, inventory, profit, sales, and other proprietary information."  *Id*. at *5.  In other words, plaintiff put the burden on defendant to extract the information.   In ordering plaintiff to supplement its interrogatory answers, the Court observed:

> [T]he typical case involving trade secret claims and former employees is that some measure of the information those employees learned while working for the plaintiff is regarded by their employer as a trade secret, and that "secret" is usually a combination of things like pricing, customer lists, customer purchasing needs or habits, product specifications, and other information used in the day-to-day business of selling products in a competitive market. Only the employer will know what portion of that myriad of information known to its employees can legitimately be claimed as a trade secret, and no amount of record production - which, by rule, is to be a production of the producing party's business records, but which, in this case, appears to consist of documents which Defendants previously produced in discovery - can provide the appropriate answer to the question.

*Id*. at *10.  The Court further observed that, in this particular case, plaintiff had compounded the problem by failing to make any specific designation of information it regarded as trade secrets. The Court also observed that plaintiff's assertion that everything contained in the 3,500 pages of documents produced constituted trade secrets was simply not borne out by the documents themselves.  *Id*.  The Court stated, "Generally, whenever a party asserting a trade secret claim is asked to identify the information for which it seeks protection, the 'identification must be particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.'"  *Id*. at *11 (quoting, in part, *Dow*

5

*Chemical Canada, Inc. v. HRD Corp*., 909, F. Supp. 2d 340, 346 (D. Del. 2012)).  Consequently, the Court concluded:

> It is not too much to ask a trade secret plaintiff to explain exactly what information it contends is protected from unwanted disclosure. In some cases, if much information is involved, that will require some effort, but that is a function of the breadth of the plaintiff's claims; the broader it seeks to extend trade secret protection, the more information it may have to disclose. In any event, prior to trial, that type of collation and identification of information will be necessary in order for the jury to understand the claims and properly interpret the evidence, and if a summary judgment motion challenging the existence of trade secrets is filed, a plaintiff has a similar burden of explaining its claims in a way that the Court can compare them to the statutory requirements for affording trade secret protection.

*Id*. at *13.  Plaintiff was then ordered to supplement its response to the interrogatory.

*Safety Today, Inc*. suggests that identification of documents as trade secrets is not enough, and that plaintiffs must also include a detailed, narrative description of the trade secrets as well.  The Court has not reviewed any of the documents produced by plaintiffs, nor does the Court have any idea whether the identification of the alleged trade secrets can be done by pointing to a document.  Based on the information before it, however, it appears that plaintiffs need to produce a detailed narrative description of what they contend are their trade secrets; simply pointing to documents described as proprietary, confidential, and/or a trade secret is not enough.

In sum, the Court finds that plaintiffs' attempt to identify trade secrets thus far is best described as "close, but no cigar."  The identification of plaintiffs' trade secrets is also the subject of the Motion to Compel (DN 116) filed by Kapsalis; the Court finds that the order addressing the Motion to Compel is the better vehicle through which to order plaintiffs to take

action.   Therefore, based on its foregoing analysis, as well as plaintiffs' agreement at the December 3, 2015 hearing to do so, the Court will, in that order, direct plaintiffs to describe, in narrative form, the specific trade secrets that they claim are at issue and to also identify which documents produced constitute those trade secrets.  (*See* DN 151, pp. 29-31; *see also* DN 155.)  The Court anticipates that, because plaintiffs have already identified a large portion of documents that include the trade secrets, their compliance with this mandate will not be burdensome.  In any event, the time has come for plaintiffs to do so.  As a result of that order, the failure to identify trade secrets will longer serve as a basis upon which to stay and/or prohibit discovery.

### B.     Other Objections to Discovery Sought by Plaintiffs

#### 1.     Continued deposition of Kapsalis

Plaintiffs noticed a second or "continued" deposition for Kapsalis on October 9, 2015.  Defendants seek a protective order preventing the deposition of Kapsalis from occurring because he has already been deposed once for over seven hours on October 6, 2014.  Plaintiffs do not deny that Kapsalis has already been deposed for over seven hours; plaintiffs do not deny they did not seek leave to depose Kapsalis again.  Instead, plaintiffs state, "As a preliminary matter, there are two plaintiffs in this case, so the seven-hour rule may not even apply."  (DN 125, p. 13.)  Plaintiffs cite no case law.  Plaintiffs further state that they have good cause to depose Kapsalis; documents produced in August 2015 were unavailable to plaintiffs at the time of Kapsalis's first deposition.

Rule 30(d)(1) of the Federal Rules of Civil Procedure states, "Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours.  The court must allow

additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent . . . ." Fed. R. Civ. P. 30(d)(1).  Rule 30(a)(2)(A)(ii) states that a party *must* obtain leave of court to examine a deponent that "has already been deposed in the case."  *Id*. at 30(a)(2)(A)(ii).  Consequently, plaintiffs must seek leave of court to depose Kapsalis again; they have provided no case law stating that they are exempt from this requirement.  Accordingly, the proper course of action for plaintiffs was to file a motion for leave to continue Kapsalis's deposition.  However, the Court is hesitant to invite any party to file yet another discovery motion in this matter.  Additionally, plaintiffs proffer a good reason to depose Kapsalis again, *i.e*., production of documents unavailable at the time of his first deposition.  Therefore, the Court will construe plaintiffs' response as a motion for leave of court to depose Kapsalis, at a mutually-agreed upon date and time, regarding the recently-produced documents.  Plaintiffs are warned that they are not to cover topics already covered at the October 2014 deposition; per plaintiffs' representations to the Court, plaintiffs only seek to depose Kapsalis on the documents produced in August 2015.  The deposition shall be limited to two (2) hours.  Should plaintiffs seek more time, they shall file a formal motion with the Court.  Plaintiffs are warned to err on the side of caution in the future when determining compliance with the Federal Rules of Civil Procedure.  Defendants' Joint Motion for Protective Order is denied insofar as it seeks to preclude a second deposition of Kapsalis.

### 2.    Rule 30(b)(6) deposition of Express

Defendants state that on October 9, 2015, plaintiffs served a 30(b)(6) notice on Express, "seeking to inquire into all aspects of Express' business having nothing to do with Plaintiffs' claims . . . ."  (DN 117-1, p. 23.)  Plaintiffs claim that the 30(b)(6) deposition is necessary and

proper because it will cover (1) sales and marketing efforts made to a specific group of five customers, all of whom they allege Kapsalis improperly contacted during the term of the non-disclosure agreement and following the entry of the TRO; (2) revenues received by Express from that same group of customers; (3) Express's strategic planning, business development, and marketing processes; and (4) revenues relating to products and services with which Express competes with BPI and/or Vogt Power.

Defendants have not provided enough information for the Court to assess their objections to the 30(b)(6) deposition.  Plaintiffs' reasons for taking the 30(b)(6) deposition seem, on their face, mostly reasonable, although they could certainly expound much more.  Consequently, at this juncture, the Joint Motion for Protective Order is denied insofar as it relates to the 30(b)(6) deposition.

### 3.    October 9, 2015 and October 27, 2015 written discovery

Both parties have engaged in an extensive "from-my-perspective" view of the history of the case without actually giving the Court much to work with in terms of trying to resolve the actual, current discovery disputes at hand.  The Court should not have to (and will not) guess what discovery requests are the subject of a motion to compel or a motion for protective order. The parties have demonstrated their attention to detail in narrating each other's wrongs; the Court expects that same attention to detail in addressing the *specific* discovery requests that are actually at issue.  Any party filing a motion to compel or motion for protective order with respect to discovery requests shall identify and recite the specific discovery request(s) by number (and response(s) if relevant) at issue and describe exactly why the information sought is relevant, why a particular response is deficient, or why a particular request is burdensome, overbroad, etc.

In general, defendants appear to object to plaintiffs' October 9 and October 27 discovery requests, in part, because they seek information, documents, and testimony from 2010 to the present.  Defendants take issue with this date range because Kapsalis was not employed by Express before April 2013, and the "non-divert" clause of the Agreement expired in April 2014. At the hearing conducted on December 3, 2015, counsel for plaintiffs indicated that she would be open to narrowing the scope of these discovery requests.  (DN 151, pp. 55-57.)  Therefore, defendants' Joint Motion for Protective Order is denied to the extent it seeks relief from responding at all to plaintiffs' October 9 and October 27 discovery requests; the parties are encouraged to continuing working on a resolution of this dispute.

### 4.    Cost-shifting

Defendants ask the Court to order plaintiffs to pay their expenses in responding to additional discovery conducted by plaintiffs.  The Court finds no basis upon which to ignore the traditional rule and shift costs of discovery to plaintiffs at this time.  Therefore, the Joint Motion for Protective Order will be denied insofar as it makes this request.

### C.    Remaining Issues

Given the multiplicity of discovery-related pleadings and the rancor evident therein, the Court will take the unusual – and typically unnecessary – step of commenting upon all parties' approach to discovery in this case.

As for defendants, the Court is not moved by the reference to another case pending in Massachusetts.  The Court does not see how the Massachusetts case relates factually or legally to the case at hand.  The Court cautions defendants (and plaintiffs for that matter) to address only issues that are relevant and that are actually before the Court.  Furthermore, defendants, in

particular, have a habit of quoting phrases or sentences without providing any citation to aid the Court in locating the source of the quoted material.  While the Court will address these issues and any consequences in another order, it bears mention here.  For example, in their brief, defendants state, "The only narrative identification of the alleged trade secrets offered by Plaintiff are generic descriptions of the trade secrets as 'strategic plans and strategic planning PowerPoint presentations, customer lists, schematics, project plans, project drawings, customer and client pricing information and communications.'"  Defendants provide no citation or otherwise indicate from where this quotation from plaintiffs allegedly came.  (DN 117-1, p. 19.) In this same vein, the Court is particularly disturbed by defendants' inclusion of a direct quote attributed to the undersigned at the September 1, 2015 status conference.  (*See* DN 117-1, p. 9.) Defendants fail to provide any citation.  Nor could they have, as there is no official transcript from that status conference.  While a summarization of a statement or argument made may be appropriate, no party should use quotations without citation to a source.

Plaintiffs fare no better in their casual treatment of the Federal Rules of Civil Procedure, particularly with respect to the second deposition of Kapsalis.  Additionally, at least one argument made by counsel for plaintiffs at the December 3, 2015 hearing was directly and convincingly refuted by counsel for defendants during the hearing.  (*See* DN 151, pp. 55-57.)

In short, the Court cautions counsel not to lose sight of the forest for the trees.  The end goal is to have a just final resolution of this matter.  To help the Court further that goal, counsel should follow all applicable procedural and citation rules and providing the Court with concise, direct argument supported by law.

11

III.    **CONCLUSION**

For the foregoing reasons, the Joint Motion for Protective Order is denied.

Accordingly,

IT IS ORDERED that the Joint Motion for Protective Order (DN 117) is DENIED.

IT IS FURTHER ORDERED that the plaintiffs are GRANTED leave to depose Kapsalis a second time, at a mutually agreeable time and place, for two (2) hours.  Plaintiffs are warned that they are not to cover topics already covered at the October 2014 deposition; per plaintiffs' representations to the Court, plaintiffs are limited to deposing Kapsalis on the recently-produced documents from August 2015.

12