UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BABCOCK POWER, INC., *et al*.

      Plaintiffs,

v.                                     CASE NO. 3:13-CV-717-DJH-CHL

STEPHEN T. KAPSALIS, *et al*.

      Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Compel (DN 127) filed by Plaintiffs Babcock Power, Inc. and Vogt Power International, Inc.  Specifically, plaintiffs seek an order compelling defendant Express Group Holdings, Inc. to respond to their first set of interrogatories and requests for production.  Express has filed a response (DN 133).  Pursuant to a court order, no replies were allowed.  Therefore, this matter is ripe for review.  For the reasons stated herein, the Motion to Compel is denied.

## I.     BACKGROUND

The Court has already set forth the background for this discovery dispute in its order (DN 155) entered December 17, 2015 and is incorporated by reference here.

## II.    DISCUSSION

Plaintiffs assert that they served their first set of interrogatories and requests for production on Express on November 21, 2014.  (DN 127-1, p. 1.)  Plaintiffs further state that Express served its response on September 16, 2015.  (*Id*.)  Plaintiffs argue that those responses are incomplete.

1

Express argues that the Motion to Compel should be denied because (1) plaintiffs have failed to identify their trade secrets with specificity; and (2) the specific discovery requests are overly broad, not likely to lead to the discovery of admissible evidence, and/or have been previously answered.

The Court has already considered defendants' position that plaintiffs should not be permitted to conduct discovery until plaintiffs provide a full and complete identification of trade secrets.  And the Court has directed plaintiffs to do so.  Consequently, plaintiffs' failure to provide a full and complete identification of trade secrets will no longer serve as a reason to avoid complying with discovery requests.  The Court will address the other contentions below.[1]

**A.      Interrogatory Answers**

Plaintiffs take issue with Express's responses to these interrogatories:

Interrogatory No. 7
Identify all individuals Express retained as either internal or external sales agents or representative from April 11, 2013 to the present and the accounts to which these individuals were assigned.

Interrogatory No. 8
Identify all Express employees involved with sales or customer relations from April 11, 2013 to the present and the positions held by those employees.

Interrogatory No. 9
Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants, employees or successors of Black & Veatch from April 11, 2013 to the present.

Interrogatory No. 10
Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents,

---

[1] Both parties also make arguments more appropriate for summary judgment.  The Court will focus its opinion on the specific discovery requests delineated in the Motion to Compel.

representatives, attorneys, servants, employees or successors of Thailand Gulf Oil from April 11, 2013 to the present.

Interrogatory No. 11
Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants, employees or successors of Calpine from April 11, 2013 to the present.

Interrogatory No. 12
Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants, employees or successors of M&G Co Generation from April 11, 2013 to the present.

Interrogatory No. 13
Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants, employees or successors of Flour and Iron [sic] [2] from April 11, 2013 to the present.

Interrogatory No. 14
Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants, employees or successors of Chicago Bridge and Iron from April 11, 2013 to the present.

Interrogatory No. 15
Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants, employees or successors of VIPCO from April 11, 2013 to the present.

Interrogatory No. 16
Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants, employees or successors of Siemens from April 11, 2013 to the present.

Interrogatory No. 17
Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents,

---

[2] This appears to be a typographical error. Plaintiffs did not attach a copy of the interrogatories to their motion, only Express's answers. In that document, Interrogatory No. 13 references an entity named, "Flour." (DN 127-2, p. 7.)

3

representatives, attorneys, servants, employees or successors of KU
Energy, LLC from April 11, 2013 to the present.

Interrogatory No. 18
Identify all Express employees, agents, representatives, attorneys, servants
or successors who communicated in any manner with any agents,
representatives, attorneys, servants, employees or successors of LG&E
from April 11, 2013 to the present.

Interrogatory No. 19
Identify all Express employees, agents, representatives, attorneys, servants
or successors who communicated in any manner with any agents,
representatives, attorneys, servants, employees or successors of Bill
Schwartzkopf and/or Sage Consulting from April 11, 2013 to the present.

(DN 127-1, pp. 3-5.)

While plaintiffs' efforts to identify the discovery requests at issue are somewhat better
than defendants' prior attempts, they still use some ambiguous language such as "[a]mong the
interrogatories Express has refused to answer are the following . . . ."  (DN 127-1, p. 3.)
Nonetheless, the specific discovery requests recited by plaintiffs are the ones that the Court will
assume are at issue.

Plaintiffs generally argue that these interrogatories are aimed at identifying Express
employees and agents who would have been in a position to assist Kapsalis with regard to the
solicitation of customers, clients and business opportunities that would violate the Agreement as
well as the TRO entered by the Court on July 23, 2013.  (*Id*. at 5.)  Plaintiffs cite an e-mail
exchange between Kapsalis (Exhibit B to the Motion to Compel and filed under seal at DN 130-
7)[3] and a certain entity in support of their contention that Kapsalis violated the Agreement and
the TRO.  Plaintiffs do not specify which provision of the Agreement that Kapsalis would have

---

[3] Although DN 130-7 is described by plaintiffs as Exhibit B to the Motion to Compel (see DN
127-3) it is labeled "Exhibit D."

violated by soliciting unidentified customers, clients, and business opportunities.  Therefore, the Court is left to assume.  The Court *assumes* that plaintiffs are referring to the clause in the Agreement that states, "During the period of my employment with the Company and for one (1) year thereafter, regardless of the reasons for my termination of employment with the Company I will not . . . (iii) divert or attempt to divert away from the Company any business opportunity for a job, contract or other business relationship that was *ongoing or actively pursued* by the Company during the one year prior to the termination of my employment."  (DN 1, pp. 4-5 [emphasis added].)

Plaintiffs further claim that this information is relevant to their claims for damages.  For example, plaintiffs argue that the Kentucky Uniform Trade Secrets Act provides three alternatives for an award of damages:  (1) actual loss caused by misappropriation; (2) unjust enrichment caused by misappropriation; and (3) imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.  (DN 127-1, p. 6.)  Plaintiffs also claim that their other causes of action would warrant an award of damages in the form of the disgorgement of illicit gains, among other things.  Assuming plaintiffs are correct with respect to their entitled damages, plaintiffs fail to show specifically how each individual interrogatory gets at obtaining the particular information they seek.

Instead, plaintiffs generally aver that the purpose of these interrogatories is to identify Express employees who would have been in a position to assist Kapsalis, or act as his proxy, with regard to solicitation of customers and client/business opportunities.  Plaintiffs also state that these individuals would have knowledge regarding sales and marketing efforts undertaken by Express with respect to key customers of Vogt, the reasons such customers were deemed

5

important to Express, any communications that they may have had with Kapsalis or others about the importance of such customers, any plans Express had to expand its relationship with these customers, and any plans Express may have had to intrude on Vogt's market place using information that Kapsalis took with him when he left the employment of Vogt.

Express argues that neither the Agreement nor Court order prevented Kapsalis from (1) working for a competitor, like Express; (2) contacting any customer of plaintiffs for any purpose other than diverting their business away from plaintiffs (and only applicable for the one-year period); and (3) soliciting any customer for any purpose other than diverting business away from plaintiffs (and only applicable for the one-year period). Express further argues that it has no contractual agreement with plaintiffs and is therefore not prohibited from doing business with customers who have also done business with plaintiffs as long as it does not assist Kapsalis in violating the Agreement. Express also argues that it has already produced documents and information relevant to plaintiffs' claims.

The Court finds that, based on the information before it, plaintiffs' Motion to Compel should be denied insofar as it seeks supplemental answers to the first set of interrogatories to Express. For one, plaintiffs have not given the Court sufficient information upon which to evaluate its Motion to Compel. If the relevancy of a particular discovery request in dispute is not apparent on its face, the party seeking discovery has the burden of establishing relevancy. *Transcor, Inc. v. Furnia Charters, Inc*. 212 F.R.D. 588, 591 (D. Kan. 2003). The thought behind this common sense principle is that, while the relevancy standard may be a liberal one, it is not a license to go fishing with the hope that something might be discovered. *See Southard v. State Farm Fire and Cas. Co*., 2012 WL 2191651, at *2 (S.D. Ga. June 14, 2012) ("But the relevancy

standard for discovery is not the same as for at-trial evidence. For discovery it is more liberal, though not a fishing license.").

Plaintiffs do not recite Express's answers in the memorandum supporting the Motion to Compel or otherwise explain why each answer is deficient. Plaintiffs do not specify why *each* interrogatory listed above is relevant to their claim for damages. Significantly, plaintiffs do not attempt to explain why the identification of Express employees who communicated with the *specific entity* mentioned in the interrogatory is relevant to their claims. For example, assuming plaintiffs are attempting to ascertain whether Kapsalis breached the clause of the Agreement recited above, through proxy or otherwise, it would be helpful to the Court if they stated that each was entity was a business opportunity that was ongoing or actively pursued by plaintiffs during the one year preceding the termination of Kapsalis's employment with plaintiffs.

Second, the Court finds that the interrogatories are overbroad and unduly burdensome. For example, the Agreement states that, for *one year following his termination* with Babcock, *Kapsalis* may not "divert or attempt to divert any business opportunity for a job, contract or other business relationship that was ongoing or actively pursued by the Company during the one year prior to the termination of my employment." (DN 1, pp. 4-5.) Kapsalis's employment with plaintiffs ended in April 2013. Therefore, by terms of the Agreement, this restriction lasted only until April 2014 and applied only to Kapsalis. The preliminary injunction entered on December 24, 2013 did not expand the scope of this restriction. (DN 35, pp. 1-2 ["Defendant is restrained from soliciting or otherwise initiating further contact or communications with any Babcock or Vogt Power customers for the purpose of inviting, encouraging, or requesting the transfer of an account or business patronage from Babcock or Vogt Power."]). The preliminary injunction

7

specifically stated that this provision would expire on the earlier of the following dates (1) resolution of the matter; or (2) April 11, 2014, the one-year anniversary of Kapsalis's termination from Vogt.  (*Id.* at n.1.)

Plaintiffs have offered evidence of communications between Kapsalis and another entity in support of their contention that Kapsalis violated the Agreement, at least with respect to the clause recited above.  Thus, the Court could envision an interrogatory seeking identification of "all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants, employees or successors" *of that particular entity about a specific subject* from April 11, 2013 to April 11, 2014.  It is possible that plaintiffs intended to obtain that information via Interrogatory No. 13.  Plaintiffs, however, do not limit that Interrogatory in scope and instead ask for the identity of Express's employees who "communicated in any manner" with "Flour" from April 11, 2013 *to the present*.  Finally, these interrogatories are sweeping, casting a wide net which places a large burden on Express without proper justification.  In sum, without more information, it is not apparent to the Court why plaintiffs need this information.  *See In re Great Lakes Factors, Inc.*, 331 B.R. 347, 352 (Bankr. N.D. Ohio 2005) ("[T]he Court finds that, while not necessarily irrelevant, the Plaintiffs' discovery requests regarding the Business Manager Program are both overbroad and burdensome, and therefore should be restricted.").

Therefore, plaintiffs' Motion to Compel is denied insofar as it seeks supplemental answers from Express with respect to the first set of interrogatories at this juncture.  That being said, at the December 3, 2015 hearing, the parties indicated that they would work together to

come to an agreement regarding the scope of plaintiffs' discovery requests; the Court expects them to do so and will consider any remaining disputes at a later time.

### B.      Requests for Production

Plaintiffs claim that Express has "refused to produce a single document in response to requests from Plaintiffs . . . ." (DN 127-1, p. 7.)   Plaintiffs then argue that the documents requested are "clearly relevant to Plaintiffs' claims" and include the following categories:

> Communications between Express and its agents (including sales representatives) and Black & Veatch, Thailand gulf Oil, Calpine, M&G cogeneration, Fluor, Chicago Bridge and Iron, VIPCO, Siemens, KU energy, LG&E and Bill Schwartzkoph (Request for Production Numbers 6-16.)

> Documents that include, reference or rely upon BPI and Vogt Power's confidential, proprietary and trade secret information (Request for Production Number 17.)

> Communications between Kapsalis and the Express Board of Directors (Request for Production Number 21 & 22.)

(DN 127-1, p. 7.)

With respect to the first category of requests for production, Requests for Production 6-16, the Court finds that, at least based on the information contained in the Motion to Compel and accompanying memorandum, the only request for production for which plaintiffs have demonstrated some sort of relevancy is Request No. 10 and only for communications occurring between April 11, 2013 and April 11, 2014.  (*See* DN 127-2, p. 14; *see also* DN 130-7 [Ex. B to Motion to Compel].)  In its response to Request No. 10, Express states, "Such documents have previously been produced."  (DN 127-2, p. 14.)   Nowhere do plaintiffs acknowledge this statement; instead, they contend that Express has refused to "produce a single document." (DN

127-1, p. 7.)[4]  Similar to the interrogatories, plaintiffs have not given the Court sufficient information upon which to evaluate its Motion to Compel with respect to the requests for production.  Plaintiffs have not demonstrated why communications with respect to each entity described in Requests for Production 6-9 and 11-16 are relevant to its claims or alleged damages.  Plaintiffs have not stated why they need "[a]ny and all communications" as opposed to communications regarding a specific topic; Requests for Production 6-16 are also overbroad for this reason.

Furthermore, contrary to plaintiffs' assertion that it seeks "confidential, proprietary and trade secret information," Request for Production 17 actually requests, "Any and all documents created, produced, owned or maintained by you that include, reference or rely upon information concerning, controlled or maintained by BPI or Vogt."  (DN 127-2, p. 16.)  In addition to being overbroad, this request is vague.

Request No. 21 requests "[a]ny and all documents concerning the performance of Stephen Kapsalis, including but not limited to, any performance reviews conducted by Express, Express' Board of Directors or the Sterling Group."  (DN 127-2, p. 17.)  The Court finds that the relevancy of the documents sought via Request for Production No. 21 is not obvious and has not been established by plaintiffs at this juncture.

Finally, Request No. 22 requests, "[a]ny and all presentations made by Stephen Kapsalis, including presentations made to Express, Express' Board of Directors or the Sterling Group."  (*Id*.)  In part of its response, Express points to the categories of documents described in its

---

[4] It is apparent that at least one side is not being sufficiently forthcoming or careful in its choice of words.  Either Express has produced documents in response to plaintiffs' requests for production or it has not.  All parties should take greater care in the future when making representations to the Court.

10

answer to Interrogatory No. 6, which includes the results of the search of Kapsalis's laptop, external hard drive, and several flash drives, among other things.   Plaintiffs do not state why this specific response is deficient.   Plaintiffs do not explain why they need "[a]ny and all presentations" made by Kapsalis without limit on time or subject.

In sum, plaintiffs have not provided the Court with enough information with which to properly evaluate its Motion to Compel.  Moreover, on their face and without more information, plaintiffs' discovery requests are overbroad and/or unduly burdensome.   Consequently, the Motion to Compel will be denied.

That being said, at the December 3, 2015 hearing, the parties indicated they would work together to come to an agreement regarding the scope of plaintiffs' discovery requests; the Court expects them to do so and will consider any remaining dispute at a later time.

## III.    CONCLUSION

For the foregoing reasons, the Motion to Compel (DN 127) filed by plaintiffs is DENIED.

IT IS FURTHER ORDERED that, per their representations at the December 3, 2015 hearing, the parties shall make an effort to come to an agreement regarding the scope of plaintiffs' discovery requests.