# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

BABCOCK POWER, INC., *et al*.

      **Plaintiffs,**

v.                                                                                      CASE NO. 3:13-CV-717-DJH-CHL

STEPHEN T. KAPSALIS, *et al*.

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Before the Court is a "Motion for Protective Order, to Quash Subpoena, and for Sanctions, Including Cost-Shifting" ("the Motion") (DN 118) filed by non-party the Sterling Group, L.P. On November 9, 2015, plaintiffs Babcock Power, Inc. and Vogt Power International, Inc. filed an opposition to the Motion (DN 126).[1] Pursuant to a court order, no replies were allowed. Therefore, the Motion is ripe for review.

**I.      BACKGROUND**

The Court has already set forth the background for this discovery dispute in its memorandum opinion and order (DN 155) entered December 17, 2015; DN 155 is incorporated by reference here.

The Motion at issue addresses a subpoena *duces tecum* (DN 118-2) issued by plaintiffs' counsel to Sterling. Sterling did not produce any documents in response to the subpoena, choosing instead to file the instant Motion.

---

[1] Plaintiffs also filed a motion to strike (DN 128) with respect to certain portions of the Motion. The motion to strike will be addressed in a separate order.

1

## II. DISCUSSION

In its Motion, Sterling requests the following actions: (1) that the subpoena at issue be quashed; (2) that a protective order be entered that bars discovery by plaintiffs of Sterling until plaintiffs define their alleged trade secrets with specificity and further excluding discovery by plaintiffs related to their purported non-solicitation claim; (3) an award of Sterling's costs incurred in any future discovery; and (4) an award of sanctions against plaintiffs in the form of costs and attorneys' fees incurred by Sterling in responding to the subpoena at issue. (DN 118, p. 1.) The Court will address each category below.

### A. Quash Subpoena

The Court has ordered plaintiffs to identify with particularity the trade secrets at issue. (*See* DN 155). As a result, Sterling will not be excused from complying with a subpoena on that basis in the future.

A party or attorney responsible for issuing and serving a subpoena must take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d). "Although irrelevance or overbreadth are not specifically listed under Rule 45 as a basis for quashing a subpoena, courts 'have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26.'" *TCYK, LLC v. Does 1-47*, No. 2:13-CV-539, 2013 WL 4805022, at *4 (S.D. Ohio Sept. 9, 2013) (quoting, in part, *Hendricks v. Total Quality Logistics*, LLC, 265 F.R.D. 251, 253 (S.D. Ohio 2011)); *see also* 9A Charles Alan Wright, Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2015) ("[T]he matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by . . . Rule 26(b)(1).").

The Court will address each request in the subpoena at issue below.

**Request No. 1: All correspondence (either electronic or otherwise) between or among Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from December 1, 2012 to the present that has not previously been produced.**

Sterling takes issue with this request because (1) it is not limited in subject matter; and (2) it stretches from five months *before* Kapalis starting working at Express to the present and is not limited to the one year time period (April 11, 2013 – April 11, 2014) referred to in the "non-divert" portion of the Agreement entered into between Kapsalis and Babcock at the beginning of Kapalis's employment with Babcock. Sterling refers to this argument with respect to Requests 2-13; the Court will not repeat this argument in its analysis of those requests.

Plaintiffs generally argue that each and every request made by plaintiffs is relevant to determination of damages for Kapsalis's breach of the Agreement. Plaintiffs specifically argue that December 1, 2012 is the approximate time that Kapsalis began communicating with Express (presumably about his eventual employment with Express) and is limited in scope because it seeks communications between Kapsalis and three individuals at Sterling involved with Express. Plaintiffs assert that the intent of the request is to determine the extent of Kapsalis's dissemination of plaintiffs' confidential and competitive sensitive information.

Sterling interprets relevancy very narrowly, focusing *only* on the "non-divert" provision of the Agreement while plaintiffs *appear* to rely on a different provision addressing non-divulgence of confidential information during employment and for five years thereafter. (*See* DN 27-1, pp 2, 4.) Nonetheless, the Court agrees that this request is overbroad because it is not limited to a specific subject matter. The Court has less qualms about the time period for which communications are sought due to non-divulgence provision of the Agreement. That said, the

3

large span of time – approximately four years – for which plaintiffs request communications among these people makes it even more imperative that the subject matter be defined with specificity, especially when plaintiffs are truly in the best position to determine what it considers confidential information. Furthermore, Rule 26(b)(1) demands it. And now, not only must the information sought be relevant, the burden of producing it must be proportional to the needs of the case and important to resolving the issues. Given that the request uses the phrase "and/or" and applies to four individuals, it applies to 24 permutations of possible communications about an un-defined universe of topics. Viewed in this light, the Request is extraordinarily broad, before even getting to the question of proportionality.

Accordingly, the Motion will be granted insofar as it relates to Request No. 1.

**Request 2: All correspondence (either electronic or otherwise) between Bob Hogan and Kevin Garland, Gary Rosenthal and/or Brad Staller concerning Stephen Kapsalis from March 1, 2013 to the present that has not previously been produced.**

Sterling makes the same argument as it did with respect to Request No. 1. Plaintiffs make the same arguments as well; plaintiffs also state that communications between Hogan and key personnel at Sterling concerning Kapsalis are likely to lead to admissible evidence about Kapsalis's admitted solicitations of Vogt Power and Babcock customers and Express's plans to expand in the heat recovery steam generator ("HRSG") market.

For the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter. Correspondence concerning Kapsalis could encompass a wide range of correspondence that has no relevance to this case. The request is not tailored to seek the information plaintiffs say they seek.

Accordingly, the Motion will be granted insofar as it relates to Request No. 2.

**Request 3: All correspondence (either electronic or otherwise) between Bob Hogan and Kevin Garland, Gary Rosenthal and/or Brad Staller concerning Express from March 1, 2013 to the present that has not previously been produced.**

Sterling and plaintiffs make the same arguments that they did with respect to Request No. 2. For the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter. Correspondence concerning Express could encompass a wide range of communications that have no relevance to this case. The request is not tailored to seek the information allegedly sought by plaintiffs.

Accordingly, the Motion will be granted insofar as it relates to Request No. 3.

**Request 4: All correspondence (either electronic or otherwise) between Todd Holmstrom and Kevin Garland, Gary Rosenthal and/or Brad Staller concerning Stephen Kapsalis from March 1, 2013 to the present that has not previously been produced.**

Sterling makes the same arguments as it did with respect to Request No. 1. Plaintiffs do as well and also state that Holmstrom corresponded with Sterling *in February and March 2014* concerning Kapsalis's plans and the strategic direction for Express. Plaintiffs assert that these communications are relevant because, based on evidence adduced to date, Kapsalis had extensive plans for Express to expand in the HSRG market and begin competing with Vogt Power on worldwide basis using Vogt Power's contact list and other information that he obtained during his employment with Vogt. Plaintiffs' request is not so limited, however. For this reason, as well as the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter or scope.

Accordingly, the Motion will be granted insofar as it relates to Request No. 4.

**Request 5: All correspondence (either electronic or otherwise) between Todd Holmstrom and Kevin Garland, Gary Rosenthal and/or Brad Staller concerning Express from March 1, 2013 to the present that has not previously been produced.**

Sterling and plaintiffs make the same arguments as they did with respect to Request No. 4. For the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter or scope.

Accordingly, the Motion will be granted insofar as it relates to Request No. 5.

**Request 6: All correspondence (either electronic or otherwise) between Stephen Kapsalis and the Board of Directors for Express Group Holdings from December 1, 2012 to the present that has not previously been produced.**

Sterling and plaintiffs make the same arguments as they did with respect to Request No. 1. Plaintiffs also state that Kapsalis sent portions of the strategic planning documents of Vogt and Babcock to the Express Board of Directors. Plaintiffs assert that they are entitled to know if other documents or portions of documents were also sent to the Express Board of Directors. Plaintiffs assert that this request is narrowly tailored to obtain this information. The Court disagrees; the subject matter of the correspondence is not limited in any fashion. For the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter or scope.

Accordingly, the Motion will be granted insofar as it relates to Request No. 6.

**Request 7: All PowerPoint presentations sent to The Sterling Group L.P. ("Sterling") from Stephen Kapsalis from March 1, 2013 to the present that have not previously been produced.**

Sterling makes the same argument as it did with respect to Request No. 1; plaintiffs make the same argument that it did with respect to Request No. 6.

For the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter or scope. As with other types of communication already discussed, a PowerPoint presentation can be about literally anything.

Accordingly, the Motion will be granted insofar as it relates to Request No. 7.

**Request 8: All PowerPoint presentations sent from Sterling to Stephen Kapsalis from March 1, 2013 to the present that have not previously been produced.**

Sterling makes the same argument as it did with respect to Request No. 1; plaintiffs make the same argument that it did with respect to Request No. 6.

For the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter or scope.

Accordingly, the Motion will be granted insofar as it relates to Request No. 8.

**Request 9: All PowerPoint presentations sent to or from employees and/or partners of Sterling concerning Express from March 1, 2013 to the present that have not previously been produced.**

Sterling makes the same argument as it did with respect to Request No. 1; plaintiffs make the same argument that it did with respect to Request No. 6.

For the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter or scope.

Accordingly, the Motion will be granted insofar as it relates to Request No. 9.

**Request 10: All PowerPoint presentations prepared for the Board of Directors of Express from March 1, 2013 to the present concerning Express product lines and markets, including but not limited to HRSGs, that have not previously been produced.**

Sterling makes the same argument as it did with respect to Request No. 1; plaintiffs make the same argument that it did with respect to Request No. 6. That is, plaintiffs state that request is based on the fact that Kapsalis sent portions of the strategic planning documents of Vogt and

7

Babcock to the Express Board of Directors. Plaintiffs assert that they are entitled to know if other documents or portions of documents were also sent to the Express Board of Directors. Plaintiffs assert that this request is narrowly tailored to obtain this information.

While this appears to be a valid inquiry, the request is not so tailored. Nowhere does it request power point presentations that *include strategic planning documents belonging to plaintiffs*. Instead, it requests power point presentations related to Express products and markets, including but not limited to HSRGs. In other words, it appears that plaintiffs are simply seeking business information about Express from Sterling. Although not directly mentioned in response to this request, the Court realizes that plaintiffs assert that Express sought to expand within the HSRG market using, at least in part, Vogt's customer list and other information obtained by Kapsalis during his employment with plaintiffs. Nonetheless, the scope of this request is overbroad because it could capture a wide range of business-sensitive information that has no relevance to this case.

For these reasons as well as the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter or scope.

Accordingly, the Motion will be granted insofar as it relates to Request No. 10.

**Request 11: All agendas and minutes from any meeting of the Board of Directors of Express from March 1, 2013 to the present that have not previously been produced.**

Sterling and plaintiffs make the same arguments as they did with respect to Request No. 1. Additionally, plaintiffs, pointing to Exhibit D as evidence, allege that Kapsalis sent portions of plaintiffs' strategic planning documents to the Express Board of Directors. Plaintiffs assert that Kapsalis "may well have made other presentations" to the Express Board of Directors that contain Vogt's "information." (DN 126, p. 9.) Plaintiffs state that they are entitled to know if

8

the Express Board of Directors received such information and whether it took any action based on documents or portions of documents that were taken from plaintiffs. Plaintiffs further assert that this request should not create an undue burden as the Express Board of Directors meets on a quarterly basis.

The Court finds this to be a closer call, although plaintiffs make no effort to limit the subject matter of the agendas and minutes that they seek. Indeed, it is still not clear to the Court what in Exhibit D constitutes portions of plaintiffs' strategic planning documents. Therefore, the Court finds that this request is overbroad.

Accordingly, the Motion will be granted insofar as it relates to Request No. 11.

**Request 12: Any and all documents (either electronic or otherwise) concerning Stephen Kapsalis' performance as Chief Executive Officer of Express.**

Sterling and plaintiffs make the same arguments as they did with respect to Request No. 1. Plaintiffs also assert that the documents related to Kapsalis's performance are likely to lead to admissible evidence about Kapsalis's attempts to expand in the HRSG market using information misappropriated from Vogt. The Court does not see the connection. Furthermore, the Court has already found that this category of documents it not obviously relevant to plaintiffs' claims. (*See* DN 158, p. 10.)

Accordingly, the Motion will be granted insofar as it relates to Request No. 12.

**Request 13: Any and all documents (either electronic or otherwise) that reference "Babcock Power Inc.," "BPI", "Vogt Power International," "VPI," "Mike LeClair" and/or "LeClair" from December 1, 2012 to the present that have not previously been produced.**

Sterling and plaintiffs make the same argument as they did with respect to Request No. 1. Plaintiffs also assert that they are entitled to determine the extent of the dissemination of documents and portions of "documents *belonging to them*." (DN 126, p. 10.) Plaintiffs assert

that this search only encompasses a small number of terms and therefore should not result in any significant investment of time or money. This request is certainly not limited to documents, confidential or otherwise, that belong to plaintiffs. Consequently, the Court finds that this request is overbroad.

Accordingly, the Motion will be granted insofar as it relates to Request No. 13.

**Request 14: A copy of the "CEO Requirements" document for Stephen Kapsalis referenced at Page 40 Line 19 through Page 42 Line 1 of the deposition of Kevin Garland, dated May 8, 2014.**

Although not specifically addressed by Sterling, this request is addressed by plaintiffs. Plaintiffs reference their arguments with respect to Request No. 1 and state that, at his deposition, Kevin Garland made reference to a single document outlining specific CEO Requirements. Plaintiffs state, "As this request is for a single document identified during a deposition, there can be no argument that this request is burdensome or irrelevant." (DN 126, p. 10.) The Court disagrees. The relevancy of this document, including relevancy to the determination of plaintiffs' damages, is not obvious to the Court. Admittedly the Court is not as entrenched as counsel in the details of this lawsuit, but as it has stated, if the relevancy of a particular discovery request in dispute is not apparent on its face, the party seeking discovery has the burden of establishing relevancy. *Transcor, Inc. v. Furnia Charters, Inc*. 212 F.R.D. 588, 591 (D. Kan. 2003). Plaintiffs have failed to establish relevancy.

Accordingly, the Motion will be granted insofar as it relates to Request No. 14.

**Request 15: All monthly financial reports for Express in Sterling's possession.**

Sterling argues that this request has no time or subject matter limitation. Plaintiffs reiterate their arguments with respect to Request No. 1 and also state that Kapsalis solicited

10

plaintiffs' customers on behalf of Express in violation of the Agreement and the TRO issued by the Court. Plaintiffs argue that the financial reports provided to Sterling by Express are likely to lead to admissible evidence about whether and to what extent Express (and Sterling) benefitted from Kapsalis's unlawful activity. Plaintiffs assert that this "request is for a discrete set of documents that are likely accessible with limited effort." (DN 126, p. 10.) As the Court indicated at the hearing, this request is wildly overbroad and is not limited in scope.

Accordingly, the Motion will be granted insofar as it relates to Request No. 15.

**Request 16: All informal reports from Express as referenced at Page 105, Line 5 through Line 15 of the deposition of Kevin Garland, dated May 8, 2014.**

Sterling repeats the arguments that it made with respect to Request No. 15. Plaintiffs argue that the informal reports of Kapsalis's sales and marketing efforts on behalf of Express are likely to lead to admissible evidence concerning Kapsalis's solicitation of plaintiffs' customers and Express's attempts to expand in the HRSG market. Plaintiffs, however, do not limit the subject matter of their request to informal reports from Express *regarding specifically identified customers or to HRSG markets*. Consequently, it is overbroad. The Court is not in a position to identify plaintiffs' customers and furthermore does not see a copy of Page 105 of Garland's deposition attached to the opposition. Therefore, it cannot craft, on plaintiffs' behalf, a narrower request.

Accordingly, the Motion is granted insofar as it related to Request No. 16.

**Request No. 17: A copy of any joint defense agreement between and/or among Stephen Kapsalis, Express and Sterling.**

Although not specifically addressed by Sterling, this request is addressed by plaintiffs. Plaintiffs state that the joint defense agreement is relevant so that they can ascertain when Kapsalis, Express, and Sterling first anticipated litigation and whether they took appropriate

11

steps to preserve documents upon anticipating litigation. Plaintiffs further assert that the existence of a joint defense agreement would also be significant to determining the alignment of the parties and their mutual interests.

The Court does not see how this is relevant to plaintiffs' claims, and the Court is not aware of any spoliation allegations to date. *See Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 218 (W.D. Ky. 2006) ("While these documents may be helpful to the Court in addressing this discovery dispute, they are not 'relevant to the claim or defense of any party.'" Fed.R.Civ.P.26(b)(1). For this reason, the undersigned concludes the joint defense agreements are not discoverable.").

Accordingly, the Motion is granted insofar as it related to Request No. 17.

As a final matter, while the Court has, in effect, granted the Motion in full as it relates to the subpoena at issue, it does not find that plaintiffs' requests have no merit whatsoever. Rather, many of them are simply too broad and the Court is not in the best position to craft more narrow requests. At the hearing conducted by the Court on December 3, 2015, plaintiffs' counsel agreed to talk to opposing counsel about a "reasonable restriction" with respect to their discovery requests. (DN 151, p. 55.) It is in the best interests of Sterling and plaintiffs to avoid another *costly* discovery dispute by working together as required by Local Rule 37.1.

### B. Protective Order Limiting Further Discovery

The Court declines to limit the scope of discovery to exclude what Sterling describes as plaintiffs' "non-solicitation" claim. (*See* DN 118-1, p. 16.) Regardless of what the claim is termed by either side, there is a provision regarding diverting or attempting to divert any business opportunity within specified amount of time in the Agreement between Kapsalis and

plaintiffs that is at issue in this matter; additionally, the TRO and preliminary injunction entered in this matter prohibited Kapsalis from soliciting any BPI or Vogt Power customer for the purpose of inviting, encouraging or requesting the transfer of any account or business patronage from BPI or Vogt Power. (DN 8, DN 35.) Thus, the Court does not believe it is appropriate to exclude this area from discovery by plaintiffs at this time.

Accordingly, the Motion is denied insofar as it requests a protective order to limit future discovery by plaintiffs against Sterling.

### C. Cost Shifting

Sterling requests that the Court order that plaintiffs "bear all of the costs of any future discovery involving the Sterling Group." (DN 118-1, p. 17.) This request is premature and will therefore be denied.

Accordingly, the Motion is denied insofar as it request an order that plaintiffs bear the cost of any future discovery involving Sterling.

### D. Sanctions

The Court declines to sanction plaintiffs in the form of costs and attorneys' fees incurred by Sterling in responding to the subpoena at issue. Sterling is not required to respond to the subpoena at issue and the Court has not found that plaintiffs' requested discovery is wholly without merit.

Accordingly, the Motion is denied insofar as it requests sanctions against plaintiffs.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Motion (DN 118) is GRANTED IN PART and DENIED IN PART.

The Motion is GRANTED insofar as it seeks to quash the subpoena issued by counsel for plaintiffs to Sterling.

The Motion is DENIED insofar as it requests a protective order against future discovery and sanctions against plaintiffs and that plaintiffs bear the cost of future discovery.