## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

BABCOCK POWER, INC., *et al*.

      Plaintiffs,

v.                                      CASE NO. 3:13-CV-717-DJH-CHL

STEPHEN T. KAPSALIS, *et al*.

      Defendants.

### MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Protective Order for Non-Party Carol Kapsalis (DN 202). In the Motion for Protective Order, defendant Stephen T. Kapsalis and non-party Carol Kapsalis (the "Kapsalises") move the Court for a protective order quashing the subpoena served on Mrs. Kapsalis on February 16, 2016. Plaintiffs Babcock Power, Inc. ("Babcock") and Vogt Power International, Inc. ("Vogt Power") (collectively, "plaintiffs") filed a response, and the Kapsalises filed a reply. Therefore, the Motion for Protective Order is ripe for review.

**I.    BACKGROUND**

The Court will briefly summarize the parties' arguments. The Kapsalises argue that Mrs. Kapaslis has no relevant information and any purportedly relevant information would be subject to a spousal privilege pursuant to Rule 504(a) of the Kentucky Rules of Evidence ("KRE"). The Kapsalises argue that the only potentially relevant information that Mrs. Kapsalis may have is with respect to her business, Capstone Asset Management ("CAM"). In the amended complaint (DN 50), plaintiffs alleged that, despite Mr. Kapsalis's assertions that he would devote his full attention and efforts to Vogt Power, he appeared to have been involved in and maintained an

interest in CAM; plaintiffs further alleged that "Kapsalis breached his fiduciary duty of loyalty to Vogt Power and BPI by, without limitation, engaging in businesses other than BPI and Vogt Power . . . ." (DN 84, ¶ 79; *see also id.* at ¶¶ 14, 50.) The Kapsalises argue that, given that Mr. Kapsalis has already testified to the nature and extent of his involvement with CAM and conceded the fact that he remained involved in a limited capacity during his employment with plaintiffs, any related knowledge by Mrs. Kapsalis "would not meaningfully contribute to [p]laintiffs' breach of fiduciary duty claim, and therefore is irrelevant." (DN 202-1, p. 5.) The Kapsalises also contend that plaintiffs either have or could have obtained this information through other types of discovery.

In addition, the Kapalises argue that Kentucky law applies to the assertion of spousal privilege, and under Kentucky law, Mrs. Kapsalis is entitled to an absolute privilege to refuse to testify in a civil case. That is, the Kapsalises contend that KRE 504(a) "creates an absolute testimonial privilege that may be asserted by either the party or non-party spouse in both criminal and civil proceedings." (DN 202-1, p. 9.)

In response, plaintiffs first argue that Mrs. Kapsalis's testimony is relevant for the following reasons: (1) Mrs. Kapsalis has relevant knowledge regarding Mr. Kapsalis's involvement running CAM while he was employed at Vogt Power; (2) plaintiffs assert that they sent a subpoena to CAM (to which it responded) and that Mrs. Kapsalis has knowledge regarding how the responsive documents were collected and reviewed and the existence of possible responsive documents that were not collected and reviewed; (3) Mrs. Kapsalis purchased a personal phone for Mr. Kapsalis, which Mr. Kapsalis used to communicate regarding future employment, and that questions regarding whose account the phone was on, how she paid for it,

when she paid for it, and if it still an active account is information that is relevant; (4) Mrs. Kapsalis unloaded and unpacked boxes delivered by Vogt Power to the Kapsalises home, and she may have knowledge regarding the status of those boxes and what she observed in them, including whether or not any of plaintiffs' documents were in those boxes; and (5) Mrs. Kapsalis entertained Vogt Power customers with Mr. Kapsalis for defendant Express Group Holdings, LLC ("Express"). (DN 213, pp. 3-7.)

Second, plaintiffs assert that the spousal privilege has either been waived or is inapplicable. Plaintiffs contend that the Kapsalises have waived the spousal privilege by not objecting to the subpoena served on CAM, Mrs. Kapsalis's business of which she is the sole shareholder. Plaintiffs further argue that the information sought from Mrs. Kapsalis is not privileged because it does not "consist of confidential marital communications with her husband." (*Id*. at 8.)

In their reply, the Kapsalises aver that KRE 504(a) provides an absolute spousal testimonial privilege; that they did not waive their spousal privilege by failing to object to the CAM subpoena; and that the subpoena nonetheless imposes an undue burden.

## II.   DISCUSSION

### A.   Whether Federal or State Law Applies to the Assertion of Privilege

Rule 26 of the Federal Rules of Civil Procedure is the starting point in determining whether to uphold or overrule a claim of privilege. Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. Pro. 26(b)(1) (emphasis added). For purposes of Rule 26, the term

3

"privilege" is defined by the Federal Rules of Evidence ("FRE"). *Jabara v. Kelley* 75 F.R.D. 475, 481 (E.D. Mich. 1977) (citing *United States v. Reynolds*, 345 U.S. 1 (1953)).

FRE 501 of the Federal Rules of Evidence states as follows:

> The common law – as interpreted by the United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. The comments to FRE 501 make clear that, in a federal question case, federally-evolved rules on privilege should apply. 1974 Comments to Fed. R. Evid. 501. Furthermore, "Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." *Id.* The party claiming the privilege bears the burden of justifying its application. *In re Grand Jury Investigation No*. 83-2-35, 723 F.2d 447, 450 (6th Cir. 1983) ("The burden of establishing the existence of the privilege rests with the person asserting it.").

The Kapsalises rely on *Gooden v. Ryan's Restaurant Group, Inc*., 5:04-cv-179, 2006 WL 2946313 (W.D. Ky. Oct. 12, 2006), as support for their assertion that Kentucky law regarding spousal or marital privilege applies. The claims in *Gooden* were brought under federal and state law, and the purportedly privileged information sought was relevant as a potential defense to claims under both. *Id*. at *3. The District Court stated, "As the Federal Rules of Evidence state, this Court will use Kentucky state privilege law with regard to Kentucky claims and federal privilege common law with respect to federal claims." *Id*. The District Court then undertook an analysis of the privilege under both federal and Kentucky law, concluding that neither applied.

Relying on *Gooden*, the Kapsalises claim that any information that Mrs. Kapsalis possesses would relate "exclusively to [p]laintiffs' state law breach of fiduciary duty claim based on Kapsalis' [s] continued involvement with CAM while employed by [p]laintiffs." (DN 202-1, p. 9.) Thus, the Kapsalises assert that, under Kentucky law, spousal privilege creates an absolute testimonial privilege that may be asserted by either Mr. Kapsalis or Mrs. Kapsalis. (*Id*. at 9.)

While plaintiffs appear to agree – or at least do not outright contest – that Kentucky law applies, the Court believes that federal common law should apply to the spousal privilege asserted in this matter. In *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992), the plaintiff brought claims against the defendants under 42 U.S.C. § 1983; the plaintiff also asserted pendent state-law claims.[1] The Sixth Circuit discussed whether federal or state law regarding physician-patient privilege should govern. The Sixth Circuit recognized that FRE 501 states that when dealing with a federal question, privilege should be governed by federal common law, but "where state law claims are raised pendent to federal claims, the question of choice of law becomes more difficult." *Id*. at 1372-73. Nonetheless, the Sixth Circuit concluded, "Since the instant case is a federal question case by virtue of the appellant's section 1983 claim, we hold that the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege." *Id*. at 1373. The Sixth Circuit concluded that because federal courts do not recognize a federal physician-patient privilege, arguments regarding the scope of that privilege should be rejected. *Id*.[2]

---

[1] Neither the Kapsalises nor plaintiffs discussed *Hancock*.

[2] The Sixth Circuit also concluded that even if it was required to apply state law, the appellant's challenge would still fail. *Id*.

5

"The various circuit courts that have had the opportunity to interpret the meaning and effect of [FRE 501] have taken divergent approaches. Some have held that any time federal and state claims are present in the same lawsuit, the federal law of privilege should apply to the entire lawsuit." *Garza v. Scott & White Mem'l Hosp.*, 234 F.R.D. 617, 625 (W.D. Tex. 2005) (citing *Virmani v. Novant Health Inc.,* 259 F.3d 284, 287 n.3 (4th Cir.2001); *Hancock,* 958 F.2d at 1372–73; *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 671 F.2d 100, 104 (3d Cir.1982)). "Others have taken a more nuanced approach, applying state privilege law to evidentiary materials that are related to pendent state claims, so long as they are unrelated to any federal claims." *Id*.

This action was filed in federal court, alleging claims under both federal and state law. Plaintiffs specifically asserted that jurisdiction was proper under 28 U.S.C. § 1331 (federal question jurisdiction) because their "claims arise under the laws of the United States"; no mention was made in the original complaint about diversity of citizenship, although the Court notes that Babcock "is a Delaware Corporation with a place of business in Danvers, Essex County, Massachusetts." (DN 1, pp. 1-2.) The amended complaint also asserted claims under federal and state law, stating that jurisdiction was appropriate under 28 U.S.C. § 1331. The addition of Express – "an Oklahoma limited liability company with a principal place of business in Tulsa, Oklahoma" – also appears to support a claim of diverse citizenship between the parties. (DN 84, p. 2.) The Court need not engage in a diversity jurisdiction analysis, however. It is clear that this case is not in this Court solely on the basis of diversity jurisdiction; there are several claims brought under the Lanham Act, 15 U.S.C. §§ 1125, *et seq*. and the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1338 (b), 1367. (*Id.*)

While this case is not a Section 1983 case like *Hancock*, the Court believes that it is similar enough that the principle enumerated in *Hancock* should apply. And, although the Kapsalises assert that the information sought from Mrs. Kapsalis only relates to the state-law claim for breach of fiduciary duty, upon review of the amended complaint, it is possible that the information sought could be relevant to the federal claims. Therefore, the Court finds that federal law regarding privilege should apply. *See, e.g.*, *Sampson v. Sisters of Mercy of Williard, Ohio*, No. 3:12CV824, 2016 WL 362357, at *2 (N.D. Ohio Jan. 29, 2016) ("While Sampson alleges some claims arising under Ohio law, this case primarily involves a federal question – the Age Discrimination in Employment Act. Therefore, federal privilege law applies.") (citing *Hancock*, 958 F.2d at 1373) (internal citation omitted); *Burkhead & Scott, Inc. v. City of Hopkinsville*, No. 5:12-CV-00198-TBR, 2014 WL 6751205, at *1 (W.D. Ky. Dec. 1, 2014) ("Where a federal question is presented to a court with pendant [sic] state law claims, federal common law governs privilege disputes.") (citing *Hancock,* 958 F.2d at 1373).

### B.     Federal Law Regarding Spousal Privilege

Two types of privileges for married couples exist under federal law. First, there is the marital privilege or adverse spousal testimony privilege, which protects one spouse from being compelled to testify against the other spouse. *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993). "This rule, while generally seen in the context of a criminal trial, is also applicable in grand jury proceedings." *United States v. George*, 444 F.2d 310, 313 (6th Cir. 1971). This is not a criminal case or grand jury proceeding, and therefore the marital privilege does not apply.

The second privilege for married couples under federal law is the confidential marital communications privilege. *Porter*, 986 F.2d at 1018. "There are three prerequisites to the

assertion of this privilege. (1) At the time of communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to 'utterances or expressions intended by one spouse to convey a message to the other,' . . . and (3) the communication must be made in confidence." *Id*. (internal citations omitted). "The confidentiality of communications made during a valid marriage is presumed." *United States v. Byrd*, 750 F.2d 585, 590 (7th Cir. 1984). "Although marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private." *Pereira v. United States*, 347 U.S. 1, 6 (1954).

As stated, there are five categories of purportedly relevant information sought by plaintiffs from Mrs. Kapsalis: (1) Mrs. Kapsalis's knowledge regarding Mr. Kapsalis's involvement running CAM while he was employed at Vogt Power; (2) Mrs. Kapsalis's knowledge regarding how the subpoenaed documents from CAM were collected and reviewed and the existence of possible responsive documents that were not collected and reviewed; (3) Mrs. Kapsalis's purchase of a personal phone for Mr. Kapsalis that Mr. Kapsalis used to communicate regarding future employment, including whose account the phone was on, how she paid for it, when she paid for it, and if it is still an active account; (4) Mrs. Kapsalis's knowledge of the boxes delivered by Vogt Power to the Kapsalises' home, including the status of those boxes, what she observed in those boxes, and whether or not any of plaintiffs' documents were in those boxes; and (5) Mrs. Kapsalis's entertainment of Vogt Power customers with Mr. Kapsalis for Express. (DN 213, pp. 3-7.) While there seems to be no dispute that the Kapsalises were married at the time that these events occurred, it does not appear that any confidential communications are at issue, or at least the Court cannot say so on the information before it. In

other words, it does not appear that Mrs. Kapsalis can avoid testifying on the basis of the confidential marital communications privilege alone.[3]

However, the Court finds that some of the categories of information sought from Mrs. Kapsalis should be eliminated on relevancy grounds. First, while plaintiffs claim that Mrs. Kapsalis has knowledge regarding how the subpoenaed documents from CAM were collected and reviewed, there is no indication that less than all responsive documents were produced. Plaintiffs even admit that "responsive documents were produced by CAM through its counsel Middleton Reutlinger." (DN 213, p. 4.) Plaintiffs have not stated that there is any reason to suspect that they did not receive all responsive documents to the subpoena beyond their assertion that Mr. Kapsalis himself had no knowledge regarding the search and collection of documents at CAM. Second, with respect to the phone purchased by Mrs. Kapsalis for Mr. Kapsalis, plaintiffs assert that Mr. Kapsalis acquired the phone around the same time that Mr. Kapsalis began talking with a headhunter about the Sterling Group and Express. Based on this assertion, the Court does not see the relevancy of information that may be obtained by asking Mrs. Kapsalis "questions regarding the account the phone was on, how she paid for it, when she paid for it, and if it is still an active account." (*Id*. at 6.)

The Court will permit Mrs. Kapsalis to be questioned regarding (1) Mr. Kapsalis's involvement running CAM while he was employed at Vogt Power; (2) the delivery by Vogt

---

[3] The Court rejects plaintiffs' argument that the privilege has been waived because Mrs. Kapsalis did not object to the subpoena served on CAM. The one case cited by plaintiffs, *White v. Commonwealth*, is inapposite. *See White v. Commonwealth*, 132 S.W.3d 877, 882 (Ky. Ct. App. 2003) ("The Rule states that the privilege may only be asserted by the person holding the privilege. *Mrs. White did not assert the privilege at the hearing, but chose to testify. Appellant did not assert the marital privilege at the time of her testimony*. Thus, appellant cannot complain at this stage since he thereby waived the spousal privilege by not asserting it.") (emphasis added).

Power of boxes to the Kapsalises' home, including what, if anything, she observed in those boxes; and (3) the entertainment of Vogt Power customers with Mr. Kapsalis for Express.

Finally, the Court rejects the Kapsalises' assertion that this information can be obtained from other sources and thus presents an undue burden on Mrs. Kapsalis. That being said, the Court believes that the deposition of Mrs. Kapsalis should be limited in duration. Therefore, the Court limits Mrs. Kapsalis's deposition to three hours. Counsel for all parties are cautioned to use the allotted time for examination of the witness on pertinent matters, and not for argument.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Motion for Protective Order (DN 202) is GRANTED IN PART and DENIED IN PART.

The Motion for Protective Order is GRANTED insofar as it seeks to limit the topics upon which the deposition may be taken. Mrs. Kapsalis shall sit for a deposition on the following topics at a mutually agreeable time and place: (1) Mr. Kapsalis's involvement running CAM while he was employed at Vogt Power; (2) the delivery by Vogt Power of boxes to the Kapsalises' home, including what, if anything, she observed in those boxes; and (3) the entertainment of Vogt Power customers with Mr. Kapsalis for Express. Mrs. Kapsalis's deposition shall be limited to **three (3) hours**.[4]

The Motion for Protective Order is DENIED insofar as it seeks a protective order preventing the deposition of Mrs. Kapsalis from moving forward and a request for sanctions.

---

[4] The Court is aware that the fact discovery deadline in this action was April 1, 2016. The Court expressly permits the deposition of Mrs. Kapsalis to take place after the fact discovery deadline.

cc: Counsel of record