# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:13-CV-717-CRS-CHL

BABCOCK POWER, INC., et al.,                                             Plaintiffs,

v.

STEPHEN T. KAPSALIS, et al.,                                        Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is a "Joint Motion for Protective Order to Prevent Further Intimidation and Harassment of Witnesses" ("Joint Motion for Protective Order") (DN 219) filed by defendants Stephen T. Kapsalis and Express Group Holdings, LLC ("Express"). Plaintiffs Babcock Power, Inc. ("Babcock") and Vogt Power International, Inc. ("Vogt Power") filed a response (DN 233). Defendants filed a reply (DN 244). Therefore, this matter is ripe for review.

### I.  BACKGROUND

#### A.  Digital Strata Search, February 6 Letter from Plaintiffs' Counsel, and Dan Fischler's Deposition

While the Court will not recount the entire history of the search performed by a third-party vendor, Digital Strata, a brief synopsis is helpful. After some negotiation, it appears that on or about June 3, 2015 the parties agreed to a search by a Digital Strata of the Kapsalis hard drives[1] and Express's server; this agreement was memorialized by the proposed Agreed Order (DN 99) filed by the parties. Although the Court declined to enter the proposed Agreed Order

---

[1] The Court understands the "Kapsalis hard drives" to consist of forensic images of various computers and storage devices belonging to Kapsalis, including (1) 1 GB flash drive; (2) 16 GB flash drive; (3) 4 GB flash drive; (4) 250 GB hard drive; and (5) 2 images of a 500 GB laptop hard drive (collectively referred to as the "Kapsalis hard drives"). (*See* DN 196-3, pp. 4-5.)

(DN 99), it appears that the parties went forward with most or all of the searches outlined in same. On September 22, 2015, the Court entered an Agreed Order (DN 109) that purported to set forth the searches conducted (or to be conducted) by Digital Strata. The parties agreed to split the cost of the project in half. (*See* DNs 99, 109.)

With respect to the searches conducted by Digital Strata, the Agreed Order (DN 109) stated that Digital Strata had created a list of the identified documents, with the list showing the name of the document, the creation date of the document, the last modified date of the document, the creator of the document, any recipients of the document, and the search terms that identified the document. (*Id*. at 3.) The list was provided to the parties' counsel and their information technology vendors on July 30, 2015. (*Id*.) The list of identified documents was reviewed by defendants' counsel for privilege. (*Id*.) All documents that were not withheld on the basis of privilege were provided to counsel for plaintiffs and their information technology vendor, subject to the provisions of the Agreed Protective and Confidentiality Order previously entered by the Court on January 13, 2014 (DN 37) as follows: Defendants' ESI Review 1-11943 were produced on August 13, 2015; Defendants' ESI Review 11944-27601 were produced on August 20, 2015; Defendants' ESI Review 27602-40153 were produced on August 26, 2015; and Defendants' ESI Review 40154-172378 were produced on September 1, 2015. (*Id*.)

On February 5, 2015, plaintiffs' counsel sent a letter (DN 219-3) to Dan Fischler, CEO of Digital Strata. The letter expressed "serious concerns" with the manner in which the searches were conducted as well as with Digital Strata's relationship with defendants' counsel. (*Id*. at 1-2.) Plaintiffs' counsel demanded that Digital Strata stop all work on the project related to this litigation. (*Id*. at 3.) Plaintiffs' counsel further demanded a full refund of any amounts paid by

Babcock Power to Digital Strata with respect to "the project that was totally botched by you." (*Id*. at 3.) Plaintiffs' counsel also wrote, "We will not be paying any further invoices and will vigorously defend any attempt on the part of Digital Strata to seek collection." (*Id*.) Plaintiffs' counsel also requested that Digital Strata put any relevant insurance carrier on notice as they were exploring options to recover damages caused by Digital Strata's negligence. (*Id*.)

Mr. Fischler was deposed on February 25, 2016.

B.   **Brief Summary of the Parties' Arguments**

In the Joint Motion for Protective Order, defendants move the Court for an order enjoining plaintiffs from "directly or indirectly intimidating, threatening, or otherwise harassing any witnesses in this Action, including Digital Strata's President and CEO Dan Fischler or any other representative of Digital Strata." (DN 219-1, p. 1.) Specifically, defendants aver that the purpose of plaintiffs' February 5 letter was to personally intimidate and harass Mr. Fischler from making himself available for a deposition and, if deposed, providing critical testimony adverse to plaintiffs. (*Id*. at 8.) In support of their assertion, defendants note the timing of the February 5 letter – according to defendants, less than 24 hours after defendants' counsel informed plaintiffs' counsel that they intended to take Mr. Fischler's deposition – and months after Digital Strata had completed its analysis; defendants also state that, even if the issues raised in the February 5 letter needed to be addressed, they could have been easily resolved through more appropriate and less obstructive means and at a later time. (*Id*. at 9-12.) Defendants also argue that defendants' counsel should have been copied on the February 5 letter, and that Digital Strata was suggested by plaintiffs and was not biased in favor of defendants. (*Id*. at 13-17.) Thus, defendants request a protective order from the Court enjoining plaintiffs from engaging in any further intimidating

3

or harassing communications with Mr. Fischler or any other Digital Strata employee, or, in the alternative, issuance of a formal warning to plaintiffs. (*Id*. at 9, 19.)

Plaintiffs respond first by arguing that defendants did not comply with Local Rule 37.1 and therefore the Joint Motion for Protective Order should not be entertained. (DN 233, p. 2.) Plaintiffs aver that Mr. Fischler has counsel and that his counsel did not seek a protective order and did not join in defendants' motion; plaintiffs further aver that the February 5 letter was sent in response to repeated calls from Digital Strata regarding payment of an invoice. (*Id*. at 2.) Plaintiffs assert that they have valid concerns about Digital Strata's relationship with Middleton Reutlinger and the fact that defendants' counsel engaged in thousands of pages of *ex parte* communications with Digital Strata. (*Id*. at 3.) Plaintiffs also address certain factual assertions made by defendants regarding the searches and subsequent production made by Digital Strata. (*Id*. at 4-20.) Finally, plaintiffs argue that the cases cited by defendants in support of their Joint Motion for Protective Order are inapposite. (*Id*. at 20-22.)

In reply, defendants assert that Local Rule 37.1 does not apply because this does not concern a dispute about discovery; that plaintiffs' counsel have failed to provide adequate justification or explanation regarding the timing and purpose of the February 5 letter; that Digital Strata produced documents that were explicitly required to be produced pursuant to the Agreed Order (DN 99); and that defendants do not have an improper relationship with Digital Strata. (DN 244, pp. 2-12.)

## II. DISCUSSION

Rule 26(c)(1) states, "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a

certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Rule 26(c)(1) regarding protective orders expressly applies to any party or person "from whom discovery is sought." *Id*. Defendants do not expressly rely on Rule 26 – or any rule, such as Rule 65 – for the basis of their request for a protective order. Indeed, the Court has seen no evidence that any additional discovery is being sought from Mr. Fischler and/or Digital Strata and therefore Rule 26 does not seem to apply; nor, as defendants argue, does Local Rule 37.1 apply, as this is not a discovery dispute. Instead, defendants rely on the Court's "inherent power to sanction bad-faith conduct," including the entry of protective orders to prevent further intimidation and harassment of either the parties themselves or non-party witnesses. (DN 219-1, p. 8.)

As an initial matter, the Court will put aside its skepticism about defendants' standing to request a protective order on behalf of Mr. Fischler and/or Digital Strata; Mr. Fischler is a non-party and apparently represented by counsel. The Court sees no need to consider these preliminary issues because defendants' Joint Motion for Protective Order can be denied outright. Even assuming the Court has the inherent power to enter a protective order to prevent intimidation and harassment of a non-party witness, a single letter regarding billing, allegations of conflicts of interest, and potential litigation – however belligerently worded – does not necessitate a protective order, especially in the absence of actual evidence of witness intimidation and harassment. The February 5 letter did not deter Mr. Fischler from testifying at his deposition on February 25, 2016. Furthermore, the two cases substantively relied upon by

5

defendants – *Rissman, Hendricks & Oliverio, LLC v. MIV Therapeutics, Inc*., Civ. Action No. 11-10791-MLW, 2011 WL 5025206 (D. Mass. Oct. 20, 2011) and *Teledyne Techs., Inc. v. Shekar*, No. 15-CV-1392, 2015 WL 3799559 (N.D. Ill. June 17, 2015) – do not provide guidance on the preliminary issue of standing or support their request for a protective order. Unlike the defendant in *Rissman,* plaintiffs did not repeatedly threaten Mr. Fischler or Digital Strata with financial ruin if they participated in this litigation. *Teledyne* certainly does not help defendants either. In their brief, defendants state that the defendant in *Teledyne* "sought a protective order preventing the plaintiff from further intimidating or harassing a non-party witness after the plaintiff sent a letter to the police copying the witness and claiming that he had accepted bribes to provide perjured testimony." (DN 219-1, p. 18.) But upon review of the facts of *Teledyne*, it appears that defendants have recited the facts to a different case. *Teledyne* involved a plaintiff being found in civil contempt for violating a temporary restraining order and preliminary injunction. Regardless, whatever the case actually relied upon by defendants, the facts recited are not at all similar to the facts at hand and provide no basis for the Court to grant the Joint Motion for Protective Order.

## III.  CONCLUSION

Accordingly,

The Joint Motion for Protective Order (DN 219) is DENIED.

cc: Counsel of record