UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BABCOCK POWER, INC., *et al*.

  Plaintiffs,

v.            CASE NO. 3:13-CV-717-CRS-CHL

STEPHEN T. KAPSALIS, *et al*.

  Defendants.

## MEMORANDUM OPINION AND ORDER

  Before the Court is a "Motion to Compel Discovery from Defendant Express Group Holdings, LLC" ("Motion to Compel") (DN 196) filed by plaintiffs Babcock Power, Inc. ("Babcock") and Vogt Power International, Inc. ("Vogt Power"). Defendant Express Group Holdings, LLC ("Express") filed a response (DN 216), and plaintiffs have filed a reply (DN 229). Additionally, plaintiffs filed a Motion to Seal (DN 197) in conjunction with certain exhibits to the Motion to Compel and a Motion to Seal (DN 230) in conjunction with certain exhibits to the supporting reply; Express has filed a Motion to Seal (DN 217) in conjunction with certain exhibits to its response; these motions to seal have been addressed in a separate memorandum opinion and order. Therefore, this matter is ripe for review.

## I.  BACKGROUND

### A.  Brief Summary of the Parties' Arguments

  In the memorandum supporting the Motion to Compel, plaintiffs assert that it served three sets of discovery requests on Express, and "Express refused to produce a single document or piece of discoverable information" save an agreement to "produce certain specific documents

1

such as back up data for Kapsalis' expense reports."[1]   (DN 196-1, p. 2 n.1.)   In particular, plaintiffs allege that on November 14, 2014, they served a first set of interrogatories and requests for production on Express, and Express did not provide any responsive documents or information.   (DN 196-1, p. 1.)   Plaintiffs allege that, on October 9, 2015, they served a second set of interrogatories and requests for production on Express, and Express did not provide any responsive documents or information.   (*Id*. at 2.)   Plaintiffs allege that, on October 27, 2015, they served a third set of requests for production on Express, and Express did not provide any responsive documents or information.   (*Id*.)   Plaintiffs also include in their brief a chart that includes the discovery requests at issue, Express's objections/responses, and why the information sought is relevant and discoverable.   (*Id*. at 196-1, pp. 9-33.)

In response, Express argues that it has, in fact, produced documents to plaintiffs, including the results of a search conducted by a third-party vendor, Digital Strata, and by agreement; Express also argues that the taking of certain depositions has provided significant information that is responsive to plaintiffs' discovery requests.   (DN 216, pp. 1-2, 4-20.)   Express also includes, as an appendix, a chart of the discovery requests at issue, their objections/responses, plaintiffs' reasons why the information sought is relevant and discoverable, and how it has complied.   (DN 216-34.)

In their reply, plaintiffs first assert that Express has violated Local Rule 7.1(d). Specifically, plaintiffs assert that Appendix A and Appendix B to Express's response bring the page total to 70.   (DN 229, p. 1.)   Plaintiffs also argue that Express produced documents in

---

[1] Plaintiffs later state, "Express nonetheless has refused to produce anything other than to direct Plaintiffs to 170,000 pages of documents that are generally nonresponsive."   (DN 196-1, p. 6.)

response to a subpoena, not in response to the discovery requests, and that the various depositions described by Express do not satisfy Express's discovery obligations. (*Id*. at 2-15.)

Finally, the Court notes that plaintiffs previously filed a motion to compel (DN 127) seeking an order compelling Express to respond to their first set of interrogatories and requests for production; that motion to compel was denied in its entirety (DN 58). The Court did, however, note that the parties indicated that they would work together to come to an agreement regarding the scope of the subject discovery requests and stated that it would consider any remaining dispute at a later time. (*Id*. at 11.)

### B.    Categories of Documents Produced to Plaintiffs

The Court will attempt to piece together a summary of the documents or information produced to plaintiffs that are possibly responsive to the discovery requests at issue.[2]

### 1.    Forensic images of the Kapsalis hard drives

Although not spelled out by either party in the filings related to the Motion to Compel, the Court understands that Kapsalis has produced to plaintiffs forensic images of various computers and storage devices, including (1) 1 GB flash drive belonging to Kapsalis; (2) 16 GB flash drive belonging to Kapsalis; (3) 4 GB flash drive belonging to Kapsalis; (4) 250 GB hard drive belonging to Kapsalis; and (5) 2 images of a 500 GB laptop hard drive belonging to Kapsaslis (collectively referred to as the "Kapsalis hard drives"). (*See* DN 196-3, pp. 4-5.)

---

[2] The Court uses the word, "attempt," because while the parties are intimately familiar with what discovery, including any agreed searches, have taken place, the Court is not privy to all of the information available to the parties. Additionally, the parties have not clearly and comprehensively recited the facts as they relate to the instant discovery dispute. The parties further compound this problem by referring to and incorporating by reference multiple different filings. Express's response to the Motion to Compel is an especially onerous example – it consists of a brief with 19 exhibits that attaches and references an Appendix A with its own 13 exhibits as well as an Appendix B.

2.      **Digital Strata search and production**

After some negotiation, it appears that on or about June 3, 2015 the parties agreed to a search(es) by a third-party vendor, Digital Strata, of the Kapsalis hard drives and an image of the VMWare virtualized e-mail server ("Express server"); this agreement was memorialized by the proposed Agreed Order (DN 99) submitted by the parties. Although the Court declined to enter the proposed Agreed Order (DN 99), it appears that the parties went forward with the searches as outlined in same.  On September 22, 2015, the Court entered an Agreed Order (DN 109) that purported to set forth the searches conducted, or to be conducted, by Digital Strata.  (*See* DN 216, pp. 5-6 ["As part of the Agreed Order between the parties . . . Digital Strata searched the Express server . . . ."]; DN 242-1, p. 44 ["[T]he parties entered into the Agreed Order approved by the Court, which (a) appointed Digital Strata as a neutral vendor to conduct the forensic data analysis, with the parties splitting the costs 50/50 . . . ."].)  The parties agreed to split the cost of the searches conducted by Digital Strata in half.  (*See* DNs 99, 109.)  It is not clear to the Court what, if any, specific discovery obligations the agreed-upon searches were meant to satisfy; rather, it appears to be an attempt by the parties to come to an agreement regarding the scope of discovery with respect to Express's server without reference to any particular discovery request.

The Court will not repeat the entire proposed Agreed Order (DN 99) here, but will summarize the searches that were conducted (or were to be conducted) by Digital Strata, the selected vendor:

- Files from Express server matching files on Kapsalis hard drives:  Digital Strata created a file listing report of the Express server in a spreadsheet or database format to compare to a listing report for the Kapsalis hard drives that had previously been produced; on July

4

30, 2015, the parties were provided with the file listing report for the Express server and a report comparing the file listing report from the Kapsalis hard drives to the one for the Express Server.  Express agreed to produce any files with names that were found on both the file listing report of the Express server and the file listing report for the Kapsalis hard drives.

- Files from Express server with specific project numbers:  Digital Strata was to perform a search on the Express server for specific five and six digit Vogt Power and Babcock project numbers that had been referred to in files saved on the Kapsalis hard drives.[3]  If Digital Strata determined that the search produced an excessive number of irrelevant hits, the parties agreed to meet and confer to determine a procedure to limit the search.  If the search did not return an excessive number of hits, Express would produce the results.

- Link file analysis:  Digital Strata performed a link file analysis of the Kapsalis hard drives and any other computers and storage devices that Kapsalis used from April 1, 2013 through May 1, 2014, including "the personal computer desktop and older Vogt laptop described in the deposition of Stephen Kapsalis dated October 6, 2014 . . . ."

- E-mails and communications on Express server:  Digital Strata preserved and searched the Express server for e-mails and other communications through May 1, 2014 to/from the following people or entities:  Larry Vondrak; Paul Cummins; Trey Wills; Mike Gammill; Calpine; Siemens; Fluor; Black & Veatch; and Chicago Bridge & Iron.

(DN 109.)

---

[3] In the Agreed Order (DN 109), this particular section is written as if the search was to be performed in the future, not that it had already been performed at the time the Agreed Order was filed.

5

The parties also agreed that plaintiffs may provide an initial list of up to five projects/opportunities on which they believed both plaintiffs and Express may have competitively bid or competed; defendants would produce the project files related to these identified projects/opportunities to plaintiffs. (*Id*.)

With respect to two of the searches described above (*i.e*., specific project numbers and e-mails), the entered Agreed Order (DN 109) stated that Digital Strata had created a list of the identified documents, with the list showing the name of the document, the creation date of the document, the last modified date of the document, the creator of the document, any recipients of the document, and the search terms that identified the document. (*Id*. at 3.) The list was provided to the parties' counsel and their information technology vendors on July 30, 2015. (*Id*.) The list of identified documents was reviewed by defendants' counsel for privilege. (*Id*.) All documents that were not withheld on the basis of privilege were provided to counsel for plaintiffs and their information technology vendor, subject to the provisions of the Agreed Protective and Confidentiality Order previously entered by the Court on January 13, 2014 (DN 37) as follows:   defendants' ESI Review 1-11943 were produced on August 13, 2015; defendants' ESI Review 11944-27601 were produced on August 20, 2015; defendants' ESI Review 27602-40153 were produced on August 26, 2015; and defendants' ESI Review 40154-172378 were produced on September 1, 2015. (*Id*.)

A dispute has arisen between the parties regarding the production of the results of some of the searches conducted by Digital Strata.   That dispute is addressed in a separate memorandum opinion and order (DN 351).

### 3.      Documents produced by Express

Express states that it produced responsive documents on March 6, 2014, February 17, 2016, February 19, 2016, and on February 27, 2016.  (DN 216-20, p. 2.)

### 4.      Documents produced by Kapsalis

Express states that Kapsalis produced responsive documents in August and September 2014.  (DN 216-20, p. 2.)

### 5.      Various depositions and documents produced at same

Express appears to claim that information and documents provided at various depositions satisfy its obligation to respond to the discovery requests at issue.  The Court will not recount the specific depositions identified by Express.  The Court will, however, reject Express's implied assertion that the obligation to respond to interrogatories can be fulfilled through the taking of a deposition, at least in the absence of any agreement between the parties.  Rule 33 of the Federal Rules of Civil Procedure states that, to the extent it is not being objected to, each interrogatory must be answered separately and fully in writing.   Fed. R. Civ. P. 33(b)(3).  Rule 33 provides an option to produce business records in response to interrogatories, but makes no reference to depositions.  *Id*. at 33(d).  Nor has Express pointed to any case law stating that depositions may satisfy a party's obligation under Rule 33.  On the other hand, the Court does believe that Rule 33 can be read to permit Express to satisfy its obligation to respond to interrogatories by pointing to business documents produced by a co-defendant or to documents that Express has already produced in response to a subpoena before it was named as a defendant; the Court rejects any implied assertion of plaintiffs to the contrary.

## II.    MOTION TO COMPEL (DN 196)[4]

To the extent possible, the Court will address similar discovery requests together.

### A.    First Set of Interrogatories to Express –  9, 11, 13, 14, and 16

First Interrogatory 9:  Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants employees or successors of Black & Veatch from April 11, 2013 to the present.

First Interrogatory 11:  Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants employees or successors of Calpine from April 11, 2013 to the present.

First Interrogatory 13:  Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants employees or successors of Fluor from April 11, 2013 to the present.

First Interrogatory 14:  Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants employees or successors of Chicago Bridge & Iron from April 11, 2013 to the present.

First Interrogatory 16:  Identify all Express employees, agents, representatives, attorneys, servants or successors who communicated in any manner with any agents, representatives, attorneys, servants employees or successors of Siemens from April 11, 2013 to the present.

(DN 216-34, pp. 2-5.)

Plaintiffs argue that the entities listed in these interrogatories were major customers of plaintiffs with whom plaintiffs had a business relationship during the year before Kapsalis left plaintiffs' employment.  (*Id.*)  Plaintiffs admit that Express has produced e-mail communications between the identified customers and Express employees; however, plaintiffs argue that they are entitled to the identification of all *agents* of Express, including external sales agents and

---

[4] DN 216-34 (Appendix A to Express's response to the Motion to Compel) consists of a chart that contains the discovery requests at issue, Express's objections/responses, plaintiffs' explanation regarding relevance and discoverability, and Express's description of how it has responded to the discovery requests at issue.  Plaintiffs have included a similar chart in the memorandum supporting the Motion to Compel (*see* DN 196-1, pp. 9-33), but it does not contain Express's description of how it has responded to the discovery requests at issue, *i.e.*, the last category of information.  Therefore, the Court will reference DN 216-34 in its discussion of the Motion to Compel.

representatives, who may have communicated with these customers.  (*Id*.)  Plaintiffs state that they agreed to limit these interrogatories to April 11, 2013 to April 11, 2014.  Although plaintiffs do not expressly state so, the Court assumes that they are trying to ascertain whether Kapsalis violated the employment agreement (DN 198-2) by "indirectly through another person or entity . . . divert[ing] or attempt[ing] to divert away from the Company any business opportunity for a job, contract or other business relationship that was ongoing or actively pursued by the Company during the one year period to the termination of [his] employment."  (*Id*. at 4.)

Rule 26 of the Federal Rules of Civil Procedure was recently amended to include a proportionality provision. *Albritton v. CVS Caremark Corp.*, No. 513CV00218GNSLLK, 2016 WL 3580790, at *4 (W.D. Ky. June 28, 2016) ("Proportionality is the touchstone of the revised Rule 26(b)(1)'s scope of discovery provisions.").  Rule 26(b)(1), which addresses the scope and limits of discovery, now states, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Under the circumstances of, and at this juncture in, this matter, the Court does not find plaintiffs' request proportional to the needs of the case.  Plaintiffs' argument amounts to a general allegation, with no factual support, that Kapsalis *may* have attempted to divert business away from plaintiffs *through an Express agent*.  *See* **Marsden v. Nationwide Biweekly Admin., Inc.**, No. 3:14CV00399, 2016 WL 471364, at *2 (S.D. Ohio Feb. 8, 2016) ("However, this

9

general allegation, with no factual support, does not justify production. Plaintiff has not shown how obtaining this information would lead to any likely benefit."). That is, plaintiffs have provided no basis for their asserted belief that Kapsalis was diverting or attempting to divert business away from them *through an agent of Express*. Moreover, simply because an agent of Express may have contacted a customer of plaintiffs does not provide evidence that *Kapsalis* was the catalyst behind same. In this regard, it is important to note that *Express* was under no obligation to steer clear of contact with the plaintiffs' customers named in the subject discovery request. Accordingly, if responses to the subject discovery requests were to reveal such contacts, that information would not support any of plaintiffs' claims in the absence of any direction from Kapsalis. Therefore, the Court concludes that plaintiffs have not met their burden to show that the likely benefit of the subject discovery outweighs the burden on Express. Nor has the Court seen any indication that Kapsalis was acting through an *agent* of Express to divert or attempt to divert business away from plaintiffs. The Court, of course, is not commenting on what the evidence at trial will ultimately show; it is, however, taking into consideration Rule 26(b)(1), its own knowledge of this matter, and the fact that this matter has been litigated since 2013, in determining the appropriate scope of discovery. Furthermore, the Court believes that any such evidence would likely have been uncovered during the search of Express's server and the Kapsalis hard drives. The Court understands plaintiffs' argument that communications between an Express agent and one of their customers may not necessarily have been on Express's server or in Express e-mails; however, it would seem that any e-mail(s) from Kapsalis to an Express agent directing that agent's action with respect to a particular customer would have been already uncovered, if any existed. Finally, although the Court does not believe that the depositions

10

identified by Express satisfy its obligations to respond to plaintiffs' discovery requests, the depositions taken do provide further support for the Court's observation that there does not appear to be any evidence that Kapsalis was acting through an *agent* of Express to divert or attempt to divert business away from plaintiffs; plaintiffs have not pointed to any testimony to support such an assertion.  Consequently, the Court finds that the Motion to Compel should be denied with respect to these discovery requests.

**B.     First Set of Requests for Production to Express – 6, 8, 10, 11, and 13**

First Request for Production 6: Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Black & Veatch and any agents, attorneys, servants, employees, successors of Black & Veatch from April 11, 2013 through the present.

First Request for Production 8:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Calpine and any agents, attorneys, servants, employees, successors of Calpine from April 11, 2013 through the present.

First Request for Production 10:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Fluor and any agents, attorneys, servants, employees, successors of Fluor from April 11, 2013 through the present.

First Request for Production 11:   Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Chicago Bridge & Iron and any agents, attorneys, servants, employees, successors of Chicago Bridge & Iron from April 11, 2013 through the present.

First Request for Production 13:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Siemens and any agents, attorneys, servants, employees, successors of Fluor from April 11, 2013 through the present.

Plaintiffs aver that these requests seek documents reflecting communications with any Express agents and the same five customers described in First Interrogatories 9, 11, 13, 14, and 16 for the same reason – to determine if Express, at the direction or with the aid of Kapsalis, assisted Kapsalis in breaching the employment agreement.  (DN 196-1, pp. 3-4.)  Thus, plaintiffs assert that they are entitled to all communications between Express agents and the customers

named in the subject discovery requests from April 11, 2013 to the present.  Plaintiffs further explain that it is their understanding that Express's agents do not use the Express e-mail server, which has been searched.  (DN 216-34, pp. 6-8.)  Plaintiffs do not explain the basis for their "understanding."  (*See id.*)  Plaintiffs also state that, if these documents are not in the possession, custody, or control of Express, Express should certify so.  (*Id.*)

As indicated in the previous section, Express has apparently produced e-mail communications between Express employees and the identified customers.  And for the same reasons also discussed in the previous section, the Court declines to grant plaintiffs' Motion to Compel with respect to these requests for production in full.  The Court, however, directs Express to produce, to the extent it has not already, any e-mails in its possession dated April 11, 2013 to April 11, 2014 between any of its external sales agents to any of the customers identified in these requests for production (Calpine, Black & Veatch, CB&I, Siemens, and Fluor) regarding any business opportunities.  If no such e-mails exist, Express must expressly state so; if these e-mails have already been produced, Express must specifically identify same.

### C.      First Set of Requests for Production to Express – 17, 19, and 20

First Request for Production 17: Any and all documents created, produced, owned or maintained by you that include, reference or rely upon information concerning, controlled or maintained by BPI or Vogt.

First Request for Production 19: Any and all documents created, produced, owned or maintained by you that include or reference "Vogt," "Vogt Power International" or "VPI."

First Request for Production 20: Any and all documents created, produced, owned or maintained by you that include or reference "Babcock," "Babcock Power" or "BPI."

Plaintiffs state that these requests were an attempt to identify search terms that could lead to the discovery of plaintiffs' documents that may be in Express's possession that have been

12

saved under different file names.   In response, Express argues that plaintiffs have forensic images of the Kapsalis hard drives; Express also argues that a search of the Express server was conducted pursuant to the proposed Agreed Order (DN 99).

The Court understands that part of the purpose of the searches described in the proposed Agreed Order (DN 99) was to discover any of plaintiffs' proprietary, confidential, or trade secret information that may have been copied from the Kapsalis hard drives onto the Express server. At the hearing on the Motion for Contempt (DN 143) held on June 7, 2016, plaintiffs' expert Lacey Walker testified that the file name search conducted pursuant to the proposed Agreed Order (DN 99) would not have located a document belonging to plaintiffs that had been renamed, as plaintiffs now assert.  (DN 279, pp. 210-12.)  But plaintiffs' counsel was actively involved in the formation of the search parameters memorialized in the proposed Agreed Order (DN 99).  Moreover, Mr. Walker was apparently retained by plaintiffs at or before the initiation of this lawsuit – his declaration was filed along with the complaint – and thus presumably could have provided input with respect to the searches described in the proposed Agreed Order.  (*See* DN 1-1 [Decl. of Walker].)  In other words, the proposed Agreed Order could have included a search for key terms, yet it did not.

The Court has heard no indication that plaintiffs' proprietary, confidential, or trade secret information was taken by Kapsalis other than via the Kapsalis hard drives – or at least no such allegation has been made clear to the Court.  Plaintiffs are not entitled to yet another bite at the apple now.  While the scope of discovery is liberal, there are limits and those limits now require the Court to consider proportionality to the needs of the case, including the amount in controversy and whether the burden or expense of the proposed discovery outweighs its likely

13

benefit.  Plaintiffs have not demonstrated that a search of the Express server would likely uncover documents that have not previously been or could have been discovered.  Moreover, plaintiffs have not demonstrated that any of the documents were taken other than through the Kapsalis hard drives (or, at least it has not been made clear to the Court); in other words, plaintiffs have not shown that the likely benefit of the proposed discovery outweighs the burden and expense in this instance.  Consequently, the Court finds that the Motion to Compel is due to be denied with respect to these requests for production.

**D.      Second Set of Interrogatories to Express – 3, 4, 5, 6, 8, 10, 12, 14, 16, and 20[5]**

Second Interrogatory 3:  Identify all discussions, communications, meetings and/or marketing or sales efforts  including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Larry Vondrak from January 2010 to the present.

Second Interrogatory 4:  Identify all discussions, communications, meetings and/or marketing or sales efforts  including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Paul Cummins from January 2010 to the present.

Second Interrogatory 5:  Identify all discussions, communications, meetings and/or marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Trey Wills from January 2010 to the present.

Second Interrogatory 6:  Identify all discussions, communications, meetings and/or marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the

---

[5] Plaintiffs include Second Interrogatory 7 in the discussion regarding these interrogatories.  However, Second Interrogatory 7 states, "Identify any accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected from or for Calpine from 2010 to the present." (DN 216-34, p. 14).  The Court believes that this may have been a mistake and that it is more appropriate to discuss Second Interrogatory 7 along with the Second Set of Interrogatories 9, 11, 13, and 15 (regarding financial rewards that Express may have received) and therefore will do so *infra*.

part of any agent or employee of Express directed towards or with Mike Gammill from January 2010 to the present.

Second Interrogatory 8: Identify all discussions, communications, meetings and/or marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s]. PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Calpine from January 2010 to the present.

Second Interrogatory 10: Identify all discussions, communications, meetings and/or marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Siemens from January 2010 to the present.

Second Interrogatory 12: Identify all discussions, communications, meetings and/or marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Fluor from January 2010 to the present.

Second Interrogatory 14: Identify all discussions, communications, meetings and/or marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Black & Veatch from January 2010 to the present.

Second Interrogatory 16: Identify all discussions, communications, meetings and/or marketing or sales efforts including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Chicago Bridge & Iron from January 2010 to the present.

Second Interrogatory 20: Identify any discussion, communications, meetings and/or marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Conditions, PowerPoint Presentations or the requests for same) relating to a project known as "the Wolf Data Center."

Plaintiffs assert that Kapsalis contacted representatives of the five companies identified in these interrogatories for the purpose of soliciting business from them during the restricted period as defined by the employment agreement. (DN 196-1, p. 4.) Plaintiffs argue that these

interrogatories are aimed at discovering the results of Kapsalis's efforts.  (*Id*. at 5.)  Plaintiffs also argue that the communications sought would also likely determine whether Kapsalis was using Vogt Power's confidential information to further Express's pursuit of business from the customers at issue.  (*Id*.)  For example, plaintiffs state that Kapsalis contacted Siemens for the purpose of becoming a qualified supplier, a process that takes approximately eighteen months. (*Id*.)  Plaintiffs assert that the interrogatories go back in time to 2010 only so that they can determine whether Express had a "pre-existing relationship with these specific customers and clients."  (DN 216-34, p. 15; *see also id*. at 10-20.)

Additionally, plaintiffs state that Kapsalis took efforts while at Express to pursue the Wolf Data Center project for Black & Veatch – a project on which Vogt Power bid shortly after Kapsalis left its employment to work for Express.  (*Id*.)  Plaintiffs further state that Kapsalis joined a private hunting club that was frequented by Black & Veatch executives.  (*Id*.)  Finally, plaintiffs assert that Express directed plaintiffs to over 170,000 pages of documents "to try to dig out the requested documents" and that "Rule 34(b)(2)(E)(ii) further requires that a party  must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the request."  (DN 216-34, p. 10.)

Express's response must be pieced together.  In Appendix A, Express simply states that this "request for more discovery should be rejected."  (DN 216-20.)  In its response to the Motion to Compel and the Appendix B provided as an attachment to same, Express recounts the various ways that it contends it has responded to these discovery requests.  (*See, e.g*., DN 216, 216-34, pp. 10-20.)

It appears that, other than the Wolf Data Center project, the search conducted pursuant to the proposed Agreed Order (DN 99) covered the customers and entities listed in these interrogatories.  However, the Court agrees that whether Express had a business relationship with these customers before Kapsalis was hired is relevant, although the interrogatories are not so limited.  Additionally, the Court agrees that Express should have directed plaintiffs to specific documents that are responsive to each interrogatory.  *See* Fed. R. Civ. P. 33(d) (stating that the responding party may answer by specifying the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could).  Therefore, the Court orders Express to (1) state whether it had a business relationship with the persons or entities listed in Second Interrogatories 3, 4, 5, 6, 8, 10, 12, 14, 16, and 20 from 2010 to 2014; <u>and</u> (2) if it has not done so already, identify by Bates number the specific documents that are responsive to each of these interrogatories.

These requests demonstrate the importance of crafting discovery requests that are truly aimed at getting at the heart of the matter on the first try and of cooperating with one's opposing party.  Doing so would avoid putting the Court in the position of having to fashion requests that take into consideration Rule 26 as well as the specific facts and circumstances of this case – a task that is typically better left to the parties.

### E. Second Set of Requests for Production to Express – 2, 3, 4, 5, 7, 9, 10, 12, 14, and 19[6]

**Second Request for Production 2:** All documents concerning marketing or sales efforts (including but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Larry Vondrak from January 2010 to the present.

**Second Request for Production 3:** All documents concerning marketing or sales efforts (including but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Paul Cummins from January 2010 to the present.

**Second Request for Production 4:** All documents concerning marketing or sales efforts (including but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Trey Wills from January 2010 to the present.

**Second Request for Production 5:** All documents concerning marketing or sales efforts (including but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], Power Point Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Mike Gammill from January 2010 to the present.

**Second Request for Production 7:** All documents reflecting marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and

---

[6] Plaintiffs include Second Request for Production 6 in the discussion regarding these requests for production. However, Second Request for Production 6 seeks "[a]ll documents reflecting accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected by Express from or for Calpine from 2010 to the present." (DN 216-34, p. 27.)   The Court believes that this may have been a mistake and that it is more appropriate to discuss Second Request for Production 6 along with the Second Requests for Production 8, 11, 13, and 15 (regarding financial rewards that Express may have received) and therefore will do so *infra*.  Furthermore, it appears that plaintiffs left Second Request for Production 9 out of the discussion regarding these requests entirely when it should have been included.  Second Request for Production 9 seeks "[a]ll documents reflecting marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Conditions, PowerPoint Presentations or the requests for same) on the party of any agent or employee of Express directed towards or with Siemens from 2010 to present" and thus appears to belong in the same category as the Second Set of Requests for Production – 2, 3, 4, 5, 7, 10, 12, 14, and 19.  (*See* DN 196-4, p. 27.)   This confusion is further exacerbated by the parties failing to include Second Request for Production 9 at all in their in their respective charts; Second Request for Production 8 was apparently duplicated as Second Request for Production 9.  (*See* DN 196-1, p. 28; 216-34, pp. 29-30.)   The Court will therefore discuss Second Request for Production 9, as it appears in the original second set of requests for production to Express (DN 196-4), in this section.

Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Calpine from 2010 to the present.

Second Request for Production 9:  All documents reflecting marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Conditions, PowerPoint Presentations or the requests for same) on the party of any agent or employee of Express directed towards or with Siemens from 2010 to present.

Second Request for Production 10: All documents reflecting marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Fluor from 2010 to the present.

Second Request for Production 12: All documents reflecting marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Black & Veatch from 2010 to the present.

Second Request for Production 14:  All documents reflecting marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Condition[s], PowerPoint Presentations or the requests for same) on the part of any agent or employee of Express directed towards or with Chicago Bridge & Iron from 2010 to the present.

Second Request for Production 19:  All documents reflecting marketing or sales efforts (including but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Conditions, PowerPoint Presentations or the requests for same) relating to a project know[n] as "the Wolf Data Center."

The parties' arguments with respect to these requests for production are essentially the same as their arguments with respect to the Second Set of Interrogatories – 3, 4, 5, 6, 8, 10, 12, 14, 16, and 20.  (*See* DN 196-1, p. 5; DN 216-20, p. 7; DN 216-34, pp. 22-28, 31-33.)  The Court notes that Express objects to the requests for production because they are not limited in subject matter and scope and have no meaningful limitations on time.  (*See, e.g*., DN 216-34, p. 22.) While the Court agrees that these requests for production are overbroad because they are not limited with respect to subject matter (save the Wolf Data Center project), it does find that any documents evidencing marketing or sales efforts used to solicit business from these customers

and/or entities from April 2013 – April 2014 could be relevant.  Therefore, the Court orders Express to (1) produce all documents evidencing marketing or sales efforts that it used to solicit business from the customers/entities listed in the Second Requests for Production 2, 3, 4, 5, 7, 9, 10, 12, 14, and 19 from April 2013 – April 2014; and (2) if no such materials exists, Express must state so; alternately, if Express has already produced documents responsive to each request for production, it may identify by Bates number the specific responsive documents.[7]

### F.       Second Set of Interrogatories to Express – 7, 9, 11, 13, and 15

Second Interrogatory 7:   Identify any accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected from or for Calpine from 2010 to the present.

Second Interrogatory 9: Identify any accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected from or for Siemens from 2010 to the present.

Second Interrogatory 11: Identify any accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected from or for Fluor from 2010 to the present.

Second Interrogatory 13:   Identify any accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected from or for Black & Veatch from 2010 to the present.

Second Interrogatory 15: Identify any accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected from or for Chicago Bridge & Iron from 2010 to the present.

Plaintiffs argue that they have a right to seek recovery of any monies that defendants earned as a result of Kapsalis's actions.  (DN 196-1, p. 6.)   Plaintiffs argue that these monies may not have been paid to Express given the long sales cycles for heat recovery steam generators

---

[7] The parties submitted a Joint Status Report (DN 349) on August 26, 2016.  In the Joint Status Report, the parties stated, among other things, that there are three categories of documents that at least partially resolve the Motion to Compel (DN 196).  The parties do not specify which specific discovery requests that the production of the three identified categories of documents would satisfy; however, the Court believes that the documents that Express has agreed to produce may satisfy these discovery requests, at least in part.

("HSRGs"), but that they should be provided with information about actual and projected earnings that Express has received or will received as a result of defendants' efforts for the purposes of calculating potential damages.  (*Id*. at 7.)

In response, Express argues that plaintiffs have not lost any sales to Express.  Express further argues that defendants have produced documents relating to work that Express has performed (or even bid on) for the disputed customers through document productions and through the search conducted by Digital Strata pursuant to the proposed Agreed Order (DN 99); for example, Express states that defendants have produced a purchase order base amount and the pricing of projects, such as the Fluor project and Black & Veatch project.  (DN 216-20, p. 8.) Express also states that it has produced the Board of Director's meeting minutes discussing Express's overall year-end financials, including, "Bookings 2013," "Preliminary Financial Results," "FY 13 Month and YTD Revenue," "FY 13 Month and TYD cost and gross margin," "Cash Flow," and "2014 budget and bookings to date."  (*Id*.)

Express's answers to the subject interrogatories leave much to be desired.  (*See* DN 196-5, pp. 6-10.)  On the one hand, the interrogatories are seemingly overbroad if plaintiffs' true intent is, as they assert, to determine "whether [they] lost business or opportunities" from each of the entities listed in the subject interrogatories.  (*See* DN 216-34, pp. 14, 16, 18-20.)  On the other hand, it does not appear that Express attempted to answer the interrogatories, even in a limited fashion.  Plaintiffs also claim that Express has produced nothing in response.  Express disagrees and refers to general categories of documents produced (DN 216-34, pp. 14, 16, 18-20) as well as some more specific documents in its Appendix A (DN 216-20, p. 8).  However, Express does not refer to any documents in its actual answers to these interrogatories.

Therefore, the Court orders Express to respond to Second Interrogatories 7, 9, 11, 13, and 15 by either (1) stating whether it made any sales of HSRGs to the entities listed in Second Interrogatories 7, 9, 11, 13, and 15 from April 1, 2013 to April 1, 2015; or (2) identifying by Bates number the documents that provide the answer to same.

### G.  Second Set of Requests for Production to Express – 6, 8, 11, 13, and 15[8]

Second Request for Production 6:  All documents reflecting accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected by Express from or for Calpine from 2010 to the present.

Second Request for Production 8: All documents reflecting accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected by Express from or for Siemens from 2010 to the present.

Second Request for Production 11: All documents reflecting accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected by Express from or for Fluor from 2010 to the present.

Second Request for Production 13: All documents reflecting accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected by Express from or for Black & Veatch from 2010 to the present.

Second Request for Production 15: All documents reflecting accounts receivable, unbilled receivables, advance payments or cash payments, gross margin, net profits, and/or revenues received, budgeted or projected by Express from or for Chicago Bridge & Iron from 2010 to the present.

The parties' arguments with respect to these requests for production are essentially the same as with respect to Second Interrogatories 7, 9, 11, 13, and 15.  (*See* DN 196-1, p. 7; DN 216-20, p. 8.)  Therefore, in response to Second Requests for Production 6, 8, 11, 13, and 15, the

---

[8] Although plaintiffs include Second Request for Production 9 in their discussion regarding these requests, the Court has omitted Second Request for Production 9 from its own discussion of same.  In the parties' respective charts, Second Requests for Production 8 and 9 are duplicates.  (*Cf.* DN 196-1, p. 28 *with* 216-34, pp. 29-30.)  In the actual Second Set of Requests for Production to Express, Request for Production 9 seeks "[a]ll documents reflecting marketing or sales efforts (including, but not limited to, formal or informal proposals or contractual offers, RFQs, RFPs, Terms and Conditions, PowerPoint Presentations or the requests for same) on the party of any agent or employee of Express directed towards or with Siemens from 2010 to present."  (*See* DN 196-4, p. 27.)  Therefore, the Court has discussed Second Request for Production 9, *supra*, along with similar requests regarding marketing or sales efforts by Express, *i.e.*, Second Set of Requests for Production – 2, 3, 4, 5, 7, 10, 12, 14, and 19.

Court orders Express to (1) produce documents that reflect the amount of any sales of HSRGs from April 1, 2013 to April 1, 2015 to the entities listed in Second Requests for Production 6, 8, 11, 13, and 15; or (2) identify by Bates number the documents that have already been produced that are responsive to (1).

### H.      Third Set of Requests for Production to Express – Requests 1, 2, 9, and 10

The Court will address each of these discovery requests separately.

Third Request for Production 1: All correspondence (either electronic or otherwise) between or among Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from March 15, 2013 to the present that has not previously been produce[d].

Plaintiffs seek communications between three individuals associated with Sterling and Kapsalis to determine the extent of Kapsalis's dissemination of plaintiffs' information.  (DN 216-34, p. 36.)   Plaintiffs state that they are willing to limit the request to correspondence concerning plaintiffs and/or "HSRGs and aftermarket services" from March 15, 2013 through April 11, 2014.  (*Id*.)

Express states that it has produced correspondence to, from, or relating to Kevin Garland (DN 216-20, p. 11); Express also states responsive documents have been produced by defendants or through the search conducted by Digital Strata (DN 216-34, p. 36).  Express further states that this information has been provided through multiple depositions.  (*Id*.)

Although the Court agrees that this request is overbroad and not limited in scope, Express claims that it has produced responsive documents.  Therefore, the Court orders Express to either (1) produce correspondence regarding Babcock, Vogt Power, or HSRGs and aftermarket services between Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from March

15, 2013 to April 11, 2014; or (2) identify by Bates number documents that have been produced that are responsive to same.

> Third Request for Production 2: All correspondence (either electronic or otherwise) between Stephen Kapsalis and the Board of Directors for Express Group Holdings from March 15, 2013 to the present that has not previously been produced.

Plaintiffs state that the purpose of this request is to determine the extent of Kapsalis's dissemination of plaintiffs' information.  (DN 216-34, p. 37.)  Plaintiffs state that they are willing to limit the request to correspondence concerning plaintiffs and/or HSRGs and aftermarket services from March 15, 2013 to April 11, 2014. (*Id*.)

Express states that responsive documents have been produced by defendants or though the search conducted by Digital Strata.  (DN 216-34, p. 37).  Express further states that this information has been provided through multiple depositions. (*Id*.)

Again, while the Court agrees that this request is overbroad and not limited in scope, Express claims that it has produced responsive documents.  Therefore, the Court orders Express to either (1) produce correspondence regarding Babcock, Vogt Power, or HSRGs and aftermarket services between Kapsalis and the Express Board of Directors from March 15, 2013 to April 11, 2014; or (2) identify by Bates number documents that have been produced that are responsive to same.

> Third Request for Production 9: All monthly financial reports for Express.

This request is especially problematic.  Plaintiffs have represented to the Court that their discovery requests have been narrowly tailored to meet the needs of the case.  This request, to the contrary, is exceedingly broad.  Plaintiffs state that they are willing to limit this request to the following:  a year-by-year summary of actual revenues Express received from the sale or service

24

of HSRGs and the identity of the customer.  In their chart, plaintiffs do not state why they need this information for an unspecified range of years.  (*See* DN 196-1, p. 32; DN 216-34, p. 37.) On the other hand,   Express does not state why the proposed limitation is not appropriate; instead, Express simply refers generally to the Court's memorandum opinion and order (DN 158) dated December 30, 2015 without any explanation.  (*See* 216-34, p. 37.)   Considering the legitimate need for some discovery of this nature and the need for proportionality, the Court orders that Express provide a summary of the actual revenues that it received from the sale or service of HSRGs and the identity of the customers from which such revenue was received  from April 11, 2013 to April 11, 2015.

> Third Request for Production 10: All informal reports from Express as referenced during the deposition of Kevin Garland, dated May 8, 2014.

Plaintiffs request the "informal reports" that were referenced by Kevin Garland at his deposition.  (DN 216-34, p. 38.)  Plaintiffs state that these reports consisted of "summaries of the initiatives and activities Kapsalis was pursuing for Express."  (*Id*.)  Plaintiffs further state that the intent of this request is to determine whether Kapsalis utilized plaintiffs' information and whether, and to what extent, he attempted to divert plaintiffs' customers and clients.  (*Id*.)

In response, Express refers generally to several of the Court's opinions and orders (DN 158, 204) and the Motion for Protective Order filed by Sterling Group, L.P. (DN 118).  (*Id*.)

The Court has reviewed the excerpt from Garland's deposition, which was taken on May 8, 2014, that was provided by plaintiffs.  (DN 198-18.)  The deposition does reference "informal reports" that Garland would receive from Express about the performance of the business – something as simple as an e-mail.  (*Id*. at 6.)   But the deposition excerpt provided does not provide support for plaintiffs' assertion that Garland referenced reports that consisted of

25

summaries of the initiatives and activities *Kapsalis* was pursuing for Express.  In other words, it does not appear that Garland was referring to a specific report; rather, he was testifying that he may receive informal reports from Express about the performance of the business.  Moreover, Garland's deposition was taken on *May 8, 2014*; plaintiffs' *third* set of requests for production was served on *October 27, 2015*.  (*See* DN 196-6.)  If plaintiffs uncovered information in that time period that would lend support for their assertion that Garland reviewed or possessed reports that consisted of the summaries and activities of Kapsalis for Express, they have not provided evidence of same.  In short, plaintiffs have failed to meet their burden with respect to this particular request.

## III.      LOCAL RULE 7.1(d)

The Court will briefly address plaintiffs' contention that Express has violated Local Rule 7.1(d), which limits opposing memoranda to forty pages.  Express's response includes a brief (DN 216) that is 22 pages and includes 19 exhibits, an Appendix A (DN 216-20) that consists of 12 pages and 13 exhibits, and an Appendix B (DN 216-34) that is 38 pages.  The Court declines to strike any of Express's response for two reasons.  First, the Court can find no specific rule prohibiting a response to a motion that consists of a brief, exhibits, appendices and exhibits to appendices.  Second, rather than earning it any advantage, Express's approach only risked confusion and miscomprehension by presenting argument in the form of such a complex labyrinth.  The Court cautions all parties to be as concise and precise as possible in all briefing.

## IV.      CONCLUSION

Accordingly,

26

IT IS ORDERED that the Motion to Compel (DN 196) is DENIED IN PART and GRANTED in PART.

The Motion to Compel is DENIED with respect to the following discovery requests:

- **First Set of Interrogatories to Express – 9, 11, 13, 14, and 16**

- **First Set of Requests for Production to Express – 17, 19, and 20**

- **Third Request for Production to Express – 10**

The Motion to Compel is GRANTED with respect to the following discovery requests as limited by the Court:[9]

- **First Set of Requests for Production to Express – 6, 8, 10, 11, and 13:** The Court directs Express to produce, to the extent it has not already, any e-mails in its possession dated April 11, 2013 to April 11, 2014 between any of its external sales agents to any of the customers identified in these requests for production (Calpine, Black & Veatch, CB&I, Siemens, and Fluor) regarding any business opportunities. If no such e-mails exist, Express must expressly state so; if these e-mails have already been produced, Express must specifically identify same by Bates number.

- **Second Set of Interrogatories to Express – 3, 4, 5, 6, 8, 10, 12, 14, 16, and 20:** The Court orders Express to (1) state whether and when it had a business relationship with the persons or entities listed in Second Interrogatories 3, 4, 5, 6, 8, 10, 12, 14, and 16 from

---

[9] The Court cautions Express to answer each discovery request separately, making it clear what document(s) or answer(s) correspond to each individual discovery request.

2010 to 2014; <u>and</u> (2) if it has not done so already, identify by Bates number the specific documents that are responsive to each of these interrogatories.

- **Second Set of Requests for Production to Express – 2, 3, 4, 5, 7, 9, 10, 12, 14, and 19:** The Court orders Express to (1) produce all documents evidencing marketing or sales efforts that it used to solicit business from the customers/entities listed in Second Requests for Production 2, 3, 4, 5, 7, 9, 10, 12, 14, and 19 from April 2013 – April 2014; <u>and</u> (2) if no such materials exists, Express must state so; alternately, if Express has already produced documents responsive to each request for production, it may identify by Bates number the specific responsive documents.

- **Second Set of Interrogatories to Express – 7, 9, 11, 13, and 15:** The Court orders Express to respond to Second Interrogatories 7, 9, 11, 13, and 15 by either (1) stating whether it made any sales of HSRGs to the entities listed in Second Interrogatories 7, 9, 11, 13, and 15 from April 1, 2013 to April 1, 2015; <u>or</u> (2) identifying by Bates number the documents that provide the answer to same.

- **Second Set of Requests for Production to Express – 6, 8, 11, 13, and 15:** The Court orders Express to (1) produce documents that reflect the amount of any sales of HSRGs from April 1, 2013 to April 1, 2015 to the entities listed in Second Requests for Production 6, 8, 11, 13, and 15; <u>or</u> (2) identify by Bates number the documents that have already been produced that are responsive to (1).

- **Third Set of Requests for Production to Express – 1, 2, and 9**
  - o **Third Request for Production 1:** The Court orders Express to either (1) produce correspondence regarding Babcock, Vogt Power, or aftermarket services

for HSRGs between Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from March 15, 2013 to April 11, 2014; <u>or</u> (2) identify by Bates number documents that have been produced that are responsive to same.

o   **Third Request for Production 2:**   The Court orders Express to either (1) produce correspondence regarding Babcock, Vogt Power, or aftermarket services for HSRGs between Kapsalis and the Express Board of Directors from March 15, 2013 to April 11, 2014; <u>or</u> (2) identify by Bates number documents that have been produced that are responsive to same.

o   **Third Request for Production 9:**   The Court orders that Express provide a summary of the actual revenues that it received from the sale or service of HSRGs and the identity of the customers from which such revenue was received from April 11, 2013 to April 11, 2015.

**IT IS FURTHER ORDERED THAT EXPRESS COMPLY WITH THIS ORDER BY <u>OCTOBER 12, 2016</u>.**

cc:  Counsel of record