UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:13-CV-717-CRS-CHL

BABCOCK POWER, INC., et al.,                                                    Plaintiffs,

v.

STEPHEN T. KAPSALIS, et al.,                                                    Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a "Motion to Compel Responses to Kapsalis' Third Set of Requests for Production of Documents" ("Motion to Compel") (DN 228) filed by defendant Stephen T. Kapsalis ("Kapsalis").   Plaintiffs Babcock Power, Inc. ("Babcock") and Vogt Power International, Inc. ("Vogt") (collectively, "plaintiffs') filed a response (DN 240), and Kapsalis filed a reply (DN 256).   Therefore, this matter is ripe for review.   For the reasons contained herein, the Motion to Compel is granted in part and denied in part.

I.      BACKGROUND

Kapsalis served a Third Set of Requests for Production (DN 228-2) on plaintiffs on January 29, 2016.   On March 7, 2016, plaintiffs provided objections and responses (DN 240-2) to the Third Set of Requests for Production.   On March 16, 2016, Kapsalis's counsel sent a letter (DN 228-4) to counsel for plaintiffs regarding the purportedly deficient responses; on March 18, 2016, plaintiffs' counsel sent an e-mail (DN 240-4) in response, stating that she would provide an answer to the March 16 letter in a week.   The Motion to Compel was filed on March 23, 2016.   On March 25, 2016, plaintiffs' counsel sent Kapsalis's counsel a letter (DN 240-5) in response to

1

the March 16 letter; the March 25 letter addressed the alleged deficiencies in their responses to the Third Requests for Production.

In their response to the Motion to Compel, plaintiffs state that, when comparing the memorandum supporting the Motion to Compel to plaintiffs' March 25 letter, only the following requests for production are at issue:  50, 58, 59, 62, and 78-84.  (DN 240, p. 3.)  Consequently, plaintiffs only address those specific discovery requests in their response to the Motion to Compel.  (*Id*. at 4-10.)  In his reply to the Motion to Compel, Kapsalis states that *all* of plaintiffs' responses are still deficient.  (DN 256, p. 3.)  Therefore, the Court will address all of the requests for production at issue.

This action was recently stayed as to Express Group Holdings LLC ("Express").  (DN 379.)  the motion addressed herein does not affect Express.

## II.    DISCUSSION

**Request for Production 50:**   To the extent not previously produced, produce all documents relating to any reliance by Plaintiffs on the McCoy Reports from January 1, 2010 to the present.

In response to Request 50, plaintiffs stated that, based on their objections, they would not be producing *additional* documents.  (DN 228-1, p. 11.)  In the memorandum supporting the Motion to Compel, Kapsalis argues that a substantial amount of the information allegedly misappropriated by Kapsalis is available through the McCoy Report, a third-party industry publication; while Kapsalis argues that plaintiffs cannot properly rely on information contained in the McCoy Report as trade secret information, he asserts that he is nonetheless entitled to additional discovery regarding any documents reflecting the extent to which plaintiffs rely on such information.  (DN 228-1, p. 11.)  Kapsalis further asserts that plaintiffs must supplement

2

their response to Request 50 by either producing additional documents or explicitly stating that no such documents exist.  (*Id.*)

Request 50 is vague insofar as it seeks "any reliance by Plaintiffs on the McCoy Reports."  (DN 228-1, p. 11.)  Moreover, Kapsalis has failed to establish the relevance of this information.  Specifically, Kapalis has failed to show how plaintiffs' reliance on the McCoy reports in general (as opposed to the McCoy reports encompassed in the alleged trade secret information) is relevant to this lawsuit.  Consequently, the Motion to Compel is denied with respect to Request 50.  Nonetheless, plaintiffs have stated that they will not be producing "additional" documents, which implies that they have already produced responsive documents. Therefore, to the extent that plaintiffs have produced documents that are responsive to Request 50, or an earlier iteration of same, they must specifically identify, by Bates number, any such documents.

> **Request 58:**  To the extent not previously produced, produce all documents relating to Plaintiffs' development and use of the "12 week rolling schedule" as identified as Kapsalis 009375 from April 1, 2010.

In response to Request 58, plaintiffs stated that, based on their objections, they would not be producing additional documents.  (DN 228-1, pp. 11-12.)  In the memorandum supporting the Motion to Compel, Kapsalis argues that documents relating to the 12-week rolling schedule are relevant because plaintiffs have identified it as a trade secret which he allegedly misappropriated. (DN 228-1, pp. 11-12.)  Kapsalis thus argues that evidence related to plaintiffs' development and use of the 12-week rolling schedule is directly relevant to the issue of whether it qualifies as a trade secret and, if so, whether it was misappropriated by Kapsalis.  (*Id.*)  Kapsalis further asserts

that plaintiffs must supplement their response to Request 58 by either producing additional documents or explicitly stating that no such documents exist.  (*Id*.)

In their response to the Motion to Compel, plaintiffs state that they are not asserting that the 12-week rolling schedule *template* constitutes a trade secret; rather, they assert that the *customer information contained in* the 12-week rolling schedule constitutes a trade secret.  (DN 240, pp. 5-6.)  Plaintiffs further state that this request encompasses hundreds of updates to the document during the last five years.  (*Id*. at 5.)  Plaintiffs also argue that this request is overbroad, disproportional to the needs of the case, and burdensome.  (*Id*. at 5-6.)

Request 58 is overbroad as written.  However, Kapsalis is entitled to discovery that will enable him to ascertain whether plaintiffs' alleged trade secret is actually a trade secret under the law.  Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure states that a party must provide to the other parties "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and *may use to support its claims or defenses* . . . ."  Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added).  Therefore, plaintiffs are ordered to produce all documents that support their claim that the customer information contained within the 12-week rolling schedule constitutes a trade secret.  Moreover, plaintiffs have stated that they will not be producing "additional" documents, which implies that they have already produced responsive documents.  Therefore, to the extent that plaintiffs have produced documents that are responsive to Request 58, or an earlier iteration of same, they must specifically identify, by Bates number, any such documents in a supplemental response to the request.  Consequently, the Motion to Compel is granted in part, with respect to Request 58.

**Request 59:**  To the extent not previously produced, produce all documents relating to Plaintiffs' development and use of the "target project marketing plan" as identified in Kapsalis 009360-Kapsalis 009366 from April 1, 2010 to the present.

In response to Request 59, plaintiffs stated that, based on their objections, they would not be producing additional documents.  (DN 228-1, p. 12.)   In the memorandum supporting the Motion to Compel, Kapsalis argues that plaintiffs have identified Vogt's Target Project Marketing Plan as a trade secret which he allegedly misappropriated and that defendant Express Group Holdings, LLC ("Express") was unjustly enriched by avoiding the time and expense of developing such a document.  (*Id*.)  Kapsalis thus argues that evidence related to plaintiffs' development and use of Vogt's Target Projecting Marketing Plan is directly relevant to the issue of whether it qualifies as a trade secret and if so, whether it was misappropriated by Kapsalis. (*Id*. at 12-13.)

Request 59 is overbroad as written.  However, Kapsalis is entitled to discovery that will enable him to ascertain whether plaintiffs' alleged trade secret is actually a trade secret under the law.  Rule 26(a)(1)(A)(ii) states that a party must provide to the other parties "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use *to support its claims or defenses* . . . ."  Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added).  Therefore, plaintiffs are ordered to produce all documents that support their claim that the Target Project Marketing Plan constitutes a trade secret.  Additionally, plaintiffs have stated that they will not be producing "additional" documents, which implies that they have already produced responsive documents.  Therefore, to the extent that plaintiffs have produced documents that are responsive to Request 59, or an earlier iteration of same, they must specifically identify, by Bates number, any such documents in a supplemental

response to the request.  Consequently, the Motion to Compel is granted in part, with respect to Request 59.

> **Request 60:**  To the extent not previously produced, produce all documents relating to Plaintiffs' delivery of Kapsalis' personal effects to Kapsalis' home on or after April 11, 2013.

In response to Request 60, plaintiffs stated that, based on their objections, they would not be producing additional documents.  (DN 228-1, p. 13.)   In the memorandum supporting the Motion to Compel, Kapsalis asserts that plaintiffs have claimed that one of the reasons they needed to take the deposition of Carol Kapsalis, Kapsalis's wife, was that she unpacked boxes of personal effects that Vogt delivered to their residence; thus, Kapsalis argues that information related to the delivery of Kapsalis's personal effects is relevant and discoverable.  (*Id*. at 13-14.)

Plaintiffs have claimed in another filing that Carol Kapsalis "unpacked boxes delivered from Vogt that may have had *confidential business information*."  (DN 213, p. 6 [emphasis added].)  Consequently, the Court finds that documents related to the delivery of personal effects to the Kapsalises' home are relevant.  Moreover, in the March 25, 2016 letter, plaintiffs stated that they would "conduct a search to see if there may have been some letter that references the delivery." (DN 240-5, p. 4.)  Therefore, the Motion to Compel is granted with respect to Request 60.  Plaintiffs must either produce documents related to plaintiffs' delivery of personal effects to the Kapsalises' home on or about April 11, 2013, including any documents that indicate *what* was delivered, or specifically identify, by Bates number, any responsive documents that have been produced in a supplemental response to the request.

> **Request 62:**  To the extent not previously produced, produce all documents relating to Kapsalis' Employee Nondisclosure, Non-Solicitation, Non-Competition and Assignment Agreement, including Kapsalis' compliance or alleged noncompliance.

In response to Request 62, plaintiffs stated that, based on their objections, they would not be producing additional documents.  (DN 228-1, p. 14.)  In the March 25, 2016 letter, plaintiffs further stated that they have produced any documents related to Kapsalis's execution of the employment agreement (*see* DN 27-1) at issue.  (DN 240-5, p. 3.)  In his reply to the Motion to Compel, Kapsalis states that he is not merely seeking documents that relate to the execution of the employment agreement, but also documents that relate to Kapsalis's compliance or non-compliance therewith.  (DN 256, p. 7.)

Kapsalis is entitled to discover the documents that support plaintiffs' claim that he breached the employment agreement.  Kapsalis has not sufficiently set forth reasons why documents related to his *compliance* with the employment agreement are relevant.  Therefore, plaintiffs are ordered to produce all documents that support their claim that the employment agreement was breached.  Additionally, plaintiffs have stated that they will not be producing "additional" documents, which implies that they have already produced responsive documents.  Therefore, to the extent that plaintiffs have produced documents that are responsive to Request 62, or an earlier iteration of same, they must specifically identify, by Bates number, any such documents in a supplemental response to the request.  Consequently, the Motion to Compel is granted in part, with respect to Request 62.

> **Request 63:**  To the extent not previously produced, produce all documents relating to Plaintiffs' policies relating to their employees' use of the Lotus Notes contacts either during or after employment from April 1, 2010 to the present.

In response to Request 63, plaintiffs stated that they previously produced the employee handbook and the employment agreement at issue.  (DN 228-1, pp. 14-15.)  Plaintiffs further stated that they would produce additional policy documents to the extent that such documents

exist.  (*Id*.)  In the March 25, 2016 letter, plaintiffs stated that they have searched for additional documents responsive to this request and no additional formal policies were known to exist; plaintiffs also stated that if something is discovered, they would produce it.  (DN 240-5, p. 2.)  Kapsalis argues that the March 25 letter is not sufficient and that plaintiffs must affirmatively supplement their response, expressly state that they do not have additional responsive documents, and sign and certify same.  (DN 256, p. 9.)

The Court grants the Motion to Compel with respect to Request 63, in part.  Plaintiffs are ordered to include the information contained in the March 25 letter, including whether all responsive documents have been produced and if so, specifically identify by Bates number same, in a supplemental response to the request.

> **Request 64:**  To the extent not previously produced, produce all documents relating to Plaintiffs' policies relating to their employees' use of personal devices (i.e., computers, tablets, or cell phones) for work from April 1, 2010 to the present.

In response to Request 64, plaintiffs stated that they produced the employee handbook and the employment agreement at issue; plaintiffs further stated that they would produce additional policy documents to the extent that such documents exist.  (DN 228-1, p. 15.)   In the March 25, 2016 letter, plaintiffs stated that they have searched for additional documents and no additional formal policies were known to exist; plaintiffs also stated that if something is discovered, they would produce it.  (DN 240-5, p. 2.)  Kapsalis argues that the March 25 letter is not sufficient and that plaintiffs must affirmatively supplement their response, expressly state that they do not have additional responsive documents, and sign and certify same.  (DN 256, p. 9.)

The Court grants the Motion to Compel with respect to Request 64, in part.  Plaintiffs are ordered to include the information contained in the March 25 letter, including whether all responsive documents have been produced and if so, specifically identify by Bates-number same, in a supplemental response to the request.

> **Request 65:**  To the extent not previously produced, produce all documents relating to Plaintiffs' policies relating to their employees' use of external hard drives for work from April 1, 2010 to the present.

In response to Request 65, plaintiffs stated that they produced the employee handbook; plaintiffs further stated that they would produce additional policy documents to the extent that they exist.  (DN 228-1, pp. 15-16.)    In the March 25, 2016 letter, plaintiffs stated that they have searched for additional documents and no additional formal policies were known to exist; plaintiffs also stated that if something is discovered, they would produce it.  (DN 240-5, p. 2.) Kapsalis argues that the March 25 letter is not sufficient and that plaintiffs must affirmatively supplement their response, expressly state that they do not have additional responsive documents, and sign and certify same.  (DN 256, p. 9.)

The Court grants the Motion to Compel with respect to Request 65, in part.  Plaintiffs are ordered to include the information contained in the March 25 letter, including whether all responsive documents have been produced and if so, specifically identify by Bates-number same, in a supplemental response to the request.

> **Request 66:**  To the extent not previously produced, produce all documents relating to Plaintiffs' policies relating to their employees' use of LinkedIn from April 1, 2010 to the present.

In response to Request 66, plaintiffs stated that they produced the employee handbook; plaintiffs further stated that they would produce additional policy documents to the extent that

such documents exist.  (DN 228-1, p. 16.)  In the March 25, 2016 letter, plaintiffs stated that they have searched for additional documents and no additional formal policies were known to exist; plaintiffs also stated that if something is discovered, they would produce it.  (DN 240-5, p. 2.) Kapsalis argues that the March 25 letter is not sufficient and that plaintiffs must affirmatively supplement their response, expressly state that they do not have additional responsive documents, and sign and certify same.  (DN 256, p. 9.)  The Court grants the Motion to Compel with respect to Request 66, in part.  Plaintiffs are ordered to include the information contained in the March 25 letter, including whether all responsive documents have been produced and if so, specifically identify, by Bates-number same, in a supplemental response to the request.

**Request 67:**  To the extent not previously produced, produce all documents relating to Kapsalis' use of LinkedIn.

In response to Request 67, plaintiffs stated that, based on their objections, they will not be producing additional documents.  (DN 228-1, p. 17.)  In the March 25, 2016 letter, plaintiffs stated that any relevant documents in their possession were provided to Kapsalis at the time of the preliminary injunction hearing.  (DN 240-5, p. 3.)

The Court grants the Motion to Compel with respect Request 67, in part.  Plaintiffs are ordered to state whether all responsive documents have been produced, and, if so, specifically identify, by Bates-number, same in a supplemental response to the request.

**Request 68:**  To the extent not previously produced, produce all documents relating to Kapsalis' restoration of his iPad after he left Plaintiffs' employment.

In response to Request 68, plaintiffs stated that, based on their objections, they will not be producing additional documents.  (DN 228-1, p. 17.)  In the March 25, 2016 letter, plaintiffs stated that this request encompasses documents that are "uniquely in *Plaintiffs'* [sic] own

10

possession.  How could we possibly have documents relating to an action taken by Kapsalis with his own daughter in the privacy of his home?"  (DN 240-5, p. 3 [emphasis added].)  Kapsalis argues that the fact that he restored his iPad is one of his defenses[1] to plaintiffs' allegations that he misappropriated their trade secrets.  (DN 228-1, pp. 17-18.)   Kapsalis further argues that, because he is entitled to discovery relevant to any party's claim or defenses, any documents related to Kapsalis's restoration of his iPad are relevant and discoverable.

The circumstances surrounding Kapsalis's restoration of his iPad are unclear to the Court. Nonetheless, plaintiffs imply that they do not possess any documents responsive to this request, but also state that they will not be providing additional documents.  Therefore, the Court will grant the Motion to Compel with respect to Request 68, in part.  Plaintiffs are ordered to state, in a supplemental response, whether responsive documents exist, and if so, produce same.

> **Request 69:**  To the extent not previously produced, produce all documents relating to any evidence that Kapsalis took any information from the Optrak database.

In response to Request 69, plaintiffs stated that, based on their objections, they would not be producing additional documents.  (DN 228-1, p. 18.)  In the March 25, 2016 letter, plaintiff stated that, to their knowledge, all documents had been produced.  Plaintiffs further stated, "In this regard, please not [sic] that 'information from the Optrack [sic] Datatbase' is contained in any exhibit that contained customer information in it.  If you are asking if we have evidence that Kapsalis copied specific portions or all of the Optrack [sic] Database, Plaintiffs do not have any responsive documents."  (DN 240-5, pp. 3-4.)  Kapsalis argues that this information is relevant because plaintiffs offered testimony at the hearing for the preliminary injunction that Vogt utilizes the Optrak database to store various kinds of customer and competition-sensitive

---

[1] Kapsalis asserts that, after he left Vogt's employment, he restored his iPad to recover his personal information, which caused Vogt customer contact information to be reinstalled on the device.  (DN 119-1, p. 10.)

information.  (DN 228-1, p. 18.)   Kapsalis thus argues that evidence showing that either he did or did not take documents from the Optrak database would be relevant to plaintiffs' trade secret misappropriation claim.  (*Id*.)

It is unclear to the Court what, if any, specific allegations plaintiffs have made with respect to Kapsalis allegedly taking information from the Optrak database.  Nonetheless, because plaintiffs have stated that no additional documents will be produced, that all documents have been produced, and that they do not have responsive documents that evidence Kapsalis copied specific portions or all of the Optrak database,[2] the Court will grant the Motion to Compel with respect to Request 69, in part.  Plaintiffs are ordered to state, in a supplemental response, whether responsive document exist or not, and, if so, to identify, by Bates number, any responsive documents that have been produced.

**Request 78:**  To the extent not previously produced, produce all documents relating to Plaintiffs' communications with Black and Veatch since April 11, 2013.

**Request 79:**  To the extent not previously produced, produce all documents relating to Plaintiffs' communications with Fluor since April 11, 2013.

**Request 80:**  To the extent not previously produced, produce all documents relating to Plaintiffs' communications with Siemens since April 11, 2013.

**Request 81:**  To the extent not previously produced, produce all documents relating to Plaintiffs' communications with LG&E since April 11, 2013.

**Request 82:**  To the extent not previously produced, produce all documents relating to Plaintiffs' communications with VIPCO since April 11, 2013.

**Request 83:**  To the extent not previously produced, produce all documents relating to Plaintiffs' communications with Chicago Bridge & Iron since April 11, 2013.

---

[2] While the Court believes that plaintiffs are ultimately stating that they have no documents responsive to Request 69 – which specifically asks for documents relating to any evidence that Kapsalis took any information from the Optrak database – plaintiffs are in the best position to clarify their response to this request.

**Request 84:**  To the extent not previously produced, produce all documents relating to Plaintiffs' communications with Bill Schwartzkopf since April 11, 2013.

**Request 85:**  To the extent not previously produced, produce all documents relating to Plaintiffs' communications with Gulf Thai Oil since April 11, 2013.

**Request 86:**  To the extent not previously produced, produce all documents relating to Plaintiffs' communications with KU Energy, LLC since April 11, 2013.

The Court will address these requests together.  In response to Requests 78-86, plaintiffs stated that, based on their objections, they will not be producing additional documents.  (DN 228-1, pp. 19-26.)  In the memorandum supporting the Motion to Compel, Kapsalis argues that these documents are relevant to plaintiffs' allegations that he improperly solicited several of the "Disputed Customers,"[3] including the entities named in these discovery requests, in violation of the employment agreement.  (*Id*.)  Kapsalis further explains that, while it may be undisputed that plaintiffs had some sort of continuing relationship with these customers, he is entitled to explore the specific nature and extent of these relationships to determine whether plaintiffs in fact suffered any lost business or other forms of damages as a result of his alleged conduct.  (*Id*.)  In the March 25, 2016 letter, plaintiffs stated that Kapsalis does not explain how this information is necessary to defend against a claim of lost profits and that plaintiffs' claim for lost profits is dependent on documents in Express's possession.  (DN 240-5, p. 4.)   In their response to the Motion to Compel, plaintiffs argue, among other things, that this request is overbroad and that there is no dispute that plaintiffs had or have a relationship with these customers or any of the other disputed customers, and that the specific nature of the relationship that plaintiffs had with

---

[3] In their response to the Motion to Compel, plaintiffs state that, out of the customers listed in these discovery requests, only Black and Veatch, Fluor, Siemens, and Chicago Bridge & Iron are part of the so-called "Disputed Customers."  (DN 240, p. 8.)  Plaintiffs further state that, based on the information produced to date, LG&E, VIPCO, Bill Schwartzkopf, Gulf Thai Oil, and KU Energy, LLC do not appear to be at issue.  (*Id*.)

the disputed customers is not at issue in this case; plaintiffs also argue that Kapsalis fails to articulate how "all documents" relating to communications with eight companies and an individual would provide the information that he claims to need.  (*Id.* at 9-10.)

In his reply to the Motion to Compel, Kapsalis argues, among other things, that until plaintiffs voluntarily dismiss or otherwise make a binding commitment to not pursue claims for lost actual and potential business opportunities and actual and potential loss of customer relationships as a result of Kapsalis's allegedly wrongful conduct, discovery regarding the nature and extent of plaintiffs' past and current relationships with these customers is relevant.  Kapsalis also acknowledges that plaintiffs did not identify all of the customers in these discovery requests as "Disputed Customers" for purposes of their 30(b)(6) deposition notice, but observes that plaintiffs have yet to make any binding commitment not to pursue claims based on any allegedly wrongful conduct with respect to the "non-Disputed Customers."  (*Id.* at 9.)

These requests as written are overbroad.   However, Kapsalis is entitled to any communications that support plaintiffs' claim that Kapsalis diverted or attempted to divert opportunities from these customers in violation of the employment agreement or otherwise show that plaintiffs "lost actual and potential business opportunities [from these customers]" and/or "actual and potential loss of [these] customer relationships."   (*See* DN 27-1 [employment agreement]; DN 84, pp. 10, 16 [amended complaint.)   On the other hand, because Kapsalis appears to concede that plaintiffs had a pre-existing relationship with the customers listed in these requests, the Court sees no need for discovery regarding communications that demonstrate plaintiffs' pre-existing relationship with them.

14

Therefore, the Motion to Compel is granted, in part, with respect to Requests 78-86.  The Court orders plaintiffs to produce any communications that support their claim that (a) Kapsalis diverted or attempted to divert business opportunities from these customers in violation of the employment agreement; (b) show that plaintiffs lost actual and potential business opportunities from these customers; and/or (c) show actual and potential loss of these customer relationships. If plaintiffs have already produced responsive documents, they must state so in a supplemental response to the request.

## III.    CONCLUSION

Accordingly,

IT IS ORDERED that the Motion to Compel (DN 228) is GRANTED as set forth below.

- **Request for Production 58**:  To the extent that plaintiffs have produced documents that are responsive to Request 58, or an earlier iteration of same, they shall specifically identify, by Bates number, any such documents in a supplemental response to the request.

- **Request for Production 59**:  To the extent that plaintiffs have produced documents that are responsive to Request 59, or an earlier iteration of same, they shall specifically identify, by Bates number, any such documents in a supplemental response to the request.

- **Request for Production 60**:   Plaintiffs shall either produce documents related to plaintiffs' delivery of personal effects to the Kapsalises' home on or about April 11, 2013, including any documents that indicate *what* was delivered, or specifically identify, by Bates number, any responsive documents that have been produced in a supplemental response to the request.

15

- **Request for Production 62**:  To the extent that plaintiffs have produced documents that are responsive to Request 62, or an earlier iteration of same, they shall specifically identify, by Bates number, any such documents in a supplemental response to the request.

- **Request for Production 63**:  Plaintiffs are ordered to include the information contained in the March 25 letter, including whether all responsive documents have been produced, and, if so, specifically identify by Bates number same, in a supplemental response to the request.

- **Request for Production 64**:  Plaintiffs are ordered to include the information contained in the March 25 letter, including whether all responsive documents have been produced, and, if so, specifically identify by Bates-number same, in a supplemental response to the request.

- **Request for Production 65**:  Plaintiffs are ordered to include the information contained in the March 25 letter, including whether all responsive documents have been produced, and, if so, specifically identify by Bates number same, in a supplemental response to the request.

- **Request for Production 66**:  Plaintiffs are ordered to include the information contained in the March 25 letter, including whether all responsive documents have been produced, and, if so, specifically identify, by Bates-number same, in a supplemental response to the request.

- **Request for Production 67**:  Plaintiffs are ordered to state, in a supplemental response to the request, whether all responsive documents have been produced, and, if so, specifically identify, by Bates-number, same in a supplemental response to the request.

16

- **Request for Production 68**:  Plaintiffs are ordered to state, in a supplemental response, whether responsive documents exist, and if so, produce same.

- **Request for Production 69**:  Plaintiffs are ordered to state, in a supplemental response, whether responsive document exist, and, if so, to identify, by Bates number, any responsive documents that have been produced.

- **Requests for Production 78-86**:  Plaintiffs shall produce any communications that support their claim that (a) Kapsalis diverted or attempted to divert business opportunities from these customers in violation of the employment agreement; (b) show that plaintiffs lost actual and potential business opportunities from these customers; and/or (c) show actual and potential loss of these customer relationships.  If plaintiffs have already produced responsive documents, they must identify, by Bates number, the documents produced in a supplemental response to the request.

The Motion is denied in all other respects.

IT IS FURTHER ORDERED that plaintiffs comply with this memorandum opinion and order by **January 14, 2017**.

cc:  Counsel of record

17