UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-717-CRS-CHL

BABCOCK POWER, INC., et al.,                                              Plaintiffs,

v.

STEPHEN T. KAPSALIS, et al.,                                              Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is a "Motion to Compel Discovery Regarding Dr. Andy Cobb" ("Motion to Compel") (DN 260) and accompanying memorandum (DN 260-1) filed by plaintiffs Babcock Power, Inc. ("Babcock") and Vogt Power International, Inc. ("Vogt Power") (collectively, "plaintiffs"). Defendants Stephen T. Kapsalis ("Kapsalis") and Express Group Holdings, LLC ("Express") (collectively, "defendants") filed a response (DN 289).[1] Plaintiffs filed a reply (DN 298). Therefore, this matter is ripe for review. For the reasons set forth below, the Motion to Compel is granted in part and denied in part.

**I.   BACKGROUND**

    **A.   Pertinent Facts**

On or about April 22, 2016, defendants disclosed the expert report of Andy Cobb, Ph.D. (DN 260-2). In the expert report, Dr. Cobb stated that he "examined or utilized" the following items: (1) Digital Strata report titled, "Babcock v. Kapsalis – Document Source Final.20160121 – Jan 29"; (2) the Express file server titled, "express-dfs01" (referred to herein as the "Express

---

[1] The Court notes that on November 11, 2016, Express filed a Suggestion of Bankruptcy (DN 377). On November 23, 2016, Senior District Court Judge Charles R. Simpson, III, entered an order staying the proceedings in this matter with respect to Express (DN 379); the action has not been stayed with respect to Kapsalis. Consequently, this memorandum opinion and order is limited to directing actions on the part of Kapsalis and not Express. References to Express in this memorandum opinion and order are made only to provide background information.

1

file server"); and (3) forensic images of Kapsalis's devices. (*Id*. at 4.) The second and third categories are at issue here.

With respect to the Express file server, Dr. Cobb explained in his report that the Express file server was examined to determine if any of the 760 files identified by plaintiffs as trade secrets existed on same. (*Id*. at 4-5.) More specifically, Dr. Cobb stated that that the MD5 hash of each of the 760 files was compared against the MD5 hash of "each and every file" on the Express file server. (*Id*. at 5.)[2] If the hash value of any file on the Express server matched that of any of the 760 files, it was recorded as a match; however, no matches were found. (*Id*. at 4-5.)

With respect to the forensic images on the Kapsalis devices, Dr. Cobb stated:

> Pursuant to running a hash comparison of the files on the Kapsalis Express laptop against the files stored on each of the Kapsalis devices of which One Source Discovery has a forensic image, thirteen files were identified and securely purged from the Kapsalis Express laptop. This activity is described by Elisabeth Gray in a letter to Kelly Burns Gallagher on April 1, 2016 and April 13, 2016. In addition to purging the thirteen files from the Kapsalis Express laptop, an examination of the laptop was conducted to determine if there is evidence that a user opened any of the thirteen files. The examination included analysis of the LNK files, jump lists, and registry hives on the laptop.

(*Id*. at 5.) Dr. Cobb did not list the Kapsalis devices to which he refers. Dr. Cobb concluded that with the exception of a file entitled, "ExportFile.csv," there was no evidence that the thirteen files purged from Kapsalis's Express laptop were opened after they were created on the laptop in June 2013; Dr. Cobb further concluded that the examination revealed that the file called "ExportFile.csv" was last opened on August 16, 2013. (*Id*.)

---

[2] A summary of the 760 files with accompanying MD5 hashes was attached to Dr. Cobb's report.

On April 25, 2015, counsel for plaintiffs sent a letter to counsel for Kapsalis requesting, among other things, a copy of the Express file server as Dr. Cobb had utilized or examined same in connection with his expert report. (DN 260-3, p. 2.) On May 2, 2016, counsel for Kapsalis sent a letter in response; among other things, counsel for Kapsalis stated that the Express file server "was the same Express file server used by Digital Strata to run the searches Plaintiffs directed to run through the Agreed Order . . . We cannot 'produce' a copy of the Express file server as it is a live server, nor is it necessary." (DN 260-4, p. 4.) Counsel for Kapsalis also clarified that the forensic images of the Kapsalis devices as described in Dr. Cobb's report were the ones already produced,[3] including (1) a 1 GB flash drive; (2) 16 GB flash drive; (3) 4 GB flash drive; (4) 250 GB external hard drive; and (5) 2 images of a 500 GB laptop hard drive. (*Id.* at 4-5.)

On May 4, 2016, counsel for plaintiffs sent counsel for Kapsalis a letter stating, among other things, that they had no record of receiving *two* images of a 500 GB laptop hard drive; counsel for plaintiffs asked for clarification of whether two images were produced and, if not, to produce them, and to confirm whether the two images constituted copies of Kapsalis's Express laptop and, if so, what date the copies were made. (DN 260-5, p. 1.)

On May 6, 2016, counsel for Kapsalis sent counsel for plaintiffs a letter in response. The letter stated that the "laptop images are the same laptop images referenced in the Agreed Order" (DN 109) signed by the Court and that there was no forensic image of the Express file server as it was a live server. (DN 260-6.) On the same day, counsel for plaintiffs sent counsel for Kapsalis an e-mail asking if the two laptop images referenced in both the Agreed Order and Dr.

---

[3] Although the letter does not specifically state so, the Court assumes that the Kapsalis devices were produced *to plaintiffs*.

3

Cobb's report were previously provided to plaintiffs. (DN 260-7.) In a letter dated May 9, 2016, counsel for Kapsalis stated that "there was a third image made of the Express laptop on March 10, 2016 and included as a 'Forensic images of defendant's devices' on p. 2 of the Cobb Expert Report." (DN 260-8.)

On May 31, 2016, after the Motion to Compel was filed, counsel for Kapsalis sent a letter to counsel for plaintiffs. (DN 289-4.) The letter stated, among other things, that defendants were willing to provide to plaintiffs all of the actual data that One Source Discovery ("OSD"), Dr. Cobb's employer, considered and relied upon, specifically, the LNK files, jump lists, and registry hives from Kapsalis's Express laptop and a listing of all of the hashes of the files on the Express server at the time the liver server was analyzed in April 2016. (*Id*. at 5.)

**B.     Summary of Arguments**

Plaintiffs argue that, pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, defendants have an obligation to produce a copy of the Express server and copies of the three forensic images of Kapsalis's Express laptop.

Defendants' response consists of two parts. First, defendants propose a protocol, attached to their response as Exhibit A, to "(1) search for and identify on Express' Outlook Exchange Server, Express' Network File Server, and Express' Outlook Office 365 email cloud accounts (collectively the "Express Servers"), as well as on Kapsalis' Express-issued laptop, any copies of Plaintiffs' files or data retained by Kapsalis following his resignation from Vogt, and (2) remove from the Express Servers and the Express-issued laptop the files identified in this process, if any." (DN 289, p. 2.) Second, defendants assert that Dr. Cobb only reviewed the MD5 hashes of the documents stored on Express's live server and Kapsalis's Express laptop, *i.e*.,

only a narrow subset of the data stored on the server and Kapsalis's Express laptop, not the actual content of any files, and thus plaintiffs' requested relief of the production of copies of *all files* on the Express server and Kapsalis's Express laptop is not permitted by Rule 26 and not necessary to challenge the reliability or credibility of Dr. Cobb's report. (*Id*. at 3-4.) Defendants further argue that they have fully complied with Rule 26(a)(2)(B) and provided the "facts or data" relied upon by Dr. Cobb because the MD5 hash values, Bates number, and file names of the approximately 760 files which were run against the Express server were produced with Dr. Cobb's report. (*Id*. at 6.) Defendants state that, in an effort to resolve this dispute, they have also offered to also provide a listing of all of the hash values of every file on the Express server at the time it was analyzed by OSD; defendants also offered to provide the information reviewed by OSD and Dr. Cobb on Kapsalis's Express laptop, including LNK files, jump lists, and registry hives. (*Id*. at 8.) Defendants thus assert that the production of all of the files on the Express server and Kapsalis's Express laptop would unnecessarily overbroad and unduly burdensome. (*Id*.)

In their reply, plaintiffs address a myriad of tangential issues not before the Court at this time and therefore the Court will not address them.[4] Plaintiffs appear to oppose the protocol proposed by defendants. Additionally, plaintiffs assert that Dr. Cobb stated that he reviewed "each and every file on the Express file server" and therefore they are entitled to view same.

---

[4] In particular, plaintiffs assert that defendants had "an obligation to certify that plaintiffs' documents are not on their computer servers or laptop"; this assertion is apparently based on language in the temporary restraining order (DN 8) and preliminary injunction (DN 35) issued in this matter that required Kapsalis return to plaintiffs "all copies of confidential, proprietary, and trade secret information" obtained from plaintiffs. (DN 298, pp. 1-5.) Plaintiffs also allege that Kapsalis and Express had notice of this lawsuit in July 2013 and failed to preserve the Express server. (*Id*.)

(DN 298, pp. 8-9.) Plaintiffs further assert that, if the Express server were produced to them, a protective order would sufficiently protect Express's interests. (*Id.* at 10-11.)

## II.  DISCUSSION

The Court declines to accept the protocol proposed by Kapsalis for a variety of reasons, including, but not limited to, plaintiffs' opposition to same. Consequently, the Court will turn to the merits of the Motion to Compel.

Rule 26(a)(2)(B)(ii) of the Federal Rules of Civil Procedure states that, unless otherwise stipulated or ordered by the court, an expert witness disclosure *must* be accompanied by a report that contains, among things, "the facts or data considered by the witness in forming them." As the Court has found, this means that a party must disclose all documents or information provided to testifying experts. *See, e.g.*, *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 715 (6th Cir. 2006) ("We agree with the district court and the majority view that Rule 26 now requires disclosure of all information provided to testifying experts."); *see also* Fed. R. Civ. P. 26 cmt. (1993) ("The report is to disclose the data and *other information considered by the expert* and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.") (emphasis added).

The Court rejects Kapsalis's assertion that he has provided the facts and data relied upon by Dr. Cobb because the MD5 hash values, Bates number, and file names of the approximately 760 files identified by plaintiffs were produced. "The purpose of such disclosure [*i.e.*, the facts

6

and data considered] is to allow opposing parties a 'reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *City of Owensboro v. Kentucky Utilities Co.*, No. CIV.A.4:04CV-87-M, 2008 WL 4542674, at *2 (W.D. Ky. Oct. 8, 2008) (quoting advisory committee notes to Rule 26(a)(2)). Simply providing plaintiffs with the 760 files and nothing else does not serve this purpose or comply with Rule 26(a)(2)(B)(ii). That said, plaintiffs are not entitled to a copy of the Express server and Kapsalis's Express laptop in full either. Although Dr. Cobb's report could have been more clearly worded, he clarified under oath at his deposition that the hash values on the live Express server were extracted using a program called X-ways, and that a hash value comparison of the 760 files identified by plaintiffs was run against the hash values on the live Express server as of April 2016. (DN 289-3, pp. 9-10, 13, 20.) Additionally, Dr. Cobb testified that the hash values of the various Kapsalis devices were compared against Kapsalis's Express laptop. (*Id*. at 7-8, 15, 22.) Thus, Kapsalis shall provide, as was offered, a listing of all of the hash values of every file on the Express server at the time it was analyzed by OSD, as well as the information reviewed by OSD and Dr. Cobb on Kapsalis's Express laptop, including LNK files, jump lists, and registry hives.

  The Court further orders Kapsalis to have Dr. Cobb's expert report amended to define "forensic images of defendant's devices" as described in Dr. Cobb's report so that it is clear what he reviewed. (*See* DN 260-2, p. 2.)

  Finally, the Court orders Kapsalis to clarify to plaintiffs and the Court the issue of what is now apparently three images of Kapsalis's Express laptop. While Kapsalis should feel free to expound further so that it is clear to plaintiffs and the Court, he shall explain, at a minimum, (1)

whether reference to Kapsalis's Express laptop is the same as the "500 GB laptop hard drive" described in the Agreed Order (DN 109, p. 1); (2) assuming that reference to Kapsalis's Express laptop is the same as the "500 GB laptop hard drive," state when any image(s) was made and when that image was provided to plaintiffs; and (3) whether the "*2 images* of a 500 GB laptop hard drive" referred to in the Agreed Order (DN 108, p. 1) are exact duplicates, when the image was made, and when it was provided to plaintiffs – assuming that the "2 images" were exact duplicates and one of those images has already been provided to plaintiffs, Kapsalis does not have an obligation to provide same to plaintiffs again.[5]

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Motion to Compel (DN 260) is granted in part and denied in part.

The Motion to Compel is GRANTED insofar as it requests a listing of all of the hash values of every file on the Express server at the time it was analyzed by OSD, as well as the information reviewed by OSD and Dr. Cobb on Kapsalis's Express laptop, including LNK files, jump lists, and registry hives.

The Motion to Compel is DENIED insofar as it requests, without limits, access to Express's server and Kapsalis's Express laptop.

IT IS FURTHER ORDERED that Kapsalis amend Dr. Cobb's expert report to define "forensic images of defendant's devices" as stated in Dr. Cobb's report.

---

[5] Although not expressly stated by any party, the Court assumes that plaintiffs have been provided with at least one forensic image of the 500 GB laptop hard drive.

IT IS FURTHER ORDERED that Kapsalis explain, at a minimum, (1) whether reference to Kapsalis's Express laptop is the same as the "500 GB laptop hard drive" described in the Agreed Order (DN 109, p. 1); (2) assuming that reference to Kapsalis's Express laptop is the same as the "500 GB laptop hard drive," state when any image(s) was made and when that image was provided to plaintiffs; and (3) whether the "*2 images* of a 500 GB laptop hard drive" referred to in the Agreed Order (DN 108, p. 1) were exact duplicates, when the image was made, and when it was provided to plaintiffs – assuming that the "2 images" are exact duplicates and one of those images has already been provided to plaintiffs, Kapsalis does not have an obligation to provide same to plaintiffs again.

KAPSALIS SHALL COMPLY WITH THIS ORDER **NO LATER THAN JANUARY 23, 2017**.

cc: Counsel of record