# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO.  3:13-CV-717-CRS-CHL


BABCOCK POWER, INC., et al.,                                                    **Plaintiffs,**

v.

STEPHEN T. KAPSALIS, et al.,                                                    **Defendants.**


## MEMORANDUM OPINION AND ORDER

On February 7, 2017, defendant Stephen T. Kapsalis ("Kapsalis")[1] filed a "Motion for Discovery" (DN 398) and "Supplemental Memorandum in Support of his Written Objections and Motion for Protective Order and to Quash the January 23, 2017 Subpoena and Motion for Discovery" ("Supplemental Memorandum") (DN 398-1).   On February 22, 2017, plaintiffs Babcock Power, Inc. and Vogt Power International, Inc. ("plaintiffs") filed a response (DN 405). On February 22, 2017, non-party Sterling Group, LP ("Sterling") filed a brief (DN 410) addressing the issues raised in the Motion for Discovery and Supplemental Memorandum.   On March 1, 2017, Kapsalis filed a reply (DN 417) and plaintiffs filed a response (DN 418) to Sterling's brief.   On March 8, 2017, the Court held an evidentiary hearing on the issues raised in these filings.   On April 10, 2017, plaintiffs, Kapsalis, and counsel for plaintiffs, Kelly Gallagher ("Gallagher"), filed proposed findings of fact and conclusions of law.   (*See* DNs 437-39.) Therefore, this matter is ripe for review.

---

[1] The other defendant in this matter, Express Group Holdings, LLC ("Express"), has filed for bankruptcy; consequently, this action has been stayed with respect to Express.  (DNs 377, 379.)

# I.   BACKGROUND

The case has a long and tortured history marked by contentious litigation of a wide range of discovery issues.  The purpose of the background is to provide enough history to give context to the Court's decision; the background will not cover every single discovery ruling made or issue addressed by the Court.  Instead, the background will (1) recount the rulings (or pertinent parts of rulings) that the Court deems relevant to the issues at hand; (2) relay other pertinent facts; and (3) address how the allegations that are the subject of the Motion for Discovery and Supplemental Memorandum and related filings came before it and culminated in the evidentiary hearing held on March 8, 2017.

## A.   The Court's Discovery Rulings

### 1.   December 30, 2015 Memorandum Opinion and Order (DN 158)

On November 9, 2015, plaintiffs filed a "Motion to Compel Responses to Their First Set of Interrogatories and Requests for Production from Defendant Express Group Holdings, LLC" ("Motion to Compel Express") (DN 127).   On December 30, 2015, the Court issued a memorandum opinion and order (DN 158) denying, *in toto*, the Motion to Compel Express.

Requests for Production 6, 8, 10, 13, and 15 were among the discovery requests at issue in the Motion to Compel Express.  Those requests were as follows:

> Request for Production 6:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Black & Veatch and any agents, attorneys, servants, employees, successors of Black & Veatch from April 11, 2013 through the present.
>
> Request for Production 8:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Calpine and any agents, attorneys, servants,

employees, successors of Calpine from April 11, 2013 through the present.

Request for Production 10:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Fluor and any agents, attorneys, servants, employees, successors of Fluor from April 11, 2013 through the present.

Request for Production 13:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Siemens and any agents, attorneys, servants, employees, successors of Siemens from April 11, 2013 through the present.

Request for Production 15:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and LG&E and any agents, attorneys, servants, employees, successors of LG&E from April 11, 2013 through the present.

(DN 127-2 at 13-15.)

In its memorandum opinion and order, the Court addressed Requests for Production 6-16 as a whole.  The Court stated that, based on the information contained in the Motion to Compel Express and accompanying memorandum, the "only request for production for which plaintiffs have demonstrated some sort of relevancy is Request No. 10 and only for communications occurring between April 11, 2013 and April 11, 2014."  (DN 158 at 9.)  The Court further noted:

Plaintiffs have not demonstrated why communications with respect to each entity described in Requests for Production 6-9 and 11-16 are relevant to its claims or alleged damages. Plaintiffs have not stated why they need "[a]ny and all communications" as opposed to communications regarding a specific topic; Requests for Production 6-16 are also overbroad for this reason.

(*Id*. at 10.)

The Court also addressed Request for Production 21.  Request for Production 21 requested "[a]ny and all documents concerning the performance of Stephen Kapsalis, including

but not limited to, any performance reviews conducted by Express, Express' Board of Directors or the Sterling Group." (DN 127-2 at 17.)  The Court found that the relevancy of the documents sought via Request for Production No. 21 was not obvious and had not been established by plaintiffs at that juncture.  (DN 158 at 10.)  The Court concluded:

> In sum, plaintiffs have not provided the Court with enough information with which to properly evaluate its Motion to Compel. Moreover, on their face and without more information, plaintiffs' discovery requests are overbroad and/or unduly burdensome. Consequently, the Motion to Compel will be denied.
>
> That being said, at the December 3, 2015 hearing, the parties indicated they would work together to come to an agreement regarding the scope of plaintiffs' discovery requests; the Court expects them to do so and will consider any remaining dispute at a later time.

(*Id*. at 11.)

## 2.    February 26, 2016 Memorandum Opinion and Order (DN 204)

On October 28, 2015, Sterling filed a "Motion for Protective Order, to Quash Subpoena, and for Sanctions, Including Cost-Shifting" ("Motion to Quash by Sterling") (DN 118) seeking to quash a subpoena issued by plaintiffs out of this Court on September 21, 2015.   On February 26, 2016, the Court issued a memorandum opinion and order granting in part and denying in part the Motion to Quash by Sterling.   Specifically, the Court granted the Motion to Quash by Sterling insofar as it sought to quash the September 21, 2015 subpoena, but denied it insofar as it requested a protective order against future discovery and sanctions against plaintiffs.  (DN 204 at 14.)

Request 1 in the subpoena to Sterling sought "[a]ll correspondence (either electronic or otherwise) between or among Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen

Kapsalis from December 1, 2012 to the present that has not previously been produced." (*Id*. at 3.) In granting the Motion to Quash by Sterling with respect to Request No. 1, the Court noted that, while it had fewer qualms about the time period for which communications were sought, the request was "extraordinarily broad" because it was not limited to a specific subject matter. (*Id*. at 3-4.)

Request 6 in the subpoena to Sterling sought "[a]ll correspondence (either electronic or otherwise) between Stephen Kapsalis and the Board of Directors for Express Group Holdings from December 1, 2012 to the present that has not previously been produced." (*Id*. at 6.) In granting the Motion to Quash by Sterling with respect to Request No. 6, the Court stated:

> Sterling and plaintiffs make the same arguments as they did with respect to Request No. 1. Plaintiffs also state that Kapsalis sent portions of the strategic planning documents of Vogt and Babcock to the Express Board of Directors. Plaintiffs assert that they are entitled to know if other documents or portions of documents were also sent to the Express Board of Directors. Plaintiffs assert that this request is narrowly tailored to obtain this information. The Court disagrees; the subject matter of the correspondence is not limited in any fashion. For the reasons stated heretofore, the Court finds that this request is overbroad because it is not limited in subject matter or scope.

(*Id*.)

Request 12 in the subpoena to Sterling sought "[a]ny and all documents (either electronic or otherwise) concerning Stephen Kapsalis' performance as Chief Executive Officer of Express." (*Id*. at 9.) In granting the Motion to Quash by Sterling with respect to Request 12, the Court found that this category of documents was not obviously relevant to plaintiffs' claims. (*Id*.)

Request 17 in the subpoena to Sterling sought "[a] copy of any joint defense agreement between and/or among Stephen Kapsalis, Express and Sterling." (*Id*. at 11.) In granting the

Motion to Quash by Sterling with respect to Request 17, the Court rejected plaintiffs' claims of relevancy. (*Id*. at 12.)

Nonetheless, in the memorandum opinion and order, the Court stated that it did not find that plaintiffs' requests have no merit whatsoever. (*Id*.) The Court further stated, "Rather, many of them are simply too broad and the Court is not in the best position to craft more narrow requests. At the hearing conducted by the Court on December 3, 2015, plaintiffs' counsel agreed to talk to opposing counsel about a 'reasonable restriction' with respect to their discovery requests." (*Id*.)

### 3. March 2, 2016 Order (DN 208)

In the March 2, 2016 order, the Court stated, among other things:

> The Amended Scheduling Order (DN 186) is further amended as follows:
>
> Fact discovery deadline: **April 1, 2016***
>
> *All discovery that is outstanding must be completed by this date. No additional discovery is permitted.
>
> Plaintiffs' expert disclosure deadline: **March 15, 2016**
>
> Defendants' expert disclosure deadline: **April 22, 2016**
>
> Expert discovery deadline: **May 20, 2016**
>
> Dispositive motion deadline: **June 22, 2016**

(DN 208 at 4.) This conference was not conducted on the record.

### 4. March 7, 2016 Subpoena to Sterling and Related Order

On March 7, 2016, Gallagher caused a subpoena (DN 226-2) to be issued to Sterling in conjunction with this action. In response, on March 21, 2016, Sterling filed a motion to quash

(DN 226) in this action. In an order (DN 357) dated October 4, 2016, the Court denied the motion to quash without prejudice, finding that the motion to quash should have been filed in the district where compliance was required, presumably the Southern District of Texas. On November 30, 2016, Sterling filed a motion to quash in the Southern District of Texas; that motion to quash was then transferred to the Court and referred to the undersigned for a ruling. Rule 45 Motion to Quash March 7, 2016 Subpoena Served on Sterling by Respondents, and for Sanctions, *The Sterling Group, L.P. v. Babcock Power, et al.*, Misc. Action No. 3:17-mc-1-CRS, (W.D. Ky. Nov. 30, 2016), ECF No. 1; Order, *The Sterling Group*, Misc. Action No. 3:17-mc-1-CRS (W.D. Ky. Jan. 20, 2017), ECF No. 5; Order Referring Motion to Magistrate Judge, *The Sterling Group*, Misc. Action No. 3:17-mc-1-CRS (W.D. Ky. Feb. 8, 2017), ECF No. 14. The Court has not yet issued a ruling on the motion to quash.

**5.      September 15, 2016 Memorandum Opinion and Order (DN 352)**

On February 16, 2016, plaintiffs filed a "Motion to Compel Discovery from Defendant Express Group Holdings, LLC" ("Second Motion to Compel") (DN 196) seeking documents and information in response to various interrogatories and requests for production served on Express. On September 15, 2016, the Court issued a lengthy memorandum opinion and order addressing the specific interrogatories and requests for production at issue; the Court will only recount relevant portions of same.

In addressing the First Requests for Production, 17, 19, and 20 (requests related to documents that reference information concerning plaintiffs or that reference plaintiffs), the Court stated:

> Plaintiffs state that these requests were an attempt to identify search terms that could lead to the discovery of plaintiffs'

documents that may be in Express's possession that have been saved under different file names. In response, Express argues that plaintiffs have forensic images of the Kapsalis hard drives; Express also argues that a search of the Express server was conducted pursuant to the proposed Agreed Order (DN 99).

The Court understands that part of the purpose of the searches described in the proposed Agreed Order (DN 99) was to discover any of plaintiffs' proprietary, confidential, or trade secret information that may have been copied from the Kapsalis hard drives onto the Express server. At the hearing on the Motion for Contempt (DN 143) held on June 7, 2016, plaintiffs' expert Lacey Walker testified that the file name search conducted pursuant to the proposed Agreed Order (DN 99) would not have located a document belonging to plaintiffs that had been renamed, as plaintiffs now assert. (DN 279, pp. 210-12.) But plaintiffs' counsel was actively involved in the formation of the search parameters memorialized in the proposed Agreed Order (DN 99). Moreover, Mr. Walker was apparently retained by plaintiffs at or before the initiation of this lawsuit – his declaration was filed along with the complaint – and thus presumably could have provided input with respect to the searches described in the proposed Agreed Order. (*See* DN 1-1 [Decl. of Walker].) In other words, the proposed Agreed Order could have included a search for key terms, yet it did not.

The Court has heard no indication that plaintiffs' proprietary, confidential, or trade secret information was taken by Kapsalis other than via the Kapsalis hard drives – or at least no such allegation has been made clear to the Court. Plaintiffs are not entitled to yet another bite at the apple now. While the scope of discovery is liberal, there are limits and those limits now require the Court to consider proportionality to the needs of the case, including the amount in controversy and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Plaintiffs have not demonstrated that a search of the Express server would likely uncover documents that have not previously been or could have been discovered*. Moreover, plaintiffs have not demonstrated that any of the documents were taken other than through the Kapsalis hard drives (or, at least it has not been made clear to the Court); in other words, plaintiffs have not shown that the likely benefit of the proposed discovery outweighs the burden and expense in this instance. Consequently, the Court finds that the Motion to Compel is due to be denied with respect to these requests for production.

(DN 352 at 12-14 [emphasis added].)[2]

The Court also addressed Third Request for Production 1, which requested "[a]ll correspondence (either electronic or otherwise) between or among Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from March 15, 2013 to the present that has not previously been produce[d]." (*Id*. at 23.) The Court stated:

> Although the Court agrees that this request is overbroad and not limited in scope, Express claims that it has produced responsive documents. Therefore, the Court orders Express to either (1) produce correspondence regarding Babcock, Vogt Power, or HSRGs and aftermarket services between Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from March 15, 2013 to April 11, 2014; <u>or</u> (2) identify by Bates number documents that have been produced that are responsive to same.

(*Id*. at 23-24.)

The Court also addressed Third Request for Production 2, which requested "[a]ll correspondence (either electronic or otherwise) between Stephen Kapsalis and the Board of Directors for Express Group Holdings from March 15, 2013 to the present that has not previously been produced." (DN 352 at 24.) The Court stated:

> Again, while the Court agrees that this request is overbroad and not limited in scope, Express claims that it has produced responsive documents. Therefore, the Court orders Express to either (1) produce correspondence regarding Babcock, Vogt Power, or HSRGs and aftermarket services between Kapsalis and the Express Board of Directors from March 15, 2013 to April 11, 2014; <u>or</u> (2) identify by Bates number documents that have been produced that are responsive to same.

(*Id*.)

On October 14, 2016, Express filed a notice of compliance (DN 364) with the Court's September 15, 2016 memorandum opinion and order.

---

[2] For a more detailed discussion of the searches performed of the Express server and the issues arising from same, see Document 351 at pages 1-16 and Document 352 at pages 4-6.

### 6. December 8, 2016 Memorandum Opinion and Order (DN 381)

On May 12, 2016, plaintiffs filed a "Memorandum in Support of Their Motion to Compel Discovery Regarding Dr. Andy Cobb" ("Motion to Compel Cobb") (DN 260). On December 8, 2016, the Court granted in part and denied in part the Motion to Compel Cobb. (DN 381 at 8.) The Court granted the Motion to Compel Cobb insofar as it requested a listing of all the hash values of every file on the Express server at the time it was analyzed by Dr. Andy Cobb and One Source Discovery. (*Id*. at 7-8.) However, the Court expressly rejected plaintiffs' request for a copy of or access to the Express server. (*See* DN 260-1 at 5 ["Thus, Defendants have an obligation to produce a copy of the server . . . ."]; *id*. at 6 ["Plaintiffs respectfully move this Court to compel Defendants' [sic] to . . . provide access to the Express file server . . . ."]; *see also* DN 381 at 8.) Specifically, the Court denied the Motion to Compel Cobb insofar as it requested, "without limits, access to Express's server." (*Id*.)

### B. Express Files Suggestion of Bankruptcy (DN 377) on November 11, 2016.

On November 11, 2016, Express and its non-party affiliates filed a Suggestion of Bankruptcy (DN 377) with the Court. The Suggestion of Bankruptcy stated, in part:

> PLEASE BE ADVISED that, as of the Commencement Date, any new or further action against Express is stayed pursuant to section 362 of the Bankruptcy Code (the "Automatic Stay"), which provides that the filing of the petition, among other things, "operates as a stay, applicable to all entities, of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ...." and of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(1) & (3).

> PLEASE BE FURTHER ADVISED that any procedural or other action against Express taken in this matter without obtaining relief from the Automatic Stay from the Bankruptcy Court may be void *ab initio* and may result in a finding of contempt against Plaintiffs. Express reserves the right to seek relief in the Bankruptcy Court from any judgment, order, or ruling entered in violation of the Automatic Stay.

(*Id*. at 1-2.)  On November 23, 2016, Senior District Judge Charles R. Simpson III entered an order (DN 379) staying the action with respect to Express.  Judge Simpson's order stated, "The Automatic Stay provision, 11 U.S.C. § 362, precludes any further action against Express in this matter, absent a lifting of the automatic stay by the bankruptcy court."  (*Id*.)

**C.      On December 9, 2016, Plaintiffs File Suit Against Sterling in the Western District of Kentucky.**

On December 9, 2016, plaintiffs filed a lawsuit against Sterling in the Western District of Kentucky.  Complaint, *Babcock Power, Inc., et al. v. The Sterling Group, L.P.*, Civil Action No. 3:16-cv-789-CRS (W.D. Ky. Dec. 9, 2016), ECF No. 1.  This lawsuit is based largely on the same facts underlying this action.

**D.      January 23, 2017 Subpoena Issued to Express Bankruptcy Trustee**

On January 23, 2017, a subpoena was issued out of the Western District of Kentucky with the caption of this case, *Babcock Power, Inc., et al. v. Stephen T. Kapsalis,* Civil Action No. 3:13-cv-00717-CRS-CHL.  (DN 390-2; DN 427 at 25.)  The subpoena was issued to Scott P. Kirtley ("Kirtley"), the bankruptcy trustee for Express[3]; the place of compliance was Tulsa, Oklahoma and the date and time of compliance was January 27, 2017 at 10 a.m.  (DN 390-2.)  The subpoena was signed by Gallagher.  (*Id*.)  The subpoena requested the following:

---

[3] Kirtley is also referred to as "the Express bankruptcy trustee" in this memorandum opinion and order.

1. Copies of any insurance policies from 2012 to 2016 including commercial general liability policies; professional liability or errors and omissions policies; employment practices liability insurance policies; and, directors and officers liability policies.

2. Copies of any documents concerning the formation or operation of CCCG, LLC.

3. Copies of any agreements with Stephen T. Kapsalis ("Kapsalis") including any agreements entered upon the termination of Kapsalis' employment with Express.

4. Copies of any agreement with Middleton Reutlinger including agreements to pay the legal fees of Kapsalis.

5. Copies of any agreement with Clark Martin including agreements to pay the legal fees incurred by him on behalf of Kapsalis, Express or The Sterling Group.

6. A copy of Kapsalis' personnel file.

7. Copies of any documents concerning The Sterling Group's ownership interest in Express and the disposition of that interest.

8. Copies of any documents concerning or reflecting payment of a management fee to The Sterling Group.

9. Copies of any indemnification agreement between/among Sterling, its lenders and Express Group Holdings and its lenders concerning the BPI/Vogt Litigation (WDKY 3:13-CV-717-CRS-CHL).

10. Copies of any document concerning a reserve fund to pay for any potential judgment in the BPI/Vogt Litigation (WDKY 3:13-CV-717-CRS-CHL).

11. Copies of any agreement between/among Sterling its lenders and Express Group Holdings and its lenders concerning payment of any judgment in the BPI/Vogt Litigation (WDKY 3:13-CV-717-CRS-CHL).

12. Records of payments made to Middleton Reutlinger.

13. Records of payments made to Schiff Hardin.

14. Records of payments made to Clark Martin.

15. Copies of any joint defense agreements between Express Group Holdings and Stephen T. Kapsalis.

16. Copies of any joint defense agreement between Express Group Holdings and The Sterling Group.

17. Documents concerning any sales made by Sound Technologies to Vogt Power during 2013.

18. Sales Force data for Express Group Holdings' sales and sales efforts with regard to Calpine, Black & Veatch, Fluor, Siemens and LG&E from 2013 through 2016.

19. All documents relating to Express' bid for the Wolf Data Center project.

20. All documents relating to Express' bid for the Jordan Cove Project.

21. All documents relating to Express' bid for the Black Hills Project (C15-103).

22. All documents on Express' servers, computers and external storage devices that bears a Vogt Power International Inc. ("Vogt Power") copyright.

23. All documents on Express' servers, computers and external storage devices relating to Nevada Power – Harry Allen, Profess Energy-Bartow, Southern Power – Stanton, Duke Energy – Buck, Kleen Energy, Banderma, Loma de Lata and Isolux.

24. All documents on Express' servers, computers and external storage devices that include or contain any CAD standards belonging to Vogt Power.

25. All documents on Express' servers, computers and external storage devices that include or contain any ASME Calculations developed by Vogt Power.

26. All documents on Express' servers, computers and external storage devices that include or contain any information about or from Vogt Power's TRS program.

27. All documents on Express' servers, computers and external storage devices that include or contain any information about or developed by Vogt Power with regard to methods of modular construction.

28. Communications between Glenn Selby and any representative or employee of Calpine, Black & Veatch, Fluor, Siemens and LG&E from 2013 through 2016.

29. Copies of any invoices from Digital Strata to Express.

30. Records of any payments made by Express Group Holdings to Digital Strata.

31. Copies of any invoices from One Source Discovery to Express Group Holdings.

32. Records of any payments made to One Source Discovery.

33. Email correspondence between Stephen T. Kapsalis and Kevin Garland from 2013 through 2016 and/or access to Kapsalis' email account on the Express server.

34. Email correspondence between Stephen T. Kapsalis and Gary Rosenthal from 2013 through 2016.

35. Email correspondence between Stephen T. Kapsalis and Brad Staller from 2013 through 2016.

36. Email correspondence between Stephen T. Kapsalis and Bob Hogan from 2013 through 2016.

37. Email correspondence between Stephen T. Kapsalis and Patrick Hayes from 2013 through 2016.

38. Email correspondence between Stephen T. Kapsalis and the Express Board of Directors from 2013 through 2016.

39. Preservation of Express Group Holding's servers in the form of a bit by bit forensic copy of the servers pending the outcome of the BPI / Kapsalis litigation.

40. Preservation of Stephen T. Kapsalis' email box pending the outcome of the BPI / Kapsalis litigation.

41. Preservation of Glenn Selby's email box pending the outcome of the BPI / Kapsalis litigation.

42. Preservation of any computers, laptops or other electronic devices used by Stephen T. Kapsalis pending the outcome of the BPI / Kapsalis litigation.

(DN 390-2 at 5-7 [Schedule A to January 23, 2017 subpoena].)

E.    **"Motion for Protective Order and to Quash the January 23, 2017 Subpoena" ("Motion to Quash") (DN 390) is Filed on January 26, 2017.**

On January 26, 2017, Kapsalis filed the Motion to Quash.[4]    In the Motion to Quash,

Kapsalis notified the Court that a subpoena had been served on the bankruptcy trustee for

---

[4] Although the Motion to Quash was ultimately denied as moot (*see* Order at DN 436), the allegations set forth in it are relevant to the issues at hand.

Express and sought a "protective order" to "quash the subpoena." (DN 390-1 at 3.) Plaintiffs filed a response to the Motion to Quash the next day, January 27, 2017. (*See* DN 391.) The response was signed by plaintiffs' lead counsel, Pamela J. Moore ("Moore"). (*Id*.) Plaintiffs set forth "relevant facts," which the Court will summarize. (*Id*. at 1-2.)

On February 16, 2016, plaintiffs filed a motion to compel discovery from Express. (*Id*. at 1.) On September 15, 2016, the Court issued a memorandum opinion and order compelling Express to provide certain pieces of information and documents to plaintiffs. (*Id*.) Express provided responses pursuant to the Court's order; however, plaintiffs argued that before they were able to seek "clarification on several of Express' responses," Express filed for bankruptcy in the Northern District of Oklahoma. (*Id*. at 2.) According to plaintiffs, on December 5, 2016, counsel for plaintiffs attended a meeting of creditors in Tulsa, Oklahoma; counsel for plaintiffs requested several categories of documents from the Express bankruptcy trustee. (*Id*.) On December 13, 2016, the Court held a telephonic status conference wherein plaintiffs stated that they "alerted the Court and counsel for Kapsalis that counsel for Plaintiffs had attended the Meeting of Creditors in the Express Bankruptcy and w[ere] pursing [sic] documents from the Express Bankruptcy Trustee." (*Id*.)[5] Plaintiffs asserted that they were informed that Express's servers were being sold at the end of January and that if they wanted any documents, they would need to serve a subpoena and collect them prior to that time. (*Id*.) Plaintiffs further stated, "Accordingly on January 23, 2017 Plaintiffs served the Express Bankruptcy Trustee with a subpoena (*issued from the Northern District of Oklahoma*) requesting production of several categories of documents and requesting that the Express Bankruptcy Trustee take steps to

_____

[5] The December 13, 2016 telephonic status conference was not on the record and therefore there is no transcript of same.

15

preserve evidence that might be on the Express servers pending the outcome of this litigation . . . ." (*Id.*) (emphasis added).  Plaintiffs also

> acknowledge[d] that they issued the subpoena on fairly short notice, however, they did so in order to preserve documents prior to the sale of the Express Bankruptcy Estate. Relying on representations made by the Bankruptcy Trustee, Plaintiffs seek to preserve evidence that may otherwise be destroyed or may become very difficult to access in the future.

(*Id.* at 4.)  In their response, plaintiffs did not disclose—as later events would reveal—that they were in the process of executing the subpoena.  (*See id.*)

In the reply supporting the Motion to Quash, Kapsalis, upon information and belief, alleged that Gallagher and plaintiffs' expert witness, Walker, accessed the servers at Express's offices and downloaded some documents pursuant to the subpoena issued to the Express bankruptcy trustee.  (DN 392 at 1-2.)

On or about February 2, 2017, upon request of counsel, the Court scheduled a telephonic status conference for February 8, 2017 to discuss the issues raised in the reply brief supporting the Motion to Quash.  (*See* February 2, 2017 text order at DN 393.)

F.      **Motions to Quash are Filed by Sterling and Kapsalis on January 31, 2017 and February 6, 2017, respectively, in the Northern District of Oklahoma**

On January 31, 2017, Sterling filed a motion to quash the January 23, 2017 subpoena to the Express bankruptcy trustee in the United States District Court for the Northern District of Oklahoma.  The Sterling Group, L.P.'s Motion to Quash Portions of the January 23, 2017 Subpoena Directed to Trustee in Bankruptcy of Express Group Holdings, LLC, *Babcock Power, Inc., et al., v. Kapsalis*, Misc. Action No. 17-mc-5-JED-TLW (N.D. Okla. Jan. 31, 2017), ECF No. 1.  Kapsalis followed suit by filing a motion to quash on February 6, 2016.  Defendant

Stephen T. Kapsalis' Motion to Quash Subpoena and For Protective Order and Opening Brief in Support, *Babcock Power, Inc.*, Misc. Action No. 17-mc-5-JED-TLW (N.D. Okla. Feb. 6, 2017), ECF No. 10.  Plaintiffs filed a response to Sterling's motion to quash on February 7, 2017.  Respondents' Opposition to the Sterling Group, L.P.'s Motion to Quash Portions of the January 23, 2017 Subpoena Directed to Trustee in the Bankruptcy of Express Group Holdings, LLC, *Babcock Power, Inc.*, Misc. Action No. 17-mc-5-JED-TLW (N.D. Okla. Feb. 7, 2017), ECF No. 15.  Plaintiffs' response is also Document 410-1 in the docket.

> **G.    Motion for Discovery (DN 398) and Supplemental Memorandum (DN 398-1) are Filed on February 7, 2017.**

On February 7, 2017, Kapsalis filed the Motion for Discovery (DN 398) and Supplemental Memorandum (DN 398-1).   In the Supplemental Memorandum, Kapsalis requested (1) discovery regarding the actions of Gallagher and Walker in conjunction with search conducted pursuant to the subpoena issued to the Express bankruptcy trustee; (2) that plaintiffs' counsel and Walker preserve, return, and purge any documents, information, or data obtained from the search; (3) that Gallagher and Walker provide written verification under oath that they returned all copies of any such information and purged any electronic copies and detail any communications they had with anyone at the Express bankruptcy trustee's office; (4) that the Court order the Express bankruptcy trustee to preserve any information or documents related to the facts described in the filing; (5) appointment of a third party computer examiner to inspect, analyze, and retrieve the data examined or copied by Gallagher and Walker; and (6) sanctions, including attorneys' fees.  (*Id*. at 4-5.)

H.        **February 8, 2017 Telephonic Conference**

On February 8, 2017, the Court conducted a telephonic conference on the record. (DN 401.) The Court discussed, among other things, the procedural posture of the dispute, including the Motion to Quash (DN 390) and the Motion for Discovery (DN 398).

With respect to the Motion to Quash, Moore stated that it was not properly before the Court "because the subpoena was issued out of the North [sic] District of Oklahoma . . . [and] if you want to file a motion to quash, that needs to be filed in the jurisdiction in which the subpoena is seeking to be enforced." (DN 401 at 6.)

With respect to the Motion for Discovery, Moore stated, "I'm not sure what [DN] 398 does. I mean, certainly there's no reason for discovery on Kelly Gallagher or Lacey Walker. They've made very patently very clear in all the pleadings and will do so in an affidavit, if necessary, *that nothing was taken*." (*Id*. [emphasis added].) The Court discussed the allegations made by Kapsalis in the Supplemental Memorandum (DN 398-1) and set an accelerated briefing schedule in relation to same; the Court also set a hearing on the allegations for March 8, 2017. (*Id*. at 8-10.)

Additionally, the Court prohibited plaintiffs from using, reviewing, or otherwise accessing the information that was obtained or copied from the Express offices on January 26-27, 2017. (*Id*. at 20-22.) Moore also requested permission for plaintiffs' bankruptcy counsel to participate in the March 8, 2017 hearing "to explain what it was that he gave us permission to do and why; and also that my partner or our bankruptcy counsel in Oklahoma be allowed to participate in the hearing so that they can fully argue the issues related to the bankruptcy proceeding, which are distinct from the district court proceeding, but they're obviously

18

intertwined, because I'm not qualified to do bankruptcy." (*Id*. at 18.) The Court granted permission to have plaintiffs' bankruptcy counsel appear. (*Id*. at 25.)

With respect to plaintiffs' position as to the subpoena issued to the Express bankruptcy trustee, Moore stated, "In large measure, Your Honor, our steps were guided by bankruptcy counsel, because we are now a creditor to the bankrupt estate." (*Id*.) Moore also stated with respect to plaintiffs' bankruptcy counsel that "[h]e could be somebody who's just going to argue that aspect of our position, which is that everything we've done is consistent with the bankruptcy code and permissible. So I think that's very important for the court to understand . . . . Because I think there's a significant disconnect between the understanding of what's actually gone on here, and it arises as a result of the position of Express as a bankrupt entity . . . . And as I said, I am not a bankruptcy lawyer, so my steps and everything we've done in this case has been guided by the bankruptcy law . . . ." (*Id*. at 26, 28.)

Finally, Moore agreed that, absent some temporal exigencies, plaintiffs would not seek a Rule 2004 examination in the Express bankruptcy proceedings that mirrored the requests contained in the subpoena to the Express bankruptcy trustee. (*Id*. at 32-33.)

I.     **March 8, 2017 Evidentiary Hearing**

On March 8, 2017, the Court held an evidentiary hearing regarding the allegations made in the reply (DN 392) supporting the Motion to Quash (DN 390) and the filings related to the Motion for Discovery (DN 398). The following people testified at the evidentiary hearing: Gallagher; plaintiffs' bankruptcy counsel, Mark Craige ("Craige"); and Walker. The Court will summarize pertinent parts of the testimony from the evidentiary hearing; the Court will also,

where necessary, cite to relevant portions of the declarations of Gallagher and Walker that were filed in the record in advance of the evidentiary hearing.[6]

Plaintiffs retained Craige, a bankruptcy attorney in Tulsa, Oklahoma, in response to Express filing bankruptcy. (DN 406 at 2.) Craige attended the Express creditors' meeting on December 5, 2016 on behalf of plaintiffs. (DN 427 at 120.)

On December 13, 2016, the Court held a telephonic conference wherein, according to Gallagher, Moore stated that plaintiffs were pursuing documents from the Express bankruptcy trustee. (*Id.*) There is no recording or transcript of this telephonic conference.

Craige communicated with the Express bankruptcy trustee, Kirtley, and/or his associate, regarding plaintiffs' desire to obtain documents and other data from the Express offices, including from the servers located there. (*See* DN 406 at 2-3 [Gallagher Decl.]; DN 406-8 at 6-7 [January 18, 2017 e-mail from Craige to Kirtley]; *see also* DN 427 at 24-25.) In an e-mail dated January 18, 2017 to Kirtley, Craige wrote, in part:

> My co-counsel for Vogt who is seeking the discovery are Pamela Moore and Kelly Gallagher with McCarter & English in Hartford, Conn. (and other cities). They have a forensic expert, Lacey Walker, Jr., who has been working on this case for years that they want to use to review the files (both paper and data) in an effort to locate the items on the list we discussed earlier today. To facilitate this, I am inquiring as to whether our Mr. Walker and Ms. Gallagher can have access to the computers, files and related data on either January 26 or 27 of next week?

(DN 406-8 at 6.)

---

[6] At the evidentiary hearing, plaintiffs objected to the use of the declaration of Christopher Masters, the former IT director of Express, as evidence. (*See* DN 427 at 18-20; *see also* DN 410-2 [Masters Decl.].) While no ruling was made at the evidentiary hearing, the Court does not rely on Masters's declaration in this memorandum opinion and order.

Kirtley required that plaintiffs present him with a subpoena, in addition to other conditions. (*Id.* at 5; DN 427 at 23-25.)

Gallagher testified that around January 19, 2017, she became aware that a sale of some of Express's assets, including the servers, would be taking place. (DN 427 at 123.) Gallagher testified that she believed that she learned around January 26, 2017, that the sale was going to take place on January 31, 2017 and that the servers would not be wiped clean before they were sold. (*Id.* at 123-24, 129.)

On January 23, 2016, Gallagher signed the subpoena to be served on Kirtley. (*Id.* at 22-23.) The subpoena issued from this Court with the civil action number of this matter. (*Id.* at 23.) The date of compliance on the subpoena was January 27, 2017 at 10 a.m. (*Id.* at 26.) Gallagher e-mailed a copy of the subpoena to counsel for Kapsalis. (DN 406 at 4.)

On January 26, 2017, the day before the date of compliance listed in the subpoena, Gallagher and Walker went to the Express offices in Tulsa, Oklahoma. (DN 427 at 26.) According to Gallagher, Kirtley had asked Gallagher to start executing the subpoena on January 26, 2017 to avoid being there on a Saturday. (*Id.*) Gallagher testified that she mistakenly believed that the subpoena listed the date of execution as January 26, 2017. (*Id.* at 27-28.)

Jamey Iceberg ("Iceberg"), the information technology ("IT") director for Kirtley's law firm, was present at the Express offices for part of the day on January 26th and 27th. (*Id.* at 28-30, 110; *see also* DN 406 at 5-6, 8.) Beginning on January 26, 2017, Walker began to run several searches. Late in the morning on January 26, 2017, Gallagher received notice that Kapsalis had filed the Motion to Quash (DN 390) with this Court. (DN 427 at 29-30.) Gallagher did not instruct Walker to stop any of his searches. (*Id.* at 30.) Gallagher notified Iceberg of the

motion to quash. (*Id*.; DN 406 at 7.) According to Gallagher, she told Iceberg that they would continue the "preservation efforts" and that plaintiffs would not look at any of the documents or results of the searches until the Motion to Quash had been resolved. (DN 427 at 30, 32, 62; *see also* DN 406 at 7-8.) Gallagher testified that Iceberg agreed. (DN 427 at 109-11; *see also* DN 406 at 7-8.)

Over the course of January 26-27, 2017, Walker conducted the following searches: (1) searches on the financial server also known as the Timberline Server; (2) searches on the e-mail server also known as the Outlook Server, specifically of the e-mail accounts of Kapsalis and Glenn Selby; (3) search for "CCCG" and possibly other key words on the network share or file server. (DN 427 at 188-90; *see also* DN 406 at 8-9; DN 407 at 3-5 [Walker Decl.]). The results of those searches were exported to an external hard drive; Walker has custody of that external hard drive. (DN 427 at 188-90; *see also* DN 407 at 3-5.) Walker was able to make a copy of the Timberline Server, which was copied to an NAS external hard drive; Iceberg has custody of that hard drive. (DN 427 at 190-91; *see also* DN 407 at 2 [Walker Decl.].) Walker attempted to make a copy of the file server as well, but had trouble doing so. (DN 427 at 198-200; DN 407 at 2, 4 [Walker Decl.].) Iceberg was ultimately successful in making a copy of the file server; the copy of the file server is on the same NAS external hard drive that contains a copy of the Timberline Server. (DN 427 at 198.)

With respect to the searches of Kapsalis's e-mail account, Gallagher testified that "[w]e did not want to have our search results yield privileged information or potentially privileged information." (*Id*. at 60-62; *see also* DN 406 at 8.) Therefore, e-mails containing e-mail extensions for the attorneys representing Kapsalis, Express, and Sterling were excluded as well

as e-mails containing the word, "privileged." (DN 427 at 60-62; DN 407 at 3 [Walker Decl.].) No similar restrictions were made for the search of Selby's e-mail account. (DN 427 at 61.) Although not aware at the time of the search of the e-mail server, Gallagher testified the e-mail address that she used for J. Clark Martin, an attorney for Sterling, was not the one that he typically used for communications in this matter. (*Id*. at 60-61.) In other words, the e-mail address that Martin used for communications with respect to this litigation was not excluded from the search of Kapsalis's e-mail account.

Gallagher testified that plaintiffs did not state in their response to the Motion to Quash, which was filed on January 27, 2017, that any searches had been conducted. (*Id*. at 36, 44; *see also* DN 391 [response to Motion to Quash].) To Gallagher's knowledge, plaintiffs' counsel did not tell Kapsalis's counsel on January 26 or 27, 2017 that searches were being conducted. (DN 427 at 40.)

At the evidentiary hearing, Gallagher testified that the purpose of the subpoena issued to the Express bankruptcy trustee was "to generally obtain discovery that the Court had previously ordered but which [plaintiffs] were not able to obtain because of the Express bankruptcy." (*Id*. at 26.) Gallagher also testified that the "primary intent [of the subpoena] was to preserve . . . . The secondary intent was to look for clarification on the production made by Express in October of 2016." (*Id*. at 58.) The Court then asked, "Whether you call it clarification or anything else, the intent was to look at the documents that were on the server; is that correct?" and Gallagher replied, "Yes." (*Id*.) Additionally, Gallagher testified as follows:

> Q. My question was were any of these requests directed to
> obtain information to use in the bankruptcy forum as opposed to
> in this court or in the lawsuit against Sterling?

> A. I believe that these were all directed -- these all related to the current case with regard to Kapsalis.
>
> Q. In this court?
>
> A. In this court. Sorry.
>
> Q. So is the answer "no," the purpose of the subpoena was not to obtain information for use in the bankruptcy forum?
>
> A. Correct. It was not to obtain it for use in the bankruptcy forum, but some of the requests were related to the fact that Express had declared bankruptcy.

(*Id*. at 73.)   Gallagher testified that plaintiffs did not file a motion to extend the discovery deadline.  (*Id*. at 47-48.)

Gallagher further testified, "The position we are taking is that we had an Express bankruptcy trustee who was willing to produce the documents without objection. The subpoena was negotiated with the trustee, who never raised any concerns about burden or proportionality." (*Id*. at 53.)  Gallagher believed the February 26, 2016 memorandum opinion and order (DN 204) only applied to Sterling and that it was appropriate to ask someone else the same question.  (*Id*. at 51-54.)

## II.     DISCUSSION

After a careful review of the briefs and the record, the Court concludes that the issuance of the subpoena to the Express bankruptcy trustee violated the Court's March 2, 2016 scheduling order and that plaintiffs should be sanctioned under Rule 16 of the Federal Rules of Civil Procedure as a result; the Court will explain why below.  In doing so, the Court will also address the alarming conduct of plaintiffs' counsel, most notably that of Moore.  Additionally, the Court

will explain why it will not consider whether the subpoena at issue complied with Rule 45 and address Local Rule 37.1's meet and confer requirement.

## A.    Sanctions Under Rule 16[7]

### 1.    Rule 16

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, "On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C).  The sanctions available in Rule 37(b)(2)(A)(ii)-(vii) include:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;

---

[7] The Court will briefly address its authority to sanction a party under Rule 16.  Magistrate judges are statutorily authorized under 28 U.S.C. § 636(b)(1)(A) to "hear and determine any pretrial matter pending before the court" subject to review by a district judge under the clearly erroneous or contrary to law standard.  Indeed, pursuant to this statutory provision, on May 14, 2015, this matter was referred to the undersigned for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues.  (DN 97.)  Plaintiffs assert that, when a motion for sanction is brought by a defendant and a third party, "it is unclear whether a magistrate judge has authority to issue sanctions . . . ."  (DN 438 at 32 n. 3.)  As plaintiffs point out, however, at least one district court in the Western District of Kentucky has held that a magistrate judge has the authority to impose sanctions *sua sponte* under Rule 16.  *Holly v. UPS Supply Chain Sols., Inc.*, No. 3:13-CV-980-DJH-CHL, 2015 WL 4776904, at *3 (W.D. Ky. Aug. 12, 2015) (finding settlement report and order sanctioning defendant *sua sponte* under Rule 16 was a non-dispositive pretrial matter).  This holding is in accord with holdings of other courts.  *See, e.g.*, *Grenion v. Farmers Ins. Exch.*, No. CV 12-3219 JS GRB, 2014 WL 1284635, at *4 (E.D.N.Y. Mar. 14, 2014) ("Because sanctions pursuant to Rule 16(f) fall within the scope of pretrial matters, magistrate judges are well within their authority to impose such sanctions."); *Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2014 WL 5840566, at *2 (D. Minn. Mar. 7, 2014) (applying clearly erroneous or contrary to law standard to sanctions imposed by magistrate judge under Rule 16); *CLM Partners LLC v. Fiesta Palms, LLC*, No. 2:11-CV-01387-PMP, 2013 WL 6388760, at *3 (D. Nev. Dec. 5, 2013) ("Furthermore, courts within the Ninth Circuit have found that a magistrate judge's authority extends to the imposition of monetary sanctions for the failure of a party to comply with the magistrate judge's settlement conference order [under Rule 16].") (collecting cases); *cf. Massey v. City of Ferndale*, 7 F.3d 506, 510-11 (6th Cir. 1993) (holding that a magistrate judge does not have authority to rule upon a *post-dismissal* motion for sanctions, fees, and costs).  The undersigned was expressly authorized to enter and amend scheduling orders in this matter.  Plaintiffs violated a scheduling order.  Therefore, the Court has authority to, *sua sponte*, sanction plaintiffs under Rule 16 for violating that scheduling order.

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order
except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37 (b)(2)(A)(ii)-(vii).  Additionally, Rule 16 states, "Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 16(f)(2).

## 2.      Plaintiffs Violated the March 2, 2016 Order

In the March 2, 2016 order, the Court stated, among other things, that the fact discovery deadline was April 1, 2016 and that all discovery that was outstanding must be completed by that date.  (DN 208.)  The Court further stated, "No additional discovery is permitted."  (*Id*.)  "A subpoena that seeks documents under Federal Rule of Civil Procedure 45 is a discovery device subject to the same deadlines as other forms of discovery set forth in the court's scheduling order."  *Fabery v. Mid-S. Ob-GYN*, No. 06-2136 D/P, 2000 WL 35641544, at *1 (W.D. Tenn. May 15, 2008); *see also Martin v. Oakland Cty.*, No. 2:06-CV-12602, 2008 WL 4647863, at *2 (E.D. Mich. Oct. 21, 2008) ("[A] a subpoena cannot be issued once discovery has closed.").  The issuance of the subpoena to the Express bankruptcy trustee on January 23, 2017 in conjunction with this action was "additional discovery" that clearly violated the March 2, 2016 scheduling order.

Plaintiffs argue that the discovery deadline was April 1, 2016, but "neither Defendant nor Express complied with that date, as evidenced by the *several orders* entered after April 1, 2016

compelling the production of documents and depositions."  (DN 418 at 4 [emphasis added].)

Plaintiffs further state, "The Court has both *permitted and ordered discovery* following the April

1, 2016 date in recognition of the fact that discovery from Kapsalis, Express, and Sterling

remained outstanding well after that date, and in fact remains outstanding as of today."  (*Id*. at 7

[emphasis added].)    The specific examples that plaintiffs cite are (1) the September 15, 2016

memorandum opinion and order (DN 352) issued by the Court regarding the Second Motion to

Compel; (2) plaintiffs advising the Court and Kapsalis during a December 13, 2016[8] telephonic

conference call that they were seeking information from the Express bankruptcy trustee; (3) the

December 8, 2016 memorandum opinion and order (DN 381) ordering Kapsalis to produce hash

value information; and (4) the pending "motion for discovery"[9] from Sterling.  (DN 418 at 7-8.)

Thus, plaintiffs conclude, that "[u]nder these circumstances, to suggest that the Court had a

blanket prohibition on any discovery occurring after April 1, 2016 is false."  (*Id*. at 8.)

Plaintiffs' argument is a troubling mischaracterization of events.  As an initial matter, the

April 1, 2016 deadline explicitly and specifically applied to *outstanding* discovery, that is,

discovery that had already been served by the parties.  The order – issued on March 2, 2016 –

specifically and clearly stated that no *additional* discovery was permitted.   Therefore, *no*

*additional fact discovery was permitted to be served* by any party.  Moreover, even if one were

to somehow construe the March 2, 2016 order as stating that no additional fact discovery was

permitted after April 1, 2016, the issuance of the subpoena on January 23, 2017 – nine months

---

[8] In their response to Sterling's brief regarding the Motion for Discovery, plaintiffs state that the date of the telephonic status conference was December 9, 2016; however, according to court records and Gallagher's own testimony at the evidentiary hearing, the conference was actually held on December 13, 2016.  (DN 385; DN 427 at 120.)

[9] Sterling has not filed a motion for discovery.  The Court assumes that plaintiffs actually mean the pending motion to quash filed by Sterling in the Southern District of Texas that was transferred to this Court and remains pending.

later – was still a clear violation of the order. Additionally, each specific event referenced by plaintiffs fails to support their position.

First, plaintiffs' argument that the Court re-opened discovery by granting in part Plaintiff's own motion to compel, is audacious but unavailing. The September 15, 2016 memorandum opinion and order in question addressed discovery requests that had been served by plaintiffs on November 14, 2014, October 9, 2015, and October 27, 2015. (DN 352 at 1-2 [quoting DN 196-1 at 2, 6].) The September 15, 2016 memorandum opinion and order simply ordered Express to respond, or clarify its responses, to some of those discovery requests – requests that had been served in 2014 and 2015. It in no way permitted any additional discovery to be served. Indeed, all that was essentially left to be done after the March 2, 2016 order, as far as fact discovery was concerned, was for the Court to referee any discovery dispute regarding outstanding discovery – that is, discovery that had been served prior to March 2, 2016 – as well as issue rulings on any pending discovery motions. (*See, e.g*., DN 385 [December 14, 2016 order stating, "The Court advised that rulings on the remaining motions will be forthcoming."].)

In the September 15, 2016 memorandum opinion and order, the Court recounted the history of the proposed Agreed Order (DN 99) and described how plaintiffs were actively involved in creating the search parameters memorialized in same. (DN 352, p. 13.) The Court stated that plaintiffs "are not entitled to yet another bite at the apple now," meaning that plaintiffs were not entitled to yet another search of the Express server. (*Id*.) The Court concluded, "While the scope of discovery is liberal, there are limits and those limits now require the Court to consider proportionality to the needs of the case, including the amount in controversy and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Plaintiffs*

*have not demonstrated that a search of the Express server would likely uncover documents that have not previously been or could have been discovered*." (*Id*. at 13-14 [emphasis added].) In other words, the Court concluded that no additional search of the Express server should occur in conjunction with the discovery requests at issue. To suggest that the September 15, 2016 memorandum opinion and order authorized additional discovery beggars belief.

Second, while the December 13, 2016 telephonic status conference was not on the record, plaintiffs' characterization of it as the Court or Kapsalis giving implicit permission for them to conduct additional discovery in this action or to cause the subpoena to be issued to the Express bankruptcy trustee in conjunction with this action is erroneous. At a minimum, it is clear that the order arising out of the December 13, 2016 conference said nothing about permitting additional fact discovery in this action, nor did it purport to re-open fact discovery.

Third, the December 8, 2016 memorandum opinion and order (DN 381) addressed plaintiffs' Motion to Compel Cobb (DN 260); the Motion to Compel Cobb concerned the expert report of Cobb that was disclosed on April 22, 2016, the date of Kapsalis's expert disclosure deadline. (*See* DN 208 [setting forth expert disclosure deadlines].) The Court ordered, pursuant to Rule 26(a)(2)(B)(ii), production of a listing of the hash values of every file on the Express server because it considered that listing "facts or data" relied upon by Cobb in forming his expert opinion. (DN 381 at 6-7.) In no way can mandating the production of the listing of the hash values pursuant to Rule 26(a)(2)(B)(ii) be construed as permitting plaintiffs to serve additional fact discovery or the Court "ordering" additional discovery. Moreover, the Court therein *once again* expressly rejected yet another request from plaintiffs to copy or access the Express server. (*Id*. at 8.)

Fourth, in no way can the motion to quash filed by Sterling in the Southern District of Texas, which has been transferred to this district, be construed as authorizing additional discovery in contravention of March 2, 2016 order.   In fact, the motion to quash was filed by Sterling with respect to a subpoena that *plaintiffs* caused to be issued to Sterling on *March 7, 2016* – after the March 2, 2016 order stating that no additional fact discovery was permitted.  *See* Exhibit 8 to Sterling's Rule 45 Motion to Quash March 7, 2016 Subpoena Served on Sterling by Respondents, and for Sanctions, *The Sterling Group, L.P.*, Misc. Action No. 3:17-mc-1-CRS (W.D. Ky. Nov. 30, 2016), ECF No. 1-8 (3/7/2016 subpoena to Sterling).

In sum, the March 2, 2016 order did exactly what it purported to do – prohibit any additional fact discovery to be served by any party.   A court order regarding outstanding discovery requests served in 2014 and 2015 was not "additional discovery."   A court order regarding supplementation of a timely disclosed expert report was not "additional discovery."   A motion to quash filed by a non-party regarding a subpoena issued after the March 2, 2016 order was not "additional discovery."   Most importantly, none of these orders or events, either implicitly or explicitly, permitted more discovery to be served by any party.   As such, Rule 16(f) mandates an award of attorneys' fees unless plaintiffs can show that the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

### 3. Plaintiffs' Failure to Adhere to the March 2, 2016 Order Was Not Substantially Justified.

Plaintiffs' failure to obey the March 2, 2016 order was not substantially justified.  In yet another example of alarming behavior on the part of plaintiffs' counsel, the justification for the issuance of the January 23, 2017 subpoena has been a continuously moving target.  Plaintiffs'

justifications for causing the subpoena to be issued have devolved into a game of judicial Whac-a-mole™.

> **a.** **Plaintiffs' Justifications for Causing the Subpoena to be Issued.**

In response to the Motion to Quash (DN 390), plaintiffs stated that the subpoena was issued out of the Northern District of Oklahoma "to preserve evidence that might be on the Express servers." (DN 391 at 2; *see also id.* at 4 ["Plaintiffs acknowledge that they issued the subpoena on fairly short notice, however, they did so in order to preserve documents prior to the sale of the Express Bankruptcy Estate."].)

Then, during the February 8, 2017 telephonic conference, Moore again stated that the subpoena issued out of the Northern District of Oklahoma. (DN 401 at 6.) Moore also suggested that the subpoena to the Express bankruptcy trustee was issued to protect plaintiffs' rights as creditors. Moore stated that "[i]n large measure . . . [plaintiffs'] steps were guided by bankruptcy counsel, because [plaintiffs] are now a creditor to the bankrupt estate [of Express]." (*Id.* at 25.) Moore further stated that everything plaintiffs had done was "consistent with the bankruptcy code and permissible . . . . Because I think there's a significant disconnect between the understanding of what's actually gone on here, and it arises as a result of the position of Express as a bankrupt entity." (*Id.* at 26.)

In the response to the Motion for Discovery (DN 398), plaintiffs' argument regarding justification for issuance of the January 23, 2017 subpoena also centered on their rights as creditors in the Express bankruptcy action. *See, e.g.*, DN 405 at 4 ["In this case, the requests related to the Plaintiffs' claims against the Debtor, as well as possible assets of the Debtor (such as insurance) or bankruptcy actions (such as avoidance actions) that might be available to pay

creditors."]; *id*. at 13 ["Bankruptcy Law Allows Plaintiffs Broad Discovery of the Debtor as Creditors in the Bankruptcy Case"]; *id*. at 14 ["The scope of discovery in bankruptcy is very broad."]; *id*. at 15 ["As creditors in the bankruptcy case, Plaintiffs are entitled to the broad discovery of the Debtor provided for under bankruptcy law and rules."]; *id*. ["The Subpoena seeks information that falls squarely within the scope of a creditor's permissible discovery of a debtor in bankruptcy."]; *id*. at 18 ["The Plaintiffs acted in accordance with the exigencies of the circumstances, with full and fair notice to Defendant, and in accordance with their rights under bankruptcy law."].)  Plaintiffs also asserted that, "[i]n addition to their broad discovery rights under bankruptcy law, all parties to the litigation had an interest in having information relating to the litigation preserved." (*Id*. at 16.)  Plaintiffs then admitted that they had in fact caused the subpoena to be issued out of this Court:  *"The fact that the subpoena was issued out of this court instead of the Bankruptcy Court is unfortunate but should not change the result in this case*: first, because Plaintiffs had a right to the information under bankruptcy law, second, because there was an imminent need to preserve such information arising from the Trustee's sale, and third, because when Plaintiffs received notice of Defendant's objection, they simply preserved the information." (DN 405 at 23 [emphasis added].)

Another nascent justification alluded to in plaintiffs' response to the Motion to Discovery was that Express had (allegedly) not complied a court order regarding discovery.  Specifically, plaintiffs asserted that Express had not complied with the September 15, 2016 memorandum opinion and order (DN 352).  Plaintiffs stated, "This Court issued an order dated September 15, 2016 compelling Express to produce documents and information. Express filed for bankruptcy in November *without having complied with the order*." (DN 405 at 21 [emphasis added].)

Plaintiffs yet again attempt to rewrite history to suit their own ends. In the September 15, 2016 memorandum opinion and order, the Court ordered Express to comply by October 12, 2016 (DN 352 at 29); on October 14, 2016, Express filed a notice (DN 364) with the Court stating that it had complied with the order and served supplemental responses on plaintiffs' counsel on October 12, 2016.

In plaintiffs' response to Sterling's memorandum in support of the Motion for Discovery, they expound on this justification, stating, "Express *was in violation of this Court's September 2016 order* compelling production of documents as of the date it filed for bankruptcy, as reflected in a continuous stream of emails between counsel for Express and counsel for Plaintiffs regarding same (attached hereto as **Exhibit A**)." (DN 418 at 2 [emphasis added].) However, a review of Exhibit A does not support this assertion. The first page of Exhibit A consists of an e-mail from counsel for Express to counsel for plaintiffs with an attachment called, "Supplemental Disclosures Pursuant to 9-15-16-Order." (DN 418-1 at 2.) In other words, the first page shows that Express complied, or at least attempted compliance, with the September 15, 2016 memorandum opinion and order. The rest of Exhibit A consists of correspondence between Moore and counsel for Express, none of which evidences a wholesale failure on the part of Express to comply with the September 15, 2016 memorandum opinion and order.

Rather, in an e-mail dated October 13, 2016, Moore wrote, in part, "I have gone through the responses minimally. I have a few questions *regarding the new documents that you produced*. . . . I also have some concern about the designation. I have to be able to share the information with at least someone from my client in order to understand its relevance." (DN 418-1 at 11 [emphasis added].) Moore further wrote, in part, on October 25, 2016, "As

requested, it is critical for me to determine the relevance of the *information recently provided* to be able to share it with one or more approved reviewers at Babcock . . . . Will you agree to allow me to share the recently produced data from Salesforce with them?" (*Id*. at 17 [emphasis added].)  And finally, on October 31, 2016, Moore wrote, in part,

> I am sorry to be a nudge on this issue, but I really need to be able to talk openly with my client about the sales that are reflected on EGH000608-EGH000616.  Can you please let me know if you will agree that the Reviewers in the Agreed Order can be shown documents marked Attorneys' Eyes Only?
>
> Also, if you have back up documents for the sales reflected on p. EGH00610 where the customer is listed as Vogt Power International, we formally request that they be produced.
>
> Finally, as we discussed in our telephone conference of October, please also provide a description of the search protocol used for purposes of preparing Express' response in paragraph 1 of the Supplemental Disclosures.

(*Id*. at 18.)  While plaintiffs may have desired additional documents or information, clarification regarding certain responses, or to discuss a different designation for the documents, these e-mails are evidence that Express did, in fact, produce documents and/or information in response to the September 15, 2016 memorandum opinion and order.  Thus, plaintiffs' assertion that Express did not comply with the September 15, 2016 memorandum opinion and order is, at a minimum, misleading.

The next mole emerges in plaintiffs' response to the motion to quash filed by Sterling in the Northern District of Oklahoma.  (*See* DN 410-1.)   In addition to claiming that they were owed discovery by Express, plaintiffs asserted that "some of the documents subpoenaed will soon be subject to discovery in a separate action filed by [plaintiffs] against Sterling . . . ."  (DN

410-1 at 3; *see also id*. at 11 ["The evidence being preserved (without being reviewed) is also highly relevant to claims made by [plaintiffs] against Sterling . . . ."])  Plaintiffs also, once again, asserted that they were taking steps to "preserve evidence."  (*Id*. at 10.)

And finally, at the March 8, 2017 evidentiary hearing, the truth emerged.  Gallagher testified that the purpose of the subpoena issued to the Express bankruptcy trustee was for use in the current matter before the Court, "not to obtain it for use in the bankruptcy forum . . . ."  (DN 427 at 73.)  Gallagher further testified that the purpose of the subpoena was "to obtain information for use in the Kapsalis case" as opposed to the lawsuit filed against Sterling.  (DN 427 at 77.)  Specifically, an exchange with counsel for Sterling and Gallagher went as follows:

> Q. And that's consistent with your testimony that the purpose for you being out there on the 26th and the 27th -- and I heard you about preservation -- was to obtain evidence for the Kapsalis lawsuit and to an extent the Sterling lawsuit, correct?
>
> A. I don't know if it's to obtain evidence or -- if that's the right -- I mean, a lot of the requests dealt with issues of damages and an eventual judgment. I don't know if that constitutes evidence or not. *But it was to obtain information for use in the Kapsalis case*.
>
> Q. And in the Sterling case?
>
> A. *The subpoena was issued in the Kapsalis case. It was really for the Kapsalis case*. Sterling has its own deep pockets. The issue was a judgment in this particular case and whether or not there would be someone to pay for it.

(*Id*. at 77-78 [emphasis added]; *see also id*. at 118 [Q: "The purpose of going to secure these documents from Express was because you knew that Express had documents that were potentially relevant to this litigation; is that right?  A:  Correct."].)

In sum, plaintiffs' justification for the issuance of the subpoena to the bankruptcy trustee has ranged from preservation of evidence to Express's alleged noncompliance with the

September 15, 2016 memorandum opinion and order to protecting their rights as creditors in the bankruptcy action to obtaining evidence to use in the lawsuit against Sterling to obtaining discovery for use in this matter. None of these reasons provide substantial justification for causing the subpoena to be issued.

### b. Plaintiffs' Proffered Justifications Do Not Have Merit.

First, to the extent that plaintiffs wanted to preserve evidence on the Express servers that were to be sold and/or protect their rights as creditors in the bankruptcy proceeding, they could have filed a motion in the bankruptcy court; at the time of the March 8, 2017 evidentiary hearing, they had not. (*See* DN 427 at 168-69, 172.) The bankruptcy code may, as plaintiffs assert, permit creditors almost unfettered access to a debtor's books and records; however, this Court is not a bankruptcy court. Thus, contrary to plaintiffs' assertion, the fact that the subpoena issued out of this Court instead of the bankruptcy court makes every difference and does, indeed, change the result. There was an explicit order of this Court prohibiting further fact discovery; there was an automatic stay imposed against Express. Plaintiffs chose to ignore all of these things and attempted, under the guise of being creditors in a bankruptcy proceeding, to serve additional discovery in this matter.[10]

Second, it is clear that Express did comply, at least in part, with the September 15, 2016 memorandum opinion and order. As demonstrated, plaintiffs' evidence of non-compliance is

_____

[10] In the response to the Motion for Discovery, plaintiffs took issue with Kapsalis's assertion that he had a personal right or privilege in the Express documents. (DN 405 at 23.) Plaintiffs argued that Kapsalis "made no effort to stop or condition the sale of these assets [i.e., Express's personal property], or to otherwise protect the information that it now vaguely describes as 'privileged.'" (*Id*. at 24.) "If Defendant truly believed this information was confidential, he would have taken some action to protect it in the bankruptcy court or with the Trustee; he did neither . . . . Even if Defendant had any legitimate claim that such information was privileged, that claim was lost when the third party took possession and control of the computers, servers, without objection by Defendant." (*Id*. at 24-25.) The Court finds it ironic that plaintiffs fault Kapsalis for failing to take action in the bankruptcy court when, as of the March 8, 2017 evidentiary hearing, they had not taken any action in the bankruptcy proceeding. If plaintiffs were truly attempting to protect their rights as creditors, they should have taken action in that forum.

weak at best.  Furthermore, plaintiffs had not raised on the record any issues with Express's production until after causing the subpoena to be issued.

Third, to the extent plaintiffs sought discovery pertinent to the action filed against Sterling, they should have done so within the confines of that action.

This leaves the sole remaining claimed reason that plaintiffs caused the subpoena to be issued to the Express bankruptcy trustee – to obtain discovery in this matter.  But even if the subpoena was issued to obtain more discovery in this matter, the deadline for discovery had long past, this Court had explicitly ruled that no further discovery was to be had, and plaintiffs had not filed any motion seeking to re-open discovery.  By causing the subpoena to be issued, plaintiffs ignored the discovery deadline and attempted an end-run around this Court's orders.  Accordingly, the very issuance of the subpoena was odious.

Additionally, as demonstrated in the chart below, the subpoena sought several categories of documents and/or information that the Court had specifically ruled were off limits or that had to be limited in scope.  This chart summarizes discovery requested by plaintiffs in the course of this litigation, the Court's orders regarding same, and the requests made in the January 23, 2017 subpoena.

| PLAINTIFFS' DISCOVERY REQUESTS | COURT ORDER REGARDING DISCOVERY REQUESTS | DOCUMENTS SOUGHT BY PLAINTIFFS IN JANUARY 23, 2017 SUBPOENA |
|---|---|---|
| Request No. 6:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Black & Veatch and any agents, attorneys, servants, employees, successors of Black & Veatch from April 11, 2013 through the present.<br><br>Request No. 8:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Calpine and any agents, attorneys, servants, employees, successors of Calpine from April 11, 2013 through the present.<br><br>Request No. 10:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Fluor and any agents, attorneys, servants, employees, successors of Fluor from April 11, 2013 through the present.<br><br>Request No. 13:  Any and all communications between or among you and any agents, attorneys, servants, employees, successors and Siemens and any agents, attorneys, servants, | December 30, 2015 memorandum opinion and order (DN 158) *denied plaintiffs' Motion to Compel Express, including these requests, in full.* | 28.  Communications between Glenn Selby[11] and any representative or employee of Calpine, Black & Veatch, Fluor, Siemens and LG&E from 2013 through 2016. |

---

[11] Glenn Selby was an employee of Express.  (*See* DN 427 at 61.)

| | | |
|---|---|---|
| employees, successors of Siemens from April 11, 2013 through the present.<br><br>Request No. 15: Any and all communications between or among you and any agents, attorneys, servants, employees, successors and LG&E and any agents, attorneys, servants, employees, successors of LG&E from April 11, 2013 through the present. | | |
| Request No. 21: Any and all documents concerning the performance of Stephen Kapsalis, including but not limited to, any performance reviews conducted by Express, Express's Board of Directors or the Sterling Group. | December 30, 2015 memorandum opinion and order (DN 158) *denied plaintiffs' Motion to Compel Express, including this request, in full.* | 6. A copy of Kapsalis' personnel file. |
| Request 1: All correspondence (either electronic or otherwise) between or among Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from December 1, 2012 to the present that has not previously been produced. | Feb. 26, 2016 memorandum opinion and order (DN 204) *granted motion to quash the subpoena that included this request.* | 33. Email correspondence between Stephen T. Kapsalis and Kevin Garland from 2013 through 2016 and/or access to Kapsalis' email account on the Express server.<br><br>34. Email correspondence between Stephen T. Kapsalis and Gary Rosenthal from 2013 through 2016.<br><br>35. Email correspondence between Stephen T. Kapsalis and Brad Staller from 2013 through 2016. |

| | | |
|---|---|---|
| Request 6: All correspondence (either electronic or otherwise) between Stephen Kapsalis and the Board of Directors for Express Group Holdings from December 1, 2012 to the present that has not previously been produced. | Feb. 26, 2016 memorandum opinion and order (DN 204) *granted motion to quash the subpoena that included this request*. | 38. Email correspondence between Stephen T. Kapsalis and the Express Board of Directors from 2013 through 2016. |
| Request 12: Any and all documents (either electronic or otherwise) concerning Stephen Kapsalis' performance as Chief Executive Officer of Express. | Feb. 26, 2016 memorandum opinion and order (DN 204) *granted motion to quash the subpoena that included this request*. | 6. A copy of Kapsalis' personnel file. |
| Request 17: A copy of any joint defense agreement between and/or among Stephen Kapsalis, Express and Sterling. | Feb. 26, 2016 memorandum opinion and order (DN 204) *granted motion to quash the subpoena that included this request*. | 15. Copies of any joint defense agreements between Express Group Holdings and Stephen T. Kapsalis.<br><br>16. Copies of any joint defense agreement between Express Group Holdings and The Sterling Group. |
| Third Request for Production 1: All correspondence (either electronic or otherwise) between or among Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from March 15, 2013 to the present that has not previously been produced. | In the Sept. 15, 2016 memorandum opinion and order (DN 352), the Court stated, "Although the Court agrees that *this request is overbroad and not limited in scope*, Express claims that it has produced responsive documents. Therefore, the Court orders Express to either (1) produce correspondence | 33. Email correspondence between Stephen T. Kapsalis and Kevin Garland from 2013 through 2016 and/or access to Kapsalis' email account on the Express server.<br><br>34. Email correspondence between Stephen T. Kapsalis and Gary Rosenthal from 2013 through 2016 |

|  |  |  |
| --- | --- | --- |
|  | *regarding Babcock, Vogt Power, or HSRGs and aftermarket services* between Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis *from March 15, 2013 to April 11, 2014*; or (2) identify by Bates number documents that have been produced that are responsive to same." (*Id.* at 23-24 [emphasis added].) | 35. Email correspondence between Stephen T. Kapsalis and Brad Staller from 2013 through 2016.<br><br>40. Preservation of Stephen T. Kapsalis' email box pending the outcome of the BPI / Kapsalis litigation. |
| Third Request for Production 2: All correspondence (either electronic or otherwise) between Stephen Kapsalis and the Board of Directors for Express Group Holdings from March 15, 2015 to the present that has not previously been produced. | In the Sept. 15, 2016 memorandum opinion and order (DN 352), the Court stated, "Again, while the Court agrees that *this request is overbroad and not limited in scope*, Express claims that it has produced responsive documents. Therefore, the Court orders Express to either (1) produce correspondence *regarding Babcock, Vogt Power, or HSRGs and aftermarket services* between Kapsalis and the Express Board of Directors *from March 15, 2013 to April 11,* | 38. Email correspondence between Stephen T. Kapsalis and the Express Board of Directors from 2013 through 2016.<br><br>40. Preservation of Stephen T. Kapsalis' email box pending the outcome of the BPI / Kapsalis litigation. |

| | *2014*; or (2) identify by Bates number documents that have been produced that are responsive to same." (*Id*. at 24 [emphasis added].) | |
|---|---|---|

As a final matter, it bears mention that the issuance of, and searches conducted pursuant to, the subpoena went far beyond a violation of a scheduling order. A stay had been issued in this matter against Express. The Court had repeatedly denied plaintiffs' attempts to access (again) the Express servers. Fact discovery had long closed. And under the guise of protecting itself against the impending sale of Express's servers, plaintiffs caused a subpoena to be issued out of this Court to obtain discovery in conjunction with this action. In doing so, plaintiffs sought what was essentially unfettered access to Express's servers – servers that plaintiffs themselves believed might contain privileged information. (*See* DN 427 at 60-61, 96, 98, 109.) Moreover, while plaintiffs asserted that they had rights as creditors in the bankruptcy proceeding against Express – a fact that the Court certainly does not dispute – at the time of the March 8, 2017 evidentiary hearing, they had failed to act within the bankruptcy proceeding to protect their rights. Plaintiffs' own bankruptcy counsel Craige testified that the subpoena was not issued in conjunction with the bankruptcy action and had nothing to do with a 2004 examination. (DN 427 at 180-81.) Plaintiffs have failed to offer any valid justification for their actions. Consequently, the Court finds that plaintiffs' actions in causing the subpoena to be issued to the Express bankruptcy trustee and conducting searches with respect to same were not substantially justified.

**4.** **An Award of Attorneys' Fees and Expenses and Destruction of Information Obtained Pursuant to the Subpoena is Not Unjust.**

The Court finds appropriate an award of reasonable attorneys' fees and expenses to Kapsalis for time spent (1) preparing the Motion for Discovery (DN 398) and Supplemental Memorandum (DN 398-1) as well as the reply; (2) preparing for and attending the March 8, 2017 evidentiary hearing; and (3) preparing the proposed findings of fact and conclusions of law. Such an award is not unjust as it directly correlates to time spent by Kapsalis's attorneys in response to the actions of plaintiffs in causing the January 23, 2017 subpoena to be issued in violation of the March 2, 2016 order. The Court finds that awarding attorneys' fees to Sterling would not be just in this instance as they are not a party to this lawsuit. Moreover, while Sterling has argued that sanctions were appropriate, it did not request any of its attorneys' fees or expenses. (*See* DN 410.)

In addition to awarding attorneys' fees and expenses to Kapsalis, the Court will also (1) prohibit the use in this lawsuit of the information obtained by plaintiffs pursuant to the January 23, 2017 subpoena; and (2) order plaintiffs and/or Walker to destroy the hard drive containing the results of the searches made pursuant to the January 23, 2017 subpoena, and any other device or medium in which the data resulting from the searches may reside. Such a sanction is not unjust as the information was obtained in violation of the Court's March 2, 2016 order and well after the time for fact discovery had ended. Furthermore, the subpoena was issued after the District Judge had imposed a stay in this matter with respect to Express.

**B.** **The Conduct of Plaintiffs' Counsel**

The Court is greatly concerned with statements and representations made by plaintiffs' counsel – and in particular, Moore – in conjunction with the various filings, conferences, and

hearings in this matter, including in conjunction with the issues raised in the Motion for Discovery and Supplemental Memorandum.

Examples of such conduct date back before the Motion for Discovery was filed. For example, in the brief supporting the Second Motion to Compel, which was signed by Moore, plaintiffs stated that Express "refused to produce a single document or piece of discoverable information" in response to the three sets of requests; plaintiffs later stated that "Express nonetheless has refused to produce anything other than to direct Plaintiffs to 170,000 pages of documents that are generally nonresponsive." (DN 196-1 at 2, 6.) These two statements cannot both be correct.

In a hearing conducted by the Court on December 3, 2015, an attorney for Sterling argued that a discovery request by plaintiffs for all monthly financial reports for Express that were in Sterling's possession was overly broad. The following exchanged occurred:

> THE COURT: The one thing that I've heard -- and I'm not saying it's the only one -- but the one request that I've been told about that I have trouble aligning with your description is a request for all of their financial statements.
>
> MS. MOORE: That's not what we asked for, Your Honor, but if it were, I will tell you that I am more than willing to sit down and talk to them about a reasonable restriction, but we've just been told, "no, you can't have anything," and that is the difference.
>
> THE COURT: Well, Mr. Hovious was stating his position for the court's consideration. I don't believe he was purporting to make any rulings about what you were going to get.
>
> MR. HOVIOUS: Request for Production Number 19, "All monthly financial reports for Express in Sterling's possession," period, all of them, no limitation in time, no limitation in type, no limitation whatsoever, and that's consistent with everything that they have sought in this last round of discovery.

> THE COURT: And if what you just read is all of it, then also no limit -- no connection to Kapsalis or diversion of business . . . .
>
> MS. MOORE: Your Honor, that may be overly broad. Believe me, as I said, there are plenty of others that are very, very much tailored to Kapsalis and specific individuals that had communications with Kapsalis. And the problem we have is that it's like flat out, "no, you're not getting anything," instead of saying, "we'll give you 'X'". And we would be more than willing, if they said, "We'll give you the financial reports that dealt with the before and after picture of Express on the development of HRSG's since Kapsalis started there."
>
> THE COURT: Well, look, we -- and this is triggered, Ms. Moore, by what you just said, but this is for everyone's benefit. We all need to be -- you-all need to be extremely careful about what you say on this issue. We're on the record for a reason and we're doing this in this courtroom for a reason instead of around my conference table or by phone, and what you told me was that they are all limited. And Mr. Hovious read me one that's not limited and your response was, "Well, the rest of them are limited."

(DN 151 at 55-56.)

Counsel for plaintiffs' conduct reached a fever pitch after Express filed for bankruptcy. For example, the Court is greatly concerned with plaintiffs' characterization of the December 13, 2016 telephonic status conference in plaintiffs' response to the motion to quash filed by Sterling in the Northern District of Oklahoma. (DN 410-1.) Plaintiffs stated:

> On December 13, 2016 the WDKY held a telephonic status conference, during which counsel for [plaintiffs] notified the WDKY and counsel for Kapsalis that [plaintiffs] attended the meeting of creditors in the Express bankruptcy and were pursuing documents from the Express Bankruptcy Trustee *because they had outstanding discovery requests with Express at the time of the bankruptcy filing. No objection to this effort was raised by the WDKY or counsel for Kapsalis.*

(DN 410-1 at 9 [emphasis added].)

As the Court has mentioned, for plaintiffs to imply that the Court (or Kapsalis) gave implicit permission for them to conduct additional discovery in this action or to cause the subpoena to be issued to the Express bankruptcy trustee in conjunction with this action is disingenuous. At a minimum, it is clear that the order arising out of the December 13, 2016 said nothing about permitting additional fact discovery in this action, nor did it purport to re-open fact discovery. Moreover, this appears to be the first (and possibly only) time that plaintiffs' have asserted that they informed the Court and Kapsalis *during this telephonic conference* that were pursuing documents *because they had outstanding discovery requests from Express*. Plaintiffs certainly did not file any motion before Kapsalis filed the Motion to Quash that stated that Express had outstanding discovery. And, again, although this telephonic status conference was not on the record, none of what plaintiffs assert is reflected in the order arising out of same.

The Court would also be remiss not to address the various misstatements made by Moore with respect to the Motion to Quash. The Court recognizes that an attorney might inadvertently make a misstatement – and that is possibly what occurred when Moore represented, in both the response to the Motion to Quash (which she signed) and to the Court during the February 8, 2017 telephonic conference that the January 23, 2017 subpoena issued out of the Northern District of Oklahoma. Nonetheless, this is exactly the type of careless representation that has permeated the filings and proceedings in this matter. It evidences at best an extreme lack of care on the part of plaintiffs' counsel.

When speaking about the Motion for Discovery (DN 398) at the February 8, 2017 telephonic conference, Moore stated, "I mean, certainly there's no reason for discovery on Kelly Gallagher or Lacey Walker. They've made *very patently very clear* in all the pleadings and will

do so in an affidavit, if necessary, *that nothing was taken*." (DN 401 at 6 [emphasis added].) This turned out to be simply untrue. Gallagher and Walker both testified at the evidentiary hearing that the results of searches conducted on various Express servers were in fact downloaded to an external hard drive and removed from the Express offices on January 27, 2017. (DN 427 at 26, 32-33, 51; *see also* DN 407 at 3 [Walker Decl.].) Contradictorily, Moore herself also stated in the same telephonic conference that "information [] was taken." (DN 401 at 19; *see also id*. at 19-20 ["With regard to other issues that may arise in the course of bankruptcy proceedings that have nothing to do with this case or *the information was that was preserved*, then I'm fine with it."] [emphasis added].)

In another example of similar behavior, in the response to the Motion for Discovery, plaintiffs asserted that "[p]rior to February 8, Defendant Kapsalis, apparently communicated via *ex parte* email to either the Court or the clerk in connection with the motion for discovery and for sanctions. *See* Transcript of Telephonic Conference held February 8, 2017, 23:22–24:3. Plaintiffs have never seen any communications relating to the request to file the Motion for Discovery." (DN 405 at 9.) What the Court said was this:

> And I'm going to further direct that you coordinate with Theresa via e-mail. I know that you know this, but just last week we had an issue with someone who didn't know this. But your e-mails and any discussions with Theresa should be limited to how to access the video conference and where your person is going to be. We got a long, long e-mail about the merits *of a case* from someone who didn't understand that distinction.

(DN 401 at 23-24 [emphasis added].) The Court was referring to an incident that occurred in another case, not this one. And, even if the transcript is unclear in that regard, it is does not lend support for the very specific allegation lobbed by plaintiffs that counsel for Kapsalis had *ex parte* communications with the Court regarding the Motion for Discovery and sanctions.

The Court would (yet again) be remiss to not point out several alarming representations in plaintiffs' response to the motion to quash filed by Sterling in the Northern District of Oklahoma. First, plaintiffs asserted that "discovery in the Kapsalis matter is not over." (DN 410-1 at 11.) As the Court has already stated, no party was permitted to serve additional discovery after the March 2, 2016 order; all outstanding/served discovery was to be completed by April 1, 2016. Discovery had come to a close. That the Court ordered one party to supplement or produce documents to already served discovery requests does not change this fact.

Second, plaintiffs stated that the Court's February 26, 2016 memorandum opinion order is "now moot because a subsequent narrowed subpoena was served on Sterling which is still an open issue in the Kapsalis Action." (DN 410-1 at 12.) The Court has never deemed its February 26, 2016 memorandum opinion and order moot due to the issuance of another subpoena served on Sterling, nor is it moot for any other reason. On the contrary, that subpoena is the subject of a pending motion to quash.

Third, plaintiffs asserted:

> [T]he documents Sterling is asking this Court to deny to Respondents are, in large measure, documents that should have been produced long ago to Respondents in accordance with an order compelling their production from Express Group Holdings, LLC ("Express")—a now bankrupt estate. Before Respondents could obtain full compliance with that order, Express declared bankruptcy. As a result, Respondents exercised their rights as a creditor to obtain the documents from the Bankruptcy Trustee, who had no objection to providing them. Sterling's current motion is in direct conflict with a valid order of the Western District of Kentucky holding that the documents sought *are* relevant and necessary to Respondents' claims in the Kapsalis Action.

(*Id*. at 2-3 [emphasis in original]; *see also id*. at 15 ["Much of the information being preserved, however, has already been compelled to be produced by order of the WDKY and is not subject to

being quashed by an interloping third party, like Sterling.'"].)  This is a mischaracterization of the facts.

In the response to Sterling's motion to quash, plaintiffs asserted that three categories of documents in the January 23, 2017 subpoena "would contain documents that Express was compelled to produce to [plaintiffs] on September 15, 2016." (*Id*. at 13.)  According to plaintiffs, those categories in the subpoena included:

> 33. Email correspondence between Stephen T. Kapsalis and Kevin Garland from 2013 through 2016 and/or access to Kapsalis' email account on the Express server.
>
> 34. Email correspondence between Stephen T. Kapsalis and Gary Rosenthal from 2013 through 2016.
>
> 35. Email correspondence between Stephen T. Kapsalis and Brad Staller from 2013 through 2016.

(*Id*. at 12.)  However, a close look at the September 15, 2016 memorandum opinion and order (DN 352) does not jibe with plaintiffs' description.

In the September 15, 2016 memorandum opinion and order, the Court addressed plaintiffs' Third Request for Production 1, which sought "[a]ll correspondence (either electronic or otherwise) between or among Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from March 15, 2013 to the present that has not previously been produce[d]." (DN 352 at 23 [second substitution in original].)  The Court specifically stated:

> Although the Court agrees that *this request is overbroad and not limited in scope,* Express claims that *it has produced responsive documents*. Therefore, the Court orders Express to either (1) produce correspondence *regarding Babcock, Vogt Power, or HSRGs and aftermarket services* between Kevin Garland, Gary Rosenthal and/or Brad Staller and Stephen Kapsalis from *March 15, 2013 to April 11, 2014*; or (2) identify by Bates number documents that have been produced that are responsive to same.

(*Id*. at 22-23 [emphasis added].)  To say that the Court, in its September 15, 2016 memorandum opinion and order, compelled Express to produce the same documents requested by the subpoena is not accurate.  (*See* 410-1 at 13 [stating that "Sterling is essentially asking this court for a re-do on an issue that has already been determined by the WDKY"].)  For one, the Court compelled production, in part, because Express claimed that responsive documents had already been produced.  Most importantly, the Court placed subject matter and temporal limits on what it ordered Express to produce – limits that were *not* present in the requests contained in the subpoena.

Additionally, in the January 23, 2017 subpoena, plaintiffs sought copies of any joint defense agreements between Express and Kapsalis and Express and Sterling.  A similar request had been made by plaintiffs in the past and was the subject of the Court's February 26, 2016 order (DN 204) addressing the Motion to Quash by Sterling.  Specifically, plaintiffs had requested, "A copy of any joint defense agreement between and/or among Stephen Kapsalis, Express and Sterling."  (DN 118-2 at 10.)  The Court granted the Motion to Quash by Sterling with respect to this request, finding that it was not relevant – a fact omitted by plaintiffs in their response.  (DN 204 at 11.)

The Court's description of conduct of plaintiffs' counsel, and especially that of Moore, has not been without purpose.  Plaintiffs' counsel is on notice that the Court will not tolerate any future misstatements or misrepresentations.  In addition, the Court believes it is imperative to, as much as it can, correct any misrepresentations that have been made to other Courts regarding this Court's rulings.  And finally, the Court has done so to ensure that no further misrepresentations are made to this Court or any other court in the future.

### C.     Rule 45

The Court will not address whether the January 23, 2017 subpoena issued to the Express bankruptcy trustee complied with the requirements of Rule 45, as that issue is not properly before it.   Issues with the form and substance of the subpoena will likely be addressed in conjunction with the motions to quash the January 23, 2017 subpoena filed by Sterling and Kapsalis in the Northern District of Oklahoma.   *See* Fed. R. Civ. P. 45 (d)(3)(A) ("On timely motion, *the court for the district where compliance is required* must quash or modify a subpoena that:  (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.") (emphasis added)[12]; *see, e.g.*, *Hogan v. Cleveland Ave Rest. Inc.*, No. 2:15-CV-2883, 2016 WL 7467968, at *2 (S.D. Ohio Dec. 28, 2016) (granting motion to quash because the subpoena was unduly burdensome); *Stahl v. Coschocton Cty., Ohio*, No. 2:15-CV-572, 2016 WL 5341800, at *3 (S.D. Ohio Sept. 23, 2016) (granting motion to quash subpoena because the subpoena at issue "fail[ed] to provide a reasonable time for compliance"); *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 252–53 (S.D. Ohio 2013) (granting motion to quash subpoena because "as currently drafted, is unduly burdensome . . . .").   Alternately, if those motions to quash are transferred to this Court, those issues may be addressed at that time.

### D.     Local Rule 37.1

---

[12] Rule 45 was extensively amended in 2013.  One of the amendments required "subpoena-related motions and applications [] to be made to the court where compliance is required under Rule 45(c)."  Committee Notes to 2013 Amendments, Fed. R. Civ. P. 45(f).

Plaintiffs argue that the Court should not grant the Motion for Discovery because Kapsalis failed to contact or attempt to contact counsel for plaintiffs prior to filing it pursuant to Local Rule 37.1; plaintiffs also argue that Kapalis failed to contact or attempt to contact counsel for plaintiffs prior to filing the Motion to Quash.  (*See* DN 405 at 8-9.)  Plaintiffs further assert that Kapsalis failed to schedule a telephonic conference with the court before filing the Motion to Quash and Motion for Discovery.  (*See* DN 405 at 8-9; *see also* DN 294 [order stating that no additional discovery motion may be filed without first scheduling a telephonic conference with the Court].)

Local Rule 37.1 states:

> The Court will not entertain discovery motions unless counsel have conferred -- or attempted to confer -- with other affected parties in an effort to resolve their dispute. The moving party must attach to every discovery motion a certification that counsel have conferred and are unable to resolve their differences. The certification must detail counsel's attempts to resolve the dispute.

Counsel for Kapsalis should have attempted to contact counsel for plaintiffs prior to filing the Motion to Quash.  However, the Court recognizes that there was an exigent consideration, as the subpoena was issued on January 23, 2017 and was to be executed on January 27, 2017 (and was, in fact, executed a day earlier, on January 26, 2017).  Furthermore, Shannon Hamilton, one of plaintiffs' attorneys, called one of Kapsalis's attorneys on January 27, 2017 to discuss scheduling a telephone call with the Court regarding the Motion to Quash; notably, Hamilton did not inform Kapasalis's attorney during that conversation that the January

23, 2017 subpoena was in the process of being executed.[13]  (DN 409 at 2; *see also* DN 427 at 36, 40-41, 43-44, 169.)

Additionally, on February 7, 2017, the Court issued a text order scheduling, upon request of counsel, a telephonic conference call with the Court on February 8, 2017; Kapsalis filed the Motion for Discovery on the same day.  The Motion for Discovery was not a discovery motion in the traditional sense; it did not relate to a discovery dispute regarding the allegations made in the operative complaint.  Rather, it concerned allegations of alarming conduct on the part of plaintiffs' counsel, and counsel for Kapsalis was justifiably concerned about the use of the information obtained pursuant to the January 23, 2017 subpoena. Moreover, a telephonic conference was held on the same day that the Motion for Discovery was filed.  In short, this was a highly unusual and rapidly developing situation.  Accordingly, Kapsalis's failure to comply with Local Rule 37.1 will be excused.

Finally, plaintiffs state that the Court should not grant the Motion for Discovery because of the failure of counsel for Kapalis to attempt to confer pursuant to Local Rule 37.1; however, the Court is denying the Motion for Discovery.  Consequently, the failure of Kapsalis's counsel to attempt to confer with plaintiffs' counsel pursuant to Local Rule 37.1 is a non-issue under the peculiar circumstances of this case.

## III.    CONCLUSION

---

[13] It is unclear whether counsel for Kapsalis knew that the subpoena was being executed at this point.  On May 5, 2017, plaintiffs filed a Motion to Supplement the Record (DN 446).  In the Motion to Supplement Record, plaintiffs state that Elisabeth Gray, one of Kapsalis's attorneys, informed plaintiffs on April 12, 2017 that she had a conversation with the bankruptcy trustee on January 26, 2017 and advised him that Kapsalis would be objecting to the subpoena served on it and subsequently sent a copy of the Motion to Quash and related filings to the bankruptcy trustee.  (*Id.* at 2.)  As plaintiffs point out, Ms. Gray does not state whether, during that conversation, she was informed that the subpoena was in the process of being executed.    (*Id.*; *see also* DN 446-1 at 2 ["I had a conversation with the Trustee's office informing it we were objecting to the subpoena served on it and subsequently sent copies of the Motion and related filings to the Trustee."].)  Regardless, it is of no moment to the Court's ruling contained herein.

Rule 1 of the Federal Rules of Civil Procedure states that the rules "should be construed, administered, *and employed by the court and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). In the 2015 Year-End Report on the Federal Judiciary, Chief Justice John Roberts addressed the 2015 amendment to Rule 1 – the addition of the eight words emphasized above. *2015 Year-End Report on the Federal Judiciary* by Chief Justice John Roberts, Supreme Court of the United States (Dec. 31, 2015). Chief Justice Roberts wrote, "The underscored words make express the obligation of judges and lawyers to work cooperatively in controlling the expense and time demands of litigation—an obligation given effect in the amendments that follow." *Id*. at 6. As an example, Chief Justice Roberts pointed to the change in Rule 26(b)(1), stating that it "crystalize[d] the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id*. Chief Justice Roberts further stated:

> The amended rule states, as a fundamental principle, that lawyers must size and shape their discovery requests to the requisites of a case. Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. The key here is careful and realistic assessment of actual need. That assessment may, as a practical matter, require the active involvement of a neutral arbiter—the federal judge—to guide decisions respecting the scope of discovery.

*Id*. at 7.

Discovery in this matter has been anything but speedy and inexpensive; indeed, the words "unnecessary" and "wasteful" would describe many of the actions of the parties and the disputes those actions have spawned. While plaintiffs' actions detailed herein are extraordinary, they are not the only guilty parties in this regard. All parties to this action, and even the non-party

Sterling, have consumed an inordinate amount of the Court's time, as well as the United States District Courts for the Southern District of Texas and the Northern District of Oklahoma.

The Court has endeavored to curb unnecessary and wasteful discovery in this matter, while relying on the common-sense concept of proportionality. At the time plaintiffs caused the subject subpoena to be issued, discovery had closed. The Court was addressing the remaining discovery disputes. As was apparent from the orders cited in the background section addressing plaintiffs' various attempts to obtain an additional search of the Express server, no more searches of the Express server were to be had. It was well past time to move forward in resolving this matter, a matter that had been pending in this Court since 2013. Plaintiffs, however, were apparently not satisfied. But, rather than object to the undersigned's discovery orders or file a motion to re-open discovery, plaintiffs, in a self-help remedy, caused a subpoena to be issued to the Express bankruptcy trustee in conjunction with this matter and in direct violation of the March 2, 2016 order.

The Court has a mandate, from the law, the Rules of Civil Procedure, and the Chief Justice of the United States, to help secure a just, speedy, and inexpensive determination of every action and proceeding. The sanctions awarded herein are one step toward that.

Accordingly,

IT IS ORDERED that the Motion for Discovery (DN 398) is DENIED. The request for additional discovery and sanctions are denied; however, the Court will, *sua sponte*, sanction plaintiffs under Rule 16 of the Federal Rules of Civil Procedure.

Accordingly,

IT IS FURTHER ORDERED that plaintiffs shall pay to Kapsalis reasonable attorneys' fees and expenses incurred in (1) preparing the Motion for Discovery (DN 398) and Supplemental Memorandum (DN 398-1) as well as the reply in support of same; (2) preparing for and attending the March 8, 2017 evidentiary hearing; and (3) preparing the proposed findings of fact and conclusions of law.

IT IS FURTHER ORDERED that within **fourteen (14) days** of the entry of this order, Kapsalis shall file an itemization of the attorneys' fees and expenses incurred in conjunction with (1)-(3), including why such fees and expenses, along with the hourly rates, are reasonable. Within **fourteen (14) days** of the filing by Kapsalis of such documentation, plaintiffs or their counsel shall pay Kapsalis the amount requested *or* file with the Court any objections that they have to Kapsalis's attorneys' fees and expenses; *any such objections shall be limited to the reasonableness of the amounts claimed*.

IT IS FURTHER ORDERED that plaintiffs are prohibited from using in this matter the information obtained pursuant to the January 23, 2017 subpoena, including any information from the copies made of the Express servers.

IT IS FURTHER ORDERED that plaintiffs must (1) destroy the hard drive, and any copies thereof, containing the results of the searches made pursuant to the January 23, 2017 subpoena, and any other device or medium in which the data resulting from the searches may reside within **fourteen (14) days** of the entry of this order; and (2) **file a notice of compliance on the same date**.

 cc:  Counsel of record