UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


BABCOCK POWER, INC., et al.                                              PLAINTIFFS


vs.                                          CIVIL ACTION NO. 3:13CV-717-CRS


STEPHEN T. KAPSALIS, et al.                                              DEFENDANTS


# MEMORANDUM OPINION

This matter is before the court for consideration of the objections of plaintiffs Babcock Power, Inc. and Vogt Power International, Inc. (collectively "Babcock") to the June 30, 2017 Memorandum Opinion and Order of the United States Magistrate Judge denying the motion of defendant Stephen T. Kapsalis for discovery and sanctions, and *sua sponte* imposing Rule 16 discovery sanctions on plaintiffs for issuance and execution of a subpoena *duces tecum* in violation of the March 2, 2016 Order precluding additional fact discovery in the case and requiring the completion of outstanding discovery by April 1, 2016. The monetary portion of the sanctions was ordered to be paid by plaintiffs or their counsel. For the reasons set forth herein, the objections of the plaintiffs (DN 455) are rejected and the Memorandum Opinion and Order of the magistrate judge (DN 450) will be affirmed by separate order.

The magistrate judge held an evidentiary hearing on March 8, 2017 to address the motion of Kapsalis for discovery and sanctions (DN 398) and the responses thereto. A transcript of that hearing has been filed in the record. The parties filed post-hearing proposed findings of fact and conclusions of law. On June 30, 2017, Magistrate Judge Colin H. Lindsay issued a carefully considered and comprehensive 56-page memorandum opinion and order addressing the issuance and execution of the subpoena in January 2017 and surrounding events. This series of events occurring both before and after the issuance of the January 23, 2017 subpoena greatly concerns this judge, as it did Magistrate Judge Lindsay. Also troubling to the court is the suggestion in Babcock's objections that Magistrate Judge Lindsay's decision was result-driven and contrary to the evidence:

> A functional analysis of the effect of Magistrate Judge Lindsay's *sua sponte* Motion for Sanctions and Order in the present matter leaves no doubt that the sanctions imposed against Plaintiffs were intended to be and are in fact case dispositive.

DN 455-1, p. 15.

> It is easy in hindsight to cherry pick Plaintiffs' actions to preserve evidence that they have spent years trying to obtain from Kapsalis, Express and others, and point to things that could have been done better.

DN 455-1, p. 25.

"Things that could have been done better" is the height of understatement. Indeed, this statement coupled with an aggressive reiteration of arguments roundly rejected by the magistrate judge, accompanied by a careful recitation of the reasons for the rejection of each argument, evidences that the plaintiffs still seem to miss the point of the magistrate judge's decision.

I. The Magistrate Judge's Authority

As an initial matter, Babcock contends that the magistrate judge exceeded the scope of his authority under 28 U.S.C. § 636(b)(1) by issuing an order which purportedly has the effect of being dispositive of the case. Thus, Babcock urges, this court should conduct a *de novo* review of the record and the magistrate judge's decision, citing *Yang v. Brown University*, 149 F.R.D. 440, 443 (D.R.I. 1993).

The Sixth Circuit directs this court to undertake a functional analysis of the order's potential effect on the litigation. *Henness v. Jenkins*, No. 2:14-cv-2580, 2017 WL 1495265 (S.D.Ohio April 26, 2017).

Babcock contends that "Magistrate Judge Lindsay's Order prohibits Plaintiffs from introducing at trial evidence that goes to the very heart of their claims…" DN 455-1, p. 15. Babcock explains:

> Based on an analysis of the hash values that Kapsalis was compelled to provide, the evidence at issue is likely to be conclusive proof that Plaintiffs' competition-sensitive and proprietary materials were on Express's server(s) and remained there to Plaintiffs' detriment and in violation of this Court's Preliminary Injunction. Plaintiffs must be afforded the opportunity to present the jury with proof that their competition-sensitive and proprietary information and documents were stolen by Kapsalis and illegally uploaded onto Express's server(s). The exclusion of this evidence is fatal to Plaintiffs' claim.

*Id.* Babcock states earlier in the objections, however, that "Since day one of this lawsuit, there has been **no** question that the confidential, competition-sensitive, and proprietary materials at

3

issue belong to Plaintiffs and only Plaintiffs and that Kapsalis stole these materials." *Id.* at p. 3 (emphasis in original). In its Introduction, *Id.* at p. 1, Babcock contends that

> For years, Kapsalis lied to this Court and Plaintiffs. And now that Plaintiffs have **irrefutable** proof that Kapsalis stole their competition-sensitive and proprietary materials, provided those materials to Plaintiffs competitor, and failed to remove the materials from the competitor's server in direct violation of this Court's Preliminary Injunction, the Magistrate Judge is disposing of this entire case due to a Scheduling Order violation.

(emphasis in original).

It is unclear to the court how precluding the plaintiffs from "using the information *obtained pursuant to the January 23, 2017 subpoena, including any information from the copies made of the Express servers*" (which Babcock states "is *likely to be* conclusive proof" that Babcock's documents "were on Express's server(s) and remained there") is "disposing of the entire case" or is "fatal to Plaintiffs' claim." Babcock states that from day one, there has been no question that Kapsalis stole Babcock's proprietary documents and that Plaintiffs have "**irrefutable** proof" that he provided those materials to Babcock's competitor and failed to remove them from the competitor's server. This "**irrefutable** proof" is clearly *not* what was taken pursuant to the subpoena, as the plaintiffs have represented to the court that they have never searched or reviewed what was taken pursuant to the subpoena. Indeed, Babcock represents only that the evidence taken pursuant to the subpoena *is likely to be* conclusive proof.

Babcock has repeatedly stated that a comparison run by Lacey Walker, Babcock's computer expert, of the hash values for all of the documents on the Express server with Kapsalis' Western Digital hard drive identified six Babcock documents existing on the Express server as of March 2016. (see, most recently, DN 426, Motion for Leave to file Supplemental Evidence of Contempt, and DN 461, Plaintiff's Motion to Amend Scheduling Order). Babcock contends that

4

the hash values for these documents conclusively establish that they were on both the Western Digital hard drive (the hard drive onto which Kapsalis apparently downloaded documents before he left employment with Babcock's subsidiary, Vogt Power) and the Express server as of March 2016. Babcock also states that it has determined that these documents are proprietary, confidential, and/or trade secret documents of Babcock. To date, the court has seen no evidence substantiating these assertions.[1] However, Babcock urges that Lacey Walker is ready and willing to "certify" what his hash value comparison yielded and what such evidence establishes. DN 426, p. 3. Babcock has also stated that certain matched documents identified by the hash value comparison consist of files for a specific Vogt Power project – the Parnaiba Project in Brazil – which contains proprietary and trade secret information. *Id.* If Babcock possesses this evidence, as it has repeatedly stated that it does, then the preclusion of the evidence taken under the subpoena would not sound the death knell of this case. Rather, it would merely limit Babcock to evidence other than that which was taken pursuant to the subpoena on January 26 and 27, 2017.

Babcock has stated in its objections:

> Hence, the timing of the document retrieval performed on Express's server(s) is equally as important as identifying the hash values contained on the server. The Express server evidence obtained by Plaintiffs on January 26 and 27, 2017 *is the only relevant snapshot of what was on the Express server prior to it being sold to Innova Global.*

DN 455-1, p. 26 (emphasis added). Babcock seeks to offer evidence that it anticipates it now possesses by reason of the execution of the subpoena to prove that Babcock proprietary documents remained on the server(s) immediately prior to sale of the servers by the bankruptcy court to Innova Global, a third party. Clearly, Babcock wishes to further investigate the copies of the server(s) that were made, and use the results of the searches conducted on January 26-27th.

---

[1] DNs 426 and 461 were denied, as Babcock did not offer any evidence to support its arguments, and the court could not, therefore, find a basis upon which to afford the relief sought in those motions.

5

However, being precluded from doing so would not dispose of Babcock's case against Kapsalis. Rather, it would preclude Babcock from utilizing that "snapshot" taken in January, 2017.

Babcock has failed to establish that Magistrate Judge Lindsay's order is dispositive of the case or of any claim asserted by Babcock. Therefore, in accordance with 28 U.S.C. § 636(b)(1)(A), the magistrate judge's decision will be overturned only upon a finding that the ruling is clearly erroneous or contrary to law.

II.

III.     Fed.R.Civ.P. 16 Sanctions

The magistrate judge imposed sanctions on the plaintiffs and their counsel *sua sponte*, pursuant to Fed.R.Civ.P. 16(f), for violation of his March 2, 2016 scheduling order. Babcock takes issue with the fact that he denied Kapsalis' motion for additional discovery, and for sanctions sought under Fed.R.Civ.P. 26(g)(2) and the court's inherent power to redress claimed abuses of the subpoena process, yet *sua sponte* imposed Rule 16 discovery sanctions. Babcock does not indicate why this is problematic other than to state that this is "incredibl[e]." DN 455-1, p. 12.

Magistrate Judge Lindsay denied Kapsalis' motion for sanctions concerning the January 23, 2017 subpoena because he denied Kapsalis' motion to quash (DN 390) without prejudice, as it was to be properly raised in the Northern District of Oklahoma, the court for the district where compliance was required. (DN 436). Magistrate Judge Lindsay noted that no Rule 45 motion to quash was then before him, stating in his June 30, 2017 opinion, "Issues with the form and substance of the subpoena will likely be addressed in conjunction with the motions to quash the January 23, 2017 subpoena filed by Sterling and Kapsalis in the Northern District of Oklahoma."

However, in light of the events surrounding the matter, Judge Lindsay decided to independently sanction Plaintiffs for issuing the subpoena in violation of his March 2, 2016 Order.

Rule 16 provided the proper framework for redress of the violation identified by Magistrate Judge Lindsay. He found that Babcock's counsel deliberately disregarded the court's scheduling order and did an "end run" around the discovery constraints already in place by surreptitiously obtaining access to the Express servers and performing searches and copying documents (and, in some cases, apparently making complete copies of the server). In his view, the egregious nature of this conduct warranted Rule 16 sanctions, both monetary and evidentiary, for violation of his Order.

Fed.R.Civ.P.16(f) authorizes the issuance of a just order imposing sanctions on a party or its attorney for failing to obey a scheduling or other pretrial order. The rule requires that the party, its attorney, or both be ordered to pay reasonable expenses incurred because of the violation unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust. Rule 16(f)(2). The payment of expenses is in place of or in addition to any other sanction. We find no error in the imposition of sanctions pursuant to Rule 16 in this case under these circumstances.

IV. Justice and Justification

Now we turn to the substantive arguments of error in the Magistrate Judge's decision. According to Babcock, the magistrate judge has "cherry pick[ed]" evidence to support his findings that Babcock's failure to adhere to the March 2, 2016 Order was not substantially justified, and that an award of attorney's fees and expenses and the ordered destruction of information obtained pursuant to the subpoena is not unjust.

The plaintiffs state that their "actions should be reviewed in the context in which they were taken."[2] We agree. The magistrate judge, did in fact, consider the actions of the plaintiffs in the context of the orders of the court that were in place and the circumstances surrounding the plaintiffs' decision to obtain the information in the manner they did.

Babcock states:

> Plaintiffs readily acknowledge that they issued a subpoena *duces tecum* to Express's Trustee after the Scheduling Order's "fact discovery" deadline, but submit to this Court that they reasonably believed discovery was ongoing, the subpoena was issued under exigent circumstances, and their actions were substantially justified.

DN 455-1, p. 13.

There was no clear error in the Magistrate Judge's finding that the March 2, 2016 Order (DN 208) established a fact discovery deadline of April 1, 2016. The Order stated that "[a]ll discovery that is outstanding must be completed by this date. No additional discovery is permitted." The order drew an explicit distinction between outstanding discovery and additional discovery. It is upon this distinction which Babcock premises its suggestion that it reasonably believed at the time of the issuance of the subpoena on January 23, 2017 that discovery was ongoing.

Babcock urges that because the court continued to issue rulings on outstanding discovery issues,[3] it reasonably believed that discovery remained open. However, as detailed in the magistrate judge's opinion, there was clearly no reasonable ground to believe that the discovery which Babcock undertook by way of the January 23, 2017 subpoena--discovery of the Express

---

[2] To be clear, these were the actions of plaintiffs' *counsel* in practicing this case. This is precisely the reason that the magistrate judge was so alarmed by the course of conduct in accessing and searching the servers and taking documents in violation of the court's orders, and later attempting to justify the conduct with deflective arguments and, at times, untruthful statements.

[3] The magistrate judge issued many discovery rulings in this case, and a number of rulings were issued after April 1, 2016 concerning discovery served well before the deadline.

servers--was open. After the Order establishing the discovery cutoff dates, the court issued a Memorandum Opinion and Order (DN 352) on September 15, 2016 in which the court stated:

> While the scope of discovery is liberal, there are limits and those limits now require the Court to consider proportionality to the needs of the case, including the amount in controversy and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Plaintiffs have not demonstrated that a search of the Express server would likely uncover documents that have not previously bee or could have been discovered."*

(DN 450, p. 29, quoting with emphasis from DN 352, pp. 13-14).

On December 8, 2016, in another Memorandum Opinion and Order (DN 381), the court addressed a motion by Babcock to compel Kapsalis' expert to disclose hash value data upon which he relied in conducting his analysis and forming his expert opinion. The magistrate judge ordered the production of that hash value data, but specifically declined Babcock's request to access or copy the Express server:

> The Motion to Compel is GRANTED insofar as it requests a listing of all the hash values of every file on the Express server at the time it was analyzed by OSD, as well as the information reviewed by OSD and Dr. Cobb on Kapsalis's Express laptop, including LNK files, jump lists, and registry hives.
>
> The Motion to Compel is DENIED insofar as it requests, without limits, access to Express's server and Kapsalis's Express laptop.

(DN 381, p. 8; DN 450, pp. 29-30).

At the very least, the magistrate judge's series of orders made it crystal clear that Babcock's requested discovery of the Express servers was precluded, regardless of any misapprehension concerning outstanding versus additional discovery governed by the March 2nd Order.

There was no clear error in the magistrate judge's rejection as meritless Babcock's argument that when it issued the January 23, 2017 subpoena, it reasonably believed that discovery remained open for it to do so.

9

We further note that the late disclosure of the hash value data cannot justify Babcock's issuance of the subpoena to search and copy the Express servers in contravention of the magistrate judge's orders. The raw hash value data was not provided until January 23, 2017 and was not analyzed by plaintiffs' expert until *after* the subpoena had issued. Therefore, there is no possibility that the plaintiffs' own hash value analysis could have been considered in the decision to issue the subpoena.

The hash value analysis argument is, in reality, nothing more than an assertion that the court should find that the ends justify the means, despite the admitted discovery violation. To accept this argument would emasculate the discovery rules and condone self-help processes by frustrated litigants, such as the one employed here.

Babcock states repeatedly that its mission was to preserve evidence in the case:

> …Plaintiffs acted quickly **by necessity** to preserve the evidence on the Express server(s)… (DN 455-1, p. 7).

> …Plaintiffs' primary purpose was to preserve evidence that they believed was responsive to **outstanding** discovery requests… (DN 455-1, pp. 7-8, emphasis in original).

> …All that Plaintiffs did by issuing the subpoena was **preserve** evidence… (DN 455-1, p. 11, emphasis in original).

> …it cannot be doubted that the preservation of the Express server(s) on January 27 and 27, 2017 did not prejudice Kapsalis. (DN 455-1, p. 11).

> …the conduct the Magistrate Judge seeks to sanction in this case is Plaintiffs' counsel's efforts to **preserve** evidence in response to a palpable risk of [its] imminent destruction… (DN 455-1, p. 22, emphasis in original).

> …Express' bankruptcy filing changed the posture of this case, the scope of permissible discovery from Express, and the timing for preservation of critical evidence. (DN 455-1, p. 24).

> …Trustee Kirtley was the only person with the power to object to the subpoena and he had no objection to allowing Plaintiffs to preserve evidence… (DN 455-1, p. 25).

Babcock contends that it was faced with the imminent sale of the servers to a third party and thus acted under exigent circumstances to preserve evidence, "a litigant's duty…[which is] recognized by courts across the country." DN 455-1, p. 19. The problem with this asserted justification is that there is not one shred of evidence establishing that preservation of evidence was actually Babcock's purpose. The magistrate judge's opinion clearly illustrates this point.

In the face of this critical exigency, Babcock did not come to the court in January to seek assistance in preserving the evidence upon learning of the sale. Babcock did not go to the Bankruptcy Court either. While Babcock mentioned generally in a December 13, 2016 telephonic conference that it was going to seek information in the bankruptcy matter, it never sought protection from that court concerning the sale of the servers to a third party nor did it move for a Rule 2004 examination in the bankruptcy case at that time. Rather, Babcock's litigation counsel hired bankruptcy counsel who pursued an "informal" arrangement with the Trustee in Oklahoma, gaining access for Babcock's litigation counsel to the server(s) to search for and copy documents for use in this litigation. The testimony at the May 8, 2017 hearing established this, and the testimony was quoted in Magistrate Judge Lindsay's opinion:

> And finally, at the March 8 2017 evidentiary hearing, the truth emerged. Gallagher [counsel who, with Babcock's IT expert, Lacey Walker, went to Oklahoma and executed the subpoena] testified that the purpose of the subpoena issued to the Express bankruptcy trustee was for use in the current matter before the Court, "not to obtain it for used in the bankruptcy forum…" (DN 427 at 73.) Gallagher further testified that the purpose of the subpoena was "to obtain information for use in the Kapsalis case" as opposed to the lawsuit filed against Sterling. (DN 427 at 77).

DN 450, p. 35.

The email exchanges between bankruptcy counsel and the Trustee, as well as the contents

of the subpoena, coupled with the surreptitious means by which the subpoena was issued and executed[4] provide more than sufficient evidence upon which the magistrate judge could determine that the purpose of the subpoena was discovery rather than preservation of evidence. We thus find no clear error in such a finding.

Babcock's after-the-fact justifications for its conduct were found equally unavailing by the magistrate judge.

First, Babcock urges that it issued the subpoena, conducted the search, and copied and took the information because the Trustee did not object. This point is wholly and completely irrelevant to the issue of violation of the March 2, 2017 Order of the court. The fact that Babcock saw a path of no resistance to get to those servers in no way justifies their actions in following that path when such discovery was then precluded in this case. In fact, the Trustee apparently had some pause about what Babcock proposed to do, as he required that Babcock serve him with a subpoena *duces tecum* from this court, something that Babcock's bankruptcy counsel indicated he had never before seen in a case, but which he obtained from litigation counsel and readily provided.[5] Finally, nothing in the documents between bankruptcy counsel and the Trustee indicates that the Trustee was made aware that discovery had closed in this litigation and that Babcock's requests made to this court to search the servers had been denied. Indeed, Babcock suggested that there was outstanding discovery, and that it was entitled to the documents for which it proposed to search. Babcock made these representations at its own risk.

---

[4] Neither this court nor the Bankruptcy Court in Oklahoma, nor the defendant were notified or consulted about the situation prior to the issuance of the subpoena. Kapsalis was served with a copy on January 23, 2017. The execution of the subpoena began one day prior to the date indicated on the subpoena. When Babcock's counsel contacted Kapsalis' counsel concerning Kapsalis' filing of a motion to quash on January 26, 2017, Babcock's counsel did not reveal that the execution of the subpoena had already begun and was ongoing at that time.

[5] The declaration of Bankruptcy Counsel, Mark A. Craige, is of little assistance, as he recites "common practice" with which he is familiar in bankruptcy proceedings but which have no application to this uncommon matter here presented.

Second, Babcock contends that it was justified in issuing the subpoena and executing it because it was a creditor in the bankruptcy, and, having filed a claim and attended the first meeting of creditors, it thus could have obtained this discovery via a Rule 2004 examination.

This purported justification is problematic for a number of reasons. Babcock's status a creditor in a bankruptcy action and any rights which might flow from that status stand separate and apart from this litigation, as noted in a number of orders by the magistrate judge. That Babcock might have been able to obtain documents pursuant to Fed.R.Bankr.R. 2004 is no justification to violate an order of this court in this civil action. As noted by Magistrate Judge Lindsay, Babcock merely mentioned in general terms that information was being sought from the trustee in the Express bankruptcy. There was no assertion of discovery rights in the bankruptcy case at that time. Rather Babcock chose to search the server(s) and procure documents under a subpoena issued from this court under this case number.

This purported "right" to examination, the requirements of which are set forth in Fed.R.Bankr.R. 2004, was not asserted in the bankruptcy proceeding. Babcock did not seek an order of the bankruptcy court pursuant to Rule 2004(a), nor was the subpoena issued on behalf of the court for the district in which the examination was to be held (R. 2004(c)), nor was the scope of the examination ever represented to be within the scope of permissible discovery under Rule 2004(b).

The magistrate judge quoted Babcock's counsel who stated to the Court that "[i]n large measure…[plaintiffs'] steps were guided by bankruptcy counsel, because [plaintiffs] are now a creditor to the bankrupt estate [of Express]," and everything done was "consistent with the bankruptcy code and permissible…" DN 450, p. 31. Counsel twice misrepresented to Judge

Lindsay that the subpoena was issued out of the Northern District of Oklahoma. DN 450, p. 31, citing DN 401, p. 6. In fact, the arrangements for Babcock's counsel to access the Express servers were made by bankruptcy counsel informally, not by motion to the bankruptcy court nor under a subpoena from Oklahoma. The subpoena was issued out of *this* court bearing the caption of *this* action and seeking discovery specifically related to the claims in *this* case, despite the fact that such discovery had been denied to Babcock by previous orders.

The magistrate judge had more than sufficient grounds for concluding that neither Babcock's status as a creditor in the Express bankruptcy nor a lack of objection by the Trustee to the proposed procedure justified Babcock's actions. Moreover, this court agrees with Magistrate Judge Lindsay's assessment that the misrepresentations to this court in this regard evidence serious misjudgment.[6]

Babcock also urges the court to consider that "Kapsalis's counsel…did not reach out to Plaintiffs' counsel…regarding the subpoena…" DN 455-1, pp. 9, 10. However, on January 26, 2017 Kapsalis filed a Motion for Protective Order and to Quash the subpoena scheduled to be executed the next day. Clearly, Kapsalis did not acquiesce in the execution of the subpoena. Ironically, Babcock admits that counsel executed the subpoena a day early on January 26, 2017, and concluded their activities on the morning of January 27, 2017 despite the filing of the

---

[6] As a final note on the issue of bankruptcy discovery, the plaintiffs did, in fact, move in the bankruptcy court for a Rule 2004 examination two weeks before Magistrate Judge Lindsay issued his ruling. The Rule 2004 motion was denied, with harsh comment, on July 18, 2017 by Chief Judge Terrence L. Michael of the United States Bankruptcy Court for the Northern District of Oklahoma after he compared the 2004 discovery requests with those listed in the January 23, 2017 subpoena. At the hearing, Judge Michael indicated that he was singularly unimpressed with bankruptcy counsel's assertion that Babcock had articulated a legitimate purpose for Rule 2004 discovery in the bankruptcy case. While Judge Michael's decision has no import here, we mention it to note that in addressing the motion, he distinguished bankruptcy purposes from civil discovery purposes and found that no bankruptcy purpose was shown by Babcock in this case. He concluded that the integrity of the Kentucky litigation should be preserved. Whatever Babcock might have been entitled to discover had it proceeded by way of motion to the bankruptcy court in January, 2017 is now water over the dam. "What might have been" is no justification for the action taken. As it stands today, Babcock is not entitled to a Rule 2004 examination.

motion to quash.

Babcock argues that its actions in preserving the Express server(s) on January 26 and 27, 2017 did not prejudice Kapsalis, as preservation was a necessary and laudable goal. It contends that the results of Babcock's expert's hash value analysis prove that Kapsalis was lying all along that none of Babcock's documents resided on the Express server(s). Thus Babcock urges that the sanctions imposed by the magistrate judge are excessive and unjust because it should be permitted to prove that Kapsalis lied and that Babcock's documents did, in fact, end up on the Express servers and remained there.

The purpose behind the Rule 16 sanctions was to redress the apparent single-minded pursuit of further discovery of the Express server(s) which had been denied to Babcock, and was done after discovery closed. The "no harm, no foul" argument that Kapsalis, a proven liar and thief, did not suffer injury by Babcock's actions simply misses the point. The sanctions seek to prevent further disregard of the court's orders and to indicate that untruths will not be tolerated by the court.[7]

Attorneys are not gunslingers and this is not the Wild, Wild West. Self-help is not the rule of the day, and orders of this court are to be obeyed. The record evidence amply supports the magistrate judge's rejection of the post hoc justifications offered by Babcock for its actions. Magistrate Judge Lindsay ordered the payment of attorney's fees and expenses per the mandate

---

[7] It is beyond the ken of this judge that Babcock's counsel, Pamela Moore, would state untruthfully on the record that "…certainly there's no reason for discovery on Kelly Gallagher or Lacey Walker. They've made very patently clear in all the pleadings and will do so in an affidavit, if necessary, that nothing was taken." DN 401, p. 6. She knew without doubt that searches were conducted of the Express servers and entire copies of servers were downloaded to an external hard drive and physically removed from the Express offices pursuant to the January 23, 2017 subpoena. Further, this is not the only untruth quoted by Magistrate Judge Lindsay in his opinion. In 31 years on the bench, this judge has never been faced with such conduct by an attorney. As an officer of the court, counsel must be held to a high standard of integrity and respect for the judicial process and judicial officers is demanded.

of Rule 16(f). He ordered payment of Kapsalis' fees and expenses in bringing the motion for discovery (DNs 398, 398-1 and 417), in preparing for and participating in the March 8, 2017 hearing, and in preparing a post-hearing memorandum (DN 437). The court does not find error in Magistrate Judge Lindsay's Order for the payment of these fees and expenses pursuant to Rule 16(f).[8]

Finally, Babcock vigorously objects to the magistrate judge's order that (1) plaintiffs are prohibited from using in this matter the information obtained pursuant to the January 23, 2017 subpoena, including any information from the copies made of the Express servers, and (2) plaintiffs must destroy the hard drive and any copies thereof containing the results of searches made pursuant to the January 23, 2017 subpoena, and any other device or medium in which the data resulting from the searches may reside.

Babcock contends that these sanctions are too severe under the facts of this case. The court has concluded herein that the magistrate judge's findings and conclusions based upon the record evidence he cited in the opinion are neither clearly erroneous nor contrary to law. We have already determined that the exclusion of any favorable evidence that might exist in the materials taken on January 26 and 27, 2017 will not prevent Babcock from proceeding with his claims against Kapsalis. We also note that, although denied in its initial form, Babcock's motion for amendment of the scheduling order, if properly supported, may entitle Babcock to additional limited discovery concerning the hash value data disclosed January 23, 2017. Thus

---

[8] Interestingly, Babcock requests that any award of attorney's fees be held in abeyance until the final resolution of this action, stating that "Plaintiffs have a pending Motion for Contempt relating to Kapsalis' conduct which if sustained would entitle them to attorney's fees from Kapsalis as well." DN 455-1, p. 26, fn. 28. This Rule 16 sanctions order for the payment of attorney's fees is different in kind from a fee award in conjunction with any successful contempt motion which addresses the conduct of the restrained party. It is within the discretion of the magistrate judge to determine when the sanction should be paid. The court will leave the final determination of the amount of the monetary sanction and the terms of payment to his determination upon entry of this opinion.

all avenues of development of the evidence may not be completely foreclosed, even in light of the sanctions ruling.

We do not find the sanction which precludes the plaintiffs from utilizing the wrongfully obtained evidence too severe. In fact preclusion of evidence wrongfully obtained is a common and just sanction. In this case, the egregious nature of the conduct easily justifies the imposition of this sanction for all of the reasons discussed previously in this opinion.

The order that Babcock destroy copies of things it was not justified in taking is a perfectly sensible and fully just sanction. It is not completely clear to the court what exactly Babcock's counsel took. Babcock talks about copies of "server(s)," so it is unclear which server or servers were actually copied in their entirety and which servers were searched for relevant materials which were then downloaded to the external hard drive. In any event, "servers" are not being destroyed and evidence is not being rendered unavailable wholesale from the case. Plaintiffs' counsel has been ordered to destroy copies of materials which were wrongfully obtained and which their expert should not be permitted to further retain. While this is a rarely-employed sanction, this is an unusual and troubling set of circumstances which the magistrate judge determined should be addressed in this manner. We have not been shown that employment of this sanction is contrary to law.

Despite this court's affirmance of the magistrate judge's order for destruction of evidence, we will continue the present stay of that portion of his order. All items ordered by Magistrate Judge Lindsay to be destroyed will be delivered to the court for filing under seal in the record and shall remain sealed until further order of the court, pending any later review of the matter.

Therefore, the objections to the June 30, 2017 Memorandum Opinion and Order are rejected and the Memorandum Opinion and Order will be affirmed. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

September 27, 2017

**Charles R. Simpson III, Senior Judge
United States District Court**