UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BABCOCK POWER INC., et al.                                    PLAINTIFFS

v.                                                            NO. 3:13-CV-717-CRS

STEPHEN T. KAPSALIS, et al.                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the renewed motion of the plaintiffs, Babcock Power, Inc. and Vogt Power International, Inc. (collectively herein "Babcock"), to amend the court's scheduling order to permit additional limited discovery (DN 477).[1] Babcock has sought and been denied this discovery a number of times before, as it did not support the grounds for its request with an offer of any evidence. Most recently, the court explained in detail the deficiencies in the motion, and denied the request by order dated September 28, 2017. However, we noted

> Babcock's assertions concerning hash value analysis and conclusions concerning the identification and location of Vogt documents is wholly unsupported. Babcock's arguments were unsupported in March of 2017 (DNs 426, 432) and permission to engage in additional discovery of the Express server was denied by the magistrate judge at that time. (DN 445). These arguments remain unsupported and wholly unsubstantiated now.
>
> While the court is aware that Kapsalis was ordered to turn over hash value data, and did so, after the discovery deadline, that point begs the question. In order to reopen discovery, the court must be given a properly supported ground for doing so. By agreement of the parties, forensic analysis was performed on Express' server during the discovery period. It did not yield the results hoped for by Babcock. September 2017 is not a time for a discovery do-over, however.

---

[1] Three motions for leave to file exhibits to the memoranda under seal (DNs 478, 482, and 485) have been granted by separate order of the court.

> If Babcock properly establishes that its analysis of the post-discovery production of hash value data ordered by the magistrate judge revealed six documents on the Express server not identified by the prior forensic analysis, Babcock should be afforded the opportunity to ask One Source Discovery if it has additional information concerning "when the six Vogt Power documents…were transferred onto Express's server, where they were transferred to and whether they have been opened and/or changed." (DN 461-1, Tendered Order). The court has not been shown any ground, either factual or legal, for the additional relief Babcock seeks – a reopening of expert discovery (Babcock seeks leave to "disclose any new or supplemental expert opinions based upon the newly provided hash values"), and leave to depose Innova Global, Inc., the apparent purchaser of the servers from the bankruptcy estate.
>
> Babcock, who apparently took no action to protect its interests in the bankruptcy court, will be hard pressed to convince this court to permit Babcock to peek under the tent of an entity who has no connection to this litigation and was presumably a bona fide purchaser for value in that sale by the trustee. Babcock admits having received notice of the impending sale from the bankruptcy court.
>
> Babcock has not established grounds for amendment of the scheduling order. That motion will also be denied.

DN 470, p. 5.

Kapsalis objected to additional discovery and continues to object to the current motion. Kapsalis raises the same arguments as made previously, but Babcock's motion differs significantly from its prior submissions. This time, the motion is well-grounded in evidence, evidence which accompanies the motion, and the motion substantiates the request for additional limited discovery.

The court's ruling compelling the production of the so-called "hash value evidence" lagged behind the discovery cut-off dates in the case. On December 6, 2016, the court ordered Kapsalis to produce "a listing of all of the hash values of every file on the Express server at the time it was analyzed by [One Source Discovery], as well as the

information reviewed by OSD and Dr. Cobb on Kapsalis's Express laptop, including LNK files, jump lists, and registry hives." DN 381, p. 7. The order compelling discovery was granted in order to permit Babcock to evaluate the grounds for Kapsalis' expert's opinions:

> The Court rejects Kapsalis's assertion that he has provided the facts and data relied upon by Dr. Cobb because the MD5 hash values, Bates number, and file names of the approximately 760 files identified by plaintiffs were produced. "The purpose of such disclosure [*i.e.*, the facts and data considered] is to allow opposing parties a 'reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *City of Owensboro v. Kentucky Utilities Co.*, No. CIV.A.4:04CV-87-M, 2008 WL 4542674, at *2 (W.D. Ky. Oct. 8, 2008) (quoting advisory committee notes to Rule 26(a)(2)). Simply providing plaintiffs with the 760 files and nothing else does not serve this purpose or comply with Rule 26(a)(2)(B)(ii). That said, plaintiffs are not entitled to a copy of the Express server and Kapsalis's Express laptop in full either. Although Dr. Cobb's report could have been more clearly worded, he clarified under oath at his deposition that the hash values on the live Express server were extracted using a program called X-ways, and that a hash value comparison of the 760 files identified by plaintiffs was run against the hash values on the live Express server as of April 2016. (DN 289-3, pp. 9-10, 13, 20.) Additionally, Dr. Cobb testified that the hash values of the various Kapsalis devices were compared against Kapsalis's Express laptop. (*Id.* at 7-8, 15, 22.) Thus, Kapsalis shall provide, as was offered, a listing of all of the hash values of every file on the Express server at the time it was analyzed by OSD, as well as the information reviewed by OSD and Dr. Cobb on Kapsalis's Express laptop, including LNK files, jump lists, and registry hives.

DN 381, pp. 6-7.

In sum, as the court noted in the September 2017 Order, Babcock is not entitled to a discovery do-over. Babcock is not entitled to a copy of the Express server or Kapsalis' Express laptop. While Babcock has come forward with evidence to establish that the search by Digital Strata for Babcock's files on the Express server was flawed, Babcock is not entitled to a second attempt. The parties agreed to the use of Digital Strata to perform

a search of the Express server and they agreed-upon the protocol. Digital Strata did not discover any files residing on the Express server. That topic has been exhaustively discussed and put to rest at a prior time. We will not revisit any such discussion here.

Rather, the discovery of matching hash values was made by Babcock as a result of the compelled disclosure of hash value evidence made in January, 2017, long after the close of discovery. Kapsalis' expert provided the hash value data he used in his analysis which was then utilized by Babcock's expert, Lacey Walker, Jr.in his own hash value comparison.

The hash value analysis performed by Walker yielded 3,526 files on the Express server which had hash values matching the hash values of files on Kapsalis' Western Digital Hard Drive. After excluding "picture files," Walker found 765 remaining files with matching hash values. Of this 765 files, Babcock identified six files which it reviewed and confirmed consisted of Vogt's pipe stress model files in live/native format for the Parnaiba project it undertook in Brazil.

There are a number of significant points to be gleaned from this hash value match, as explained by Babcock.

First, Babcock has come forward with evidence that the hash value matches found through the comparison of these "digital fingerprints," is 99.99% reliable in establishing that the files are identical on the Express server and the Western Digital Hard Drive. The mathematical algorithm "generate[s] numerical values so distinctive that the chances that any two data sets will have the same hash value, no matter how similar they appear, is less than one in one billion." Managing Discovery of Electronic Information: A Pocket

Guide for Judges. As explained succinctly in *U.S. v. Miller*, Crim. Action No. 16-47-DLB-CJS, 2017 WL 2705963, *1 (E.D.Ky. June 23, 2017),

> Hashing is "the process of taking an input data string [from an electronic image, for example] and using a mathematical function to generate a (usually smaller) output string." Richard P. Salgado, *Fourth Amendment Search and the Power of the Hash,* 119 Harv. L. Rev. F. 38, 38-39 (2005). The output string, called the hash value, is a "digital fingerprint" shared by any duplicate of the input data string. (Doc. # 33-1 at ¶ 4)…Importantly, hash values are uniquely associated with the input data, meaning that "if an unknown file has a hash value identical to that of another known file, then you know that the first file is the same as the second." *Id.* at 39-40.

Second, Babcock has come forward with evidence establishing that the matching files are "live/native pipe stress model files containing temperature data developed using Plaintiffs' proprietary Thermal Rating Software and explaining how Plaintiffs design and evaluate their HRSG products. Babcock has offered evidence that these files were not made available to the general public and that they resided on Express' server as late as March 2016 when Cobb, Kapsalis' expert, reviewed the hash values on the Express server live, and formulated his opinions in the case.

Third, the Parnaiba project files were acquired in their native/live format. According to the declaration of Anthony Thompson, Senior Vice President - Engineering and Chief Technology Officer at Vogt Power International Inc. and Chief Technology Officer – Utility for Babcock Power, Inc., the significance of these files in their live/native format is as follows:

> I reviewed six files with the following file names : V I 7466 HPSH ATTEMP.C2, VI7466 HPSH ATTEMP [I].C2, V I 7466 HPSH ATTEMP [2].C2, V I 7466 HPSH ATTEMP [3].C2, V I 7466 HPSH ATTEMP [4].C2 and V I 7466 HPSH ATTEMP.C2.

> The above referenced files are live/native C2 files that can be opened using Caesar II software. The Caesar II software is used for piping

> system design and stress analysis. The live/native version of these files combined with the Caesar II software allows the person opening the files to access and review Vogt's stress models, analyze them, and collect Vogt's design inputs and load cases.
>
> The above referenced files are job specific files concerning a project in Brazil – Parnaiba, Project Number V17466 -that Vogt was hired by a customer to do.
>
> These files are stress models that contain temperature data from Vogt's Thermal Rating Software ("TRS program"). The TRS program serves as the basis for Vogt's heat transfer surface and performance evaluation design. The TRS program is the heart of Vogt's products and every Vogt design starts with the use of the TRS program and its outputs. The TRS program is Vogt's proprietary software that was initially developed by Vogt over the course of a year and has continued to be maintained and improved at great expense. The TRS program and its corresponding data are not readily ascertainable by proper means.
>
> How Vogt controls thermal expansion of high energy p1pmg [sic] systems and optimizes the support arrangements are a significant part of what makes Vogt HRSG designs, Vogt HRSG designs. Vogt's HRSG designs are a reflection of years of the company's work and lessons learned.
>
> The six above referenced files are not readily ascertainable by proper means. Vogt did not make the files publically available. BPI and Vogt have undertaken several measures to ensure the continued protection of their confidential, proprietary, and trade secret information and materials such as the above referenced files. For example, Vogt's systems are password protected and Kapsalis was required to sign a Non-Disclosure, Non-Solicitation, Non-Competition and Assignment Agreement as a condition of his employment.

DN 477-5, p. 2.

Kapsalis attacks the credibility of Babcock's representations by referencing past events, but does not refute the evidence that Babcock has now produced. Kapsalis does not challenge Walker's hash value analysis, what the results represent, or how or when the hash value data was obtained by Babcock for its expert's review. Kapsalis does not

challenge that the files discovered are live/native format files for Babcock's Parnaiba project, although he makes a passing attempt to refute their proprietary nature. That Kapsalis suggests that they are not proprietary, that Kapsalis did not take them, or that nobody has been shown to have reverse-engineered Babcock's process from those files does not address the question presently before the court, which is whether Babcock should be permitted limited discovery concerning the certain files discovered through the analysis of hash value data provided by Kapsalis' expert after the close of discovery.

What Kapsalis has not refuted is that, to a virtual certainty, Babcock documents claimed to be proprietary, confidential and trade secrets, resided on the Express server as of March 2016 and were discovered after Kapsalis was compelled to produce the hash value data at a date after the close of discovery. We find that fairness requires that Babcock be permitted limited discovery concerning the hash value data disclosed to it January 23, 2017. Babcock seeks to "obtain additional discovery from One Source Discovery[2] including information concerning when the six Vogt Power documents that the January 2017 Kapsalis hash values establish were transferred onto Express's server, how they were transferred, whether other files were transferred at the same time, where they were transferred to and whether they have been opened." *See* DN 477-10, Tendered Order. At this time we adhere to our prior ruling (DN 470, p. 5) that "The court has not been shown any ground, either factual or legal, for the additional relief Babcock seeks – a reopening of expert discovery (Babcock seeks leave to 'disclose any new or supplemental expert opinions based upon newly provided hash values') and leave to depose Innova Global, Inc., the apparent purchaser of the servers from the bankruptcy estate." As it is

---

[2] The entity with whom Cobb is affiliated.

uncertain what, if any, evidence will be developed through additional discovery, it is premature to discuss supplementation of expert opinions at this time.  Further, Babcock has offered no ground to depose the third-party purchaser of the Express servers.

Therefore, **IT IS HEREBY ORDERED AND ADJUDGED** that the renewed motion of the plaintiffs to amend the scheduling order to permit limited additional discovery (DN 477) is **GRANTED** to the extent it seeks an additional ninety-day period in order to obtain additional, limited discovery from One Source Discovery including information concerning when the six Vogt Power documents that the January 2017 Kapsalis hash values identified were transferred onto Express' server, how they were transferred, whether other files were transferred at the same time, where they were transferred to and whether they have been opened.  In all other respects, the motion is **DENIED.**

**IT IS FURTHER ORDERED** that the parties shall **CONFER AND TENDER** an agreed order of discovery consistent with this memorandum opinion and order **WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ENTRY OF THIS ORDER.**

January 4, 2018

**IT IS SO ORDERED.**

**Charles R. Simpson III, Senior Judge
United States District Court**