UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BABCOCK POWER, INC., and
VOGT POWER INTERNATIONAL., INC.,                             PLAINTIFFS

v.                                                               CIVIL ACTION NO. 3:13-CV-717-CRS

Stephen T. KAPSALIS, and
EXPRESS GROUP HOLDINGS, LLC,                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

**I.    Introduction**

      This case is before the Court on Defendant Stephen Kapsalis's motion to alter or amend the final trial order and judgment entered in this case. DN 622. Plaintiffs Babcock Power, Inc. and Vogt Power International, Inc. responded. DN 628. Kapsalis replied. DN 632. Therefore, this matter is ripe for review. Finding that the evidence at trial failed to demonstrate that Plaintiffs experienced damage flowing from Kapsalis's breach of contract, the Court will grant the motion and amend the trial order and judgment to award only nominal damages on the Plaintiffs' breach of contract claim.

**II.    Legal Standard**

      The Federal Rules of Civil Procedure permit litigants subject to an adverse judgment to move the Court to alter or amend the judgment. FED. R. CIV. P. 59(e).[1] This rule does not, however, "allow a defeated litigant a second chance to present new explanations, legal theories,

---

[1] While not addressed by either party, the Court is convinced that Rule 59(e) is a proper mechanism to examine a potential damages modification. *See e.g. Edwards v. Jewish Hosp. of St. Louis*, 855 F.2d 1345, 1353 (8th Cir. 1988) (affirming district court's reduction of damages to nominal damages on Rule 59(e) due to an error of law); *Caruthers v. Proctor & Gamble Mfg. Co.*, 177 F.R.D. 667, 670 n.2 (D. Kan. 1998) (recognizing Rule 59(e) as proper method of reducing compensatory damages awarded at trial to nominal damages); *Ruscavage v. Zuratt*, 831 F. Supp. 417, 418 (E.D. Pa. 1993) (denying Rule 59(e) motion to reduce damage award, but recognizing the Rule as a proper avenue for doing so).

or proof." *Melton v. Litteral*, No. 1:17-CV-120-GNS, 2018 WL 5258626, at *2 (W.D. Ky. Oct. 22, 2018) (citation omitted). Instead, "Rule 59(e) motions give district courts an opportunity to fix their own errors, 'sparing the parties and appellate courts the burden of unnecessary appellate proceedings.'" *Id.* (quoting *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2015)). Granting a Rule 59(e) motion is appropriate when there is: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Id.* (quoting *Schlaud v. Snyder*, 785 F.3d 1119, 1124 (6th Cir. 2015)). Rule 59(e) motions are "extraordinary and sparingly granted." *Id.* (citation omitted). The burden of showing entitlement to Rule 59(e) relief is on the moving party. *Id.* (citation omitted). While undertaking this analysis, the Court views the facts in the light most favorable to the jury's verdict. *See e.g. Adams v. City of Chicago*, 798 F.3d 539, 543 (6th Cir. 2015).

### III. Factual and Procedural Background

Kapsalis was hired by Babcock as Chief Operating Officer in 2009. Shortly thereafter, Kapsalis was transferred to the position of Chief Executive Officer of Vogt, a wholly owned subsidiary of Babcock. In 2013, Kapsalis left Vogt to become President and CEO at Express Group Holdings, LLC, a competitor of Plaintiffs. Plaintiffs sued, alleging that Kapsalis took various items of trade secret information with him when he left. After a trial, the jury concluded that Kapsalis misappropriated Plaintiffs' trade secret information consisting of Schematic and Mechanical Drawings and Strategic Plans. The jury also found that Kapsalis breached his Employee Non-Disclosure, Non-Solicitation, Non-Competition and Assignment Agreement with Plaintiffs regarding their CAD Standards, Calculation Sheets, Customer/Contacts Lists, Schematic and Mechanical Drawings, and Strategic Plans. The jury awarded $175,672.00 on the

trade secret misappropriation claims and $202,865.00 on the breach of contract claims. The subsequent trial order and judgment (DN 620) gives rise to Kapsalis's motion.

**IV.  Discussion**

Kapsalis argues *inter alia* that the Court made an error of law—from which manifest injustice will result—in permitting Plaintiffs to recover more than nominal damages on their breach of contract claim. This is so, he argues, because Plaintiffs failed to produce evidence of damages at trial sufficient to support a claim for breach of contract. Ultimately, the Court agrees and will grant the motion to alter or amend.

To prevail on a breach of contract claim in Kentucky, a plaintiff must demonstrate by a preponderance of the evidence that (1) a contract existed, (2) the contract was breached, and (3) plaintiff suffered loss/damages flowing from the breach. *Sudamax Industria e Comercio de Cigarros, Ltda. v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007). However, in a case where a plaintiff cannot demonstrate "actual damages," Kentucky permits recovery of nominal damages. *Harness v. Ky. Fluor Spar Co.*, 147 S.W. 934, 940 (Ky. 1912) (citation omitted). "This is true even though proof of damages is a required element of a breach of contract claim." *United Parcel Service Co. v. DNJ Logistic Group, Inc.*, No. 3:16-CV-609-GNS, 2017 WL 3097531, at *3 (W.D. Ky. July 19, 2017) (citation omitted).

"Actual damages" sufficient to support a compensatory damages award may be demonstrated through a showing of lost profits, unjust enrichment, or some other use or disclosure of information protected by a confidentiality or non-disclosure agreement. *See e.g. Vitro Corp. of Am. v. Hall Chemical Co.*, 292 F.2d 678, 682 (6th Cir. 1961) (requiring "a plain injury" to recover compensatory damages); *DNJ Logistics*, 2017 WL 3097531, at *3 ("actual damages" exist when shipments were returned, resulting in service failures and additional costs

in completing outstanding contracts); *Structural Dynamics Research Corp. v. Eng'g Mechs. Research Corp.*, 401 F. Supp. 1102, 1119 (E.D. Mich. 1975) (compensatory damages available where "defendants misused confidential information" even though "defendants have not made a profit" and plaintiff did not lose profits).

In arguing that damages were not proved, Kapsalis directs the Court to the cross-examination of Tony Thompson, the Director of Engineering for Babcock. There, counsel for Kapsalis elicited repeated admissions that Plaintiffs did not experience damage and that Plaintiffs had no evidence that Kapsalis had used or disclosed their alleged trade secret information. Ultimately, Kapsalis was able to obtain such testimony regarding the CAD Standards, DN 581 at 6:7–7:1 (sealed), Calculation Sheets, *Id*. at 9:23–10:6, Schematic and Mechanical Drawings, *Id*. at 10:20–11:9, DN 582 at 20:7–21:7 (sealed), and Strategic Plans, DN 581 at 11:10–13:9 (sealed).[2] The entire encounter was summed up in one question and answer:

> Q. And with respect to [the CAD standards, calculation sheets, schematic drawings, and strategic plans], just to make sure that we're clear for the record, both personally and as the corporate representative for Vogt and BPI, you're not aware of any evidence that Steve Kapsalis or Express used any of these, disclosed them, benefitted from them, or that BPI or Vogt suffered any damages related to them; true?
> A. That is true.

DN 582 at 2:7–17 (sealed).

Plaintiffs counter by pointing to Thompson's testimony that the information "ha[s] value to Vogt because they have been generated over the course of decades through lessons learned, mistakes made, improvements made," DN 639 at 168:10–13 (sealed), and "would be valuable to [Express] as far as looking at those documents and understanding [Plaintiffs'] design and

---

[2] Thompson declined to opine on damage related to the Customer/Contact List. However, like the other categories, no witness testified that Plaintiffs experienced actual damages resulting from the taking of that category of information.

offerings." DN 582 at 4:17–20. He further noted that "the damages, you know, associated with putting a proposal together and losing a proposal is quite expensive in this industry." *Id.* at 4:22–24.

Plaintiffs also point to testimony from other witnesses. Mike LeClair, the President and CEO of Babcock, testified that "Vogt suffers damage as a result of the loss of exclusivity." DN 641 at 144:1–6 (sealed). On cross-examination, he continued to assert that he was "aware of damages to [Plaintiffs]," but was unable to articulate anything specific. *Id.* at 149:3–4. Similarly, Christopher Turner, the President and CEO of Vogt, testified:

> The harm came with taking, you know, the information that's sacred to Vogt, these trade secrets, this confidential information. You know, they took it to a competitor. I think it was discussed that there was at least 13 files identified that were, you know, on the laptop. You know, other files made its way to the server.
> You know, at that point, you know, Vogt has lost control of where that information disseminates to. You know, some of this information, as we talked about earlier, could be used for reverse engineering. It could be used against—in competition against us. And just to say that there's been no lost projects today is just one thing. You don't know where that information is going in the future.
> And, you know, the HRSG business, it is a very tight market. There's only a few major players in the world. The barriers to entry are great. It's not easy just to get into it.

DN 640 at 72:6–21 (sealed). James Gravitt, Babcock's damages expert, agreed:

> Well, it's no longer secret is about the easiest way I can put that. There's some value to keeping something confidential about what you're going to do, and when your opponent in the marketplace finds out about it, obviously it's not worth what it once was because you're going to have to do something different, probably, to react to that since that's out there now.

DN 641 at 31:12–17 (sealed).

The Court addressed this issue at trial while discussing proposed jury instructions. During that conference, the Court noted it believed that Plaintiffs "ha[ve] proven no actual damages at all—period; none—and has conceded the same . . . by its reliance on the . . . reasonable royalty theory that is available under" KUTSA. DN 643 at 194:20–23 (sealed). Without such "proof of

5

actual damage," the Court believed Plaintiffs would be entitled to nothing more than nominal damages under Kentucky law. *Id.* at 195:16–23. The Court eventually reversed course, permitting the jury to be instructed on damages for breach of contract and deferring a ruling on the issue until later. DN 644 at 13:25–14:17 (sealed).

On review, with the benefit of hindsight and the opportunity to review the trial transcripts and evidence adduced at trial, the Court is convinced the original ruling was correct. Nothing proved at trial demonstrated that Plaintiffs experienced some damage flowing from Kapsalis's breach of contract or that Kapsalis had used or disclosed Plaintiffs' information. The witnesses spoke only of hypothetical future damage and Plaintiffs' lack of control over where the information could be potentially be disseminated. These are merely vague concerns and are not sufficiently concrete to ground a jury finding of "actual damage" which would be capable of supporting damages greater than nominal. *Harness*, 147 S.W. at 939 (nominal damages available where "estimated [lost] profits were too vague and uncertain in character to have authorized recovery."). *See also USACO Coal Co. v. Liberty Nat'l Bank & Trust Co. of Louisville*, 700 S.W.2d 69, 72 (Ky. Ct. App. 1985) (failure to award nominal damages is reversible error where a party is so entitled).

An award of nominal damages when no actual damage, use, or disclosure is proven also comports with the purpose of damages for breach of contract—to "put an injured party into the same position it would have been in had the contract been performed." *University of Louisville v. RAM Engineering & Const., Inc.*, 199 S.W.3d 746, 748 (Ky. Ct. App. 2005) (citing *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995)). With no damage, use, or disclosure, Plaintiffs will be in the same place they would have been in had Kapsalis not taken their information. Therefore, the

6

Court will grant the motion to alter or amend, reducing the damages awarded on the breach of contract claim to $1.

V.      Order

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that:

Defendant's Motion to Alter and Amend Judgment (DN 622) is **GRANTED**. The prior-entered Trial Order and Judgment (DN 620) is **VACATED**. An amended Trial Order and Judgment will be entered contemporaneously with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

April 5, 2019

**Charles R. Simpson III, Senior Judge
United States District Court**